Rhonda R. Trotter (State Bar No. 169241)
Email address: rtrotter@kayescholer.com
Amanda Myers (State Bar No. 267591)
Email address: amanda.myers@kayescholer.com
KAYE SCHOLER LLP
1999 Avenue of the Stars, Suite 1700
Los Angeles, California 90067
Telephone: (310) 788-1000
Facsimile: (310) 788-1200

Attorneys for Defendant
Hearthside Food Solutions, LLC

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| BIBIJI INDERJIT KAUR PURI, <br><br> Plaintiff, <br><br> v. <br><br> HEARTHSIDE FOOD SOLUTIONS, LLC, <br><br> Defendant. | Case No. CV 11-08675-JFW (SSx) <br><br> **HEARTHSIDE FOOD SOLUTIONS, LLC'S MOTION TO DISMISS, STAY OR TRANSFER** <br><br> Date:   December 19, 2011 <br> Time:   1:30 p.m. <br> Place:   Courtroom 16 <br><br> Hon. John F. Walter |

KAYE SCHOLER LLP

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 19, 2011, at 1:30 p.m. or on such other date as the Court may provide, Defendant Hearthside Food Solutions, LLC ("Hearthside") will and hereby does move to dismiss, transfer or stay Plaintiff Bibiji Inderjit Kaur Puri's ("Plaintiff") Complaint for Federal Statutory and Common Law Trademark Infringement; Violation of Section 43(a) of the Lanham Act; Unfair Competition; Unfair Trade Practices under California Business and Professions Code § 17200 et seq; Imposition of Constructive Trust; Declaratory Relief; Assignment of Trademark Applications and Registrations; and Cancellation of Registered Marks.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on November 4, 2011.

The motion to dismiss or stay Plaintiff's Complaint is made on the grounds that the first-to-file rule allows this Court to defer to the District of Oregon as (1) Hearthside's declaratory action was filed before Plaintiff's Complaint, (2) the parties to both Hearthside's declaratory action and Plaintiff's Complaint are identical, and (3) Hearthside's declaratory action and Plaintiff's Complaint involve essentially the same issues.

The motion to transfer Plaintiff's Complaint is made on the grounds that under 28 U.S.C. § 1404(a), the interests of justice together with the convenience of the parties and the witnesses demonstrate that the District of Oregon is a more convenient forum.

This motion is based upon this Notice; the concurrently-filed Memorandum of Points and Authorities; the concurrently-filed Declaration of James J. Gaspar; the Proposed Order; the records and files in this action; and such evidence and

///

///

///

KAYE SCHOLER LLP

1   argument the Court may consider appropriate or may be presented at or before any

2   hearing on this motion.

3

4   DATED:  November 14, 2011          Respectfully submitted,

5                                      KAYE SCHOLER LLP

6                                      By:    /s/  Rhonda R. Trotter

7                                          Rhonda R. Trotter
                                       Attorneys for Defendant
8                                      HEARTHSIDE FOOD SOLUTIONS, LLC

**KAYE SCHOLER LLP**

60483774          HEARTHSIDE'S MOTION TO DISMISS, STAY OR TRANSFER

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................1

BACKGROUND .........................................................................................1

I. THE "FIRST-TO-FILE" RULE FAVORS DISMISSAL OF THIS SECOND-FILED ACTION ..................................................................3

    A.   This Action Should Be Dismissed, Transferred or Stayed Because It is Essentially Identical to the First-Filed Oregon Action ........................................................................................3

        1.   The Chronology of the Actions Supports Dismissal, Transfer or Stay of this Action ..................................4

        2.   Dismissal, Transfer or Stay is Proper Because the Parties are Identical..............................................................4

        3.   Dismissal, Transfer or Stay is Proper Because the Issues in Both Actions are Essentially Identical........................4

    B.   No Exceptions to the First-to-File Rule Apply .....................5

        1.   There is no Indication of Bad Faith ..........................5

        2.   Hearthside's Declaratory Judgment was Not an Anticipatory Suit........................................................6

        3.   There is No Indication of Forum Shopping..............7

        4.   The District of Oregon is a Convenient Forum for Both Parties....................................................................8

II. ALTERNATIVELY, THIS ACTION SHOULD BE TRANSFERRED TO THE UNITED STATE DISTRICT COURT FOR THE DISTRICT OF OREGON UNDER 28 U.S.C. § 1404(a) .......................................9

        1.   Relevant Agreements............................................9

        2.   State Most Familiar with Governing Law.....................10

        3.   Plaintiff's Choice of Forum.........................................11

        4.   Parties' Contacts with the Forum ...............................11

        5.   Contacts Relating to the Plaintiff's Cause of Action in the Chosen Forum ...............................................12

        6.   Differences in the Costs of Litigation in the Two Forums....................................................................12

        7.   Availability of Compulsory Process to Compel Attendance of Non-party Witnesses..............................12

        8.   Ease of Access to Proof.............................................13

        9.   Other Factors .........................................................14

CONCLUSION..........................................................................................15

i

KAYE SCHOLER LLP

KAYE SCHOLER LLP

# TABLE OF AUTHORITIES

**Cases**

*Allstar Mktg. Group, LLC v. Your Store Online, LLC,*
666 F. Supp. 2d 1109 (C.D. Cal. 2009)......................................................10, 12

*Alltrade, Inc. v. Uniweld Prods, Inc.,*
946 F.2d 622 (9th Cir. 1991).....................................................................3, 4, 5

*Broadcom Corp. v. Qualcomm Inc.,*
No. 05-cv-468, 2005 WL 5925585 (C.D. Cal. Sept. 26, 2005) ......................5

*Global Décor, Inc. v. Cincinnati Ins. Co.,*
No. 11-cv-2602, 2011 WL 2437236 (C.D. Cal. June 16, 2011) .............12, 14

*Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness,*
179 F.R.D. 264 (C.D. Cal. 1998)......................................................3, 4, 5, 7, 8

*Hearthside Food Solutions, LLC v. Bibiji Inderjit Kaur Puri,*
No. 11-cv-1238 HU .........................................................................................1

*Interactive Fitness Holdings, LLC v. Icon Health & Fitness,*
No. 10-cv-04628, 2011 WL 1302633 (N.D. Cal. Apr. 5, 2011) .....................3

*Italian Colors Rest. v. Am Express Co.,*
No. 03-cv-3719, 2003 WL 22682482 (N.D. Cal. Nov. 10, 2003) ................12

*Jones v. GNC Franchising, Inc.,*
211 F.3d 495 (9th Cir. 2000)..........................................................................9

*Kerr Corp. v. N. Am. Dental Wholesalers,*
No. 11-cv-0313, 2011 WL 4965111 (C.D. Cal. Oct. 18, 2011).....................6

*King v. SAM Holdings, LLC,*
No. 10-cv-04706, 2011 WL 4948603 (N.D. Cal. Oct. 18, 2011) ...........12, 14

*Pacesetter Sys., Inc. v. Medtronic, Inc.,*
678 F.2d 93 (9th Cir. 1982)..........................................................................3, 4

*Patent Mgmt. Found., LLC v. Analog Devices, Inc.,*
No. 10-cv-03630, 2011 WL 197831 (N.D. Cal. Jan. 20, 2011)...................14

*Peta, Inc. v. Beyond the Frame, Ltd.,*
No. 10-cv-07576, 2011 WL 686158 (C.D. Cal. Feb. 16, 2011) ....................4

*Puri v. Golden Temple of Oregon, LLC,*
No. 10-cv-882-JFW Civil Minutes C.D. Cal. June 9, 2010).................7, 8, 10

*Sony Comp. Entm't Am. Inc. v. Am. Med. Response, Inc.,*
No. 06-cv-06603, 2007 WL 781969 (N.D. Cal. Mar. 13, 2007)...................7

*Stomp, Inc. v. Neato, LLC,*
61 F.Supp.2d 1074 (C.D. Cal. 1999).............................................................7

*Summit Entm't, LLC v. Bath & Body Works Brand Mgmt.,*
No. 11-cv-3570, 2011 WL 2649973 (C.D. Cal. July 5, 2011)...............5, 6, 7

*Turner v. Harrah's New Orleans Hotel & Casino,*
No. 10-cv-5879, 2011 WL 1666925 (C.D. Cal. Apr. 7, 2011) ....................11

*Wood v. Best Buy Co., Inc.,*
No. 11-cv-1877, 2011 WL 3740812 (N.D. Cal. Aug. 25, 2011) .................14

*Worldwide Fin. LLP v. Kopko,*
    No. 03-cv-0428, 2004 WL 771219 (S.D. Ind. Mar. 18, 2004) ...................12

*Zumba Fitness, LLC v. Brage,*
    No. 11-cv-5361, 2011 WL 4732812 (C.D. Cal. Oct. 6, 2011)...............10, 13

**Statutes**

28 U.S.C. § 1404(a) ..........................................................................9, 13, 14

Fed. R. Civ. P. 12(b)(6) ...............................................................................1

Fed. R. Civ. P. 45 .....................................................................................,.12

KAYE SCHOLER LLP

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

This action should be dismissed, transferred or stayed based on a previously filed action pending in the United States District Court for the District of Oregon, styled *Hearthside Food Solutions, LLC v. Bibiji Inderjit Kaur Puri*, No. 11-cv-1238 HU ("Oregon Action"), which involves the same claims and the same parties as this lawsuit.[1]  Hearthside Food Solutions, LLC ("Hearthside") commenced the Oregon Action six days before Bibiji Inderjit Kaur Puri ("Plaintiff") commenced the instant action.

### BACKGROUND

Plaintiff's central allegation in this action is that Hearthside is infringing on certain trademarks owned by Plaintiff.  According to Plaintiff's Complaint, beginning in or about 1984, Plaintiff's deceased husband, Yogi Bhajan, granted the Yogi Tea Company, and its successor-in-interest Golden Temple of Oregon ("GTO"), oral licenses to use "Yogi Tea®" and "YOGI®" (collectively "the "YOGI® marks") in connection with the sale of teas and food products. (Complaint at ¶ 17, attached as Exhibit A to the Declaration of Amanda Myers ("Myers Decl.").)  In 2004, those oral licenses were replaced with a written license agreement ("2004 License Agreement").  (*Id.*) (A true and correct copy of the 2004 License Agreement is attached as Exhibit A to the Declaration of James J. Gaspar in Support of Motion to Dismiss, Transfer or Stay ("Gaspar Decl.")).[2]  According to

---

[1] Hearthside has concurrently filed a motion to dismiss this action under Federal Rule of Civil Procedure 12(b)(6).  The 12(b)(6) Motion need not be addressed by the Court in the event the Court grants this Motion to Dismiss under the first-filed rule.

[2] Though not mentioned in the Complaint, there were actually two license agreements entered into 2004, one dated July 26, 2004 and a superseding agreement
(continued...)

KAYE SCHOLER LLP

1   Plaintiff, GTO used Yogi Bhajan's image on its packaging and sales materials from

2   1998 to 2009. (Myers Decl., Ex. A at ¶¶ 18-19.) Plaintiff also alleges that, "at

3   Yogi Bhajan's direction and insistence, GTO started using Yogi Bhajan's image . . .

4   for a line of cereals under the "PEACE CEREAL®" trademark ("the PEACE®

5   marks"). (Myers Decl., Ex. A at ¶ 19.) Plaintiff alleges that those marks were

6   licensed to GTO. (Myers Decl., Ex. A at ¶ 20.)

7       In 2009, Hearthside acquired the cereal business from GTO. (Myers Decl.,

8   Ex. A at ¶ 24.) As described in Plaintiff's Complaint, in connection with

9   Hearthside's acquisition of GTO's cereal business, GTO (i) granted Hearthside a

10   royalty-free license to use the YOGI® marks until May 2012 and (ii) sold the

11   PEACE® marks to Hearthside outright. (Myers Decl., Ex. A at ¶ 24.) Despite

12   those transfers from GTO to Hearthside, Plaintiff now contends that she is the 50%

13   owner of the YOGI® and PEACE® marks and is suing for Hearthside's alleged

14   infringement of those marks. (Myers Decl., Ex. A at ¶¶ 16, 27-29.)

15       Based on Plaintiff's assertion that she owns at least 50% of the YOGI® and

16   PEACE® marks, Hearthside commenced the Oregon Action on October 13, 2011,

17   seeking a declaratory judgment of non-infringement of the YOGI® and PEACE®

18   marks. Hearthside also sought a declaratory judgment relating to its right to use the

19   GOLDEN TEMPLE trademarks as part of the Oregon Action. (A true and correct

20   copy of Hearthside's Complaint in the Oregon Action is attached as Exhibit B to

21   the Gaspar Decl.) Six days later, Plaintiff filed this action, asserting claims for

22   trademark infringement against Hearthside for the YOGI® and PEACE® marks,

23   though not the GOLDEN TEMPLE marks.

24

25

26

27   dated October 1, 2004. The Complaint refers to the October 1, 2004 agreement,
with a 75-year term.

28

KAYE SCHOLER LLP

**KAYE SCHOLER LLP**

## I.  THE "FIRST-TO-FILE" RULE FAVORS DISMISSAL OF THIS SECOND-FILED ACTION

The first-to-file rule is a "generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." *Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness*, 179 F.R.D. 264, 269 (C.D. Cal. 1998); *see also Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982).  In the event of duplicative litigation, this federal comity rule allows the court of the second-filed action to dismiss, transfer or stay its action and defer to the court presiding over the first-filed action. *See Alltrade, Inc. v. Uniweld Prods, Inc.*, 946 F.2d 622, 623 (9th Cir. 1991) (determining on appeal that district court should have stayed second-filed suit).  Although courts recognize exceptions to the first-to-file rule, none are applicable here.

### A.  This Action Should Be Dismissed, Transferred or Stayed  Because It is Essentially Identical to the First-Filed Oregon Action

The first-to-file rule should not be regarded lightly as it promotes judicial efficiency and prevents "the risk of inconsistent decisions that would arise from multiple litigations of identical claims." *See Interactive Fitness Holdings, LLC v. Icon Health & Fitness*, No. 10-cv-04628, 2011 WL 1302633, at *2 (N.D. Cal. Apr. 5, 2011) citing *Alltrade*, 946 F.2d at 625.  In applying the first-to-file rule, the court looks to three threshold factors: "(1) the chronology of the two actions, (2) the similarity of the parties, and (3) the similarity of the issues." *Guthy-Renker,* 179 F.R.D. at 270.  In this case, the instant action should be dismissed, transferred or stayed not only because the first-to-file factors favor this result, but also to avoid conflicting judgments concerning the ownership and the use of the YOGI® and PEACE® marks.

KAYE SCHOLER LLP

1

1.    **The Chronology of the Actions Supports Dismissal, Transfer or Stay of this Action**

Hearthside commenced the Oregon Action on October 13, 2011, which was 6 days before Plaintiff commenced the instant action in this Court, on October 19, 2011.  Hearthside's commencement of the Oregon Action before Plaintiff commenced this lawsuit supports the application of the first-to-file rule.  *See Guthy-Renker*, 179 F.R.D. at 270 (first-to-file rule favored where declaratory judgment action filed before patent infringement suit); *see also Alltrade*, 946 F.2d at 625.

2.    **Dismissal, Transfer or Stay is Proper Because the Parties are Identical**

The first-to-file rule is further satisfied when two actions are substantially similar or substantially overlap.  *Peta, Inc. v. Beyond the Frame, Ltd.*, No. 10-cv-07576, 2011 WL 686158, at *2 (C.D. Cal. Feb. 16, 2011) (noting that first-to-file rule does not require exact identity of parties and issues).  In this case, the parties to both the Oregon Action and this action are the same.  Thus, neither action involves additional parties whose rights would be prejudiced by a dismissal, transfer, or stay of this action in favor of the Oregon Action.

3.    **Dismissal, Transfer or Stay is Proper Because the Issues in Both Actions are Essentially Identical**

Although there are multiple marks at issue in both the Oregon Action and the instant action, both cases involve identical issues—the dispute over the ownership and the use of the YOGI® and PEACE® marks.  *See Guthy-Renker*, 179 F.R.D. at 270 (finding identity of issues where declaratory action and patent infringement action both involved the construction and application of same patent); *see also Pacesetter*, 678 F.2d at 95-96 (finding similarity of issues between actions even though different remedies were sought, as the central issues focused on same three patents).  Because the issues in Plaintiff's lawsuit also form the basis of the Oregon

4

1   Action, Plaintiff will still have an adequate remedy if this Court dismisses, transfers

2   or stays this action in deference to the Oregon Action.

3   **B.      No Exceptions to the First-to-File Rule Apply**

4           Where there is a substantial identity of parties and issues between two related

5   lawsuits pending in different jurisdictions, the first-to-file rule should apply in the

6   absence of any applicable exception. *See Broadcom Corp. v. Qualcomm Inc.*, No.

7   05-cv-468, 2005 WL 5925585, at *2 (C.D. Cal. Sept. 26, 2005) (first-to-file rule is

8   applied unless "it would be unjust or inefficient to proceed with the first-filed

9   case"). The primary exceptions to the first-to-file rule are bad faith, anticipatory

10  suit, and forum shopping. *See Alltrade*, 946 F.2d at 628. Courts in this district

11  have also balanced the convenience of the parties in applying the first-to-file rule.

12  *See Summit Entm't, LLC v. Bath & Body Works Brand Mgmt.*, No. 11-cv-3570,

13  2011 WL 2649973, at *2 (C.D. Cal. July 5, 2011) (balancing convenience of first-

14  filed forum with second-filed forum and concluding that location of witnesses and

15  evidence did not warrant departure from first-to-file rule where both parties had

16  equally compelling reasons to hear the case in their chosen jurisdiction); *see also*

17  *Guthy-Renker*, 179 F.R.D. at 272-73 (finding convenience of parties and witnesses

18  insufficient to allow transfer from first-filed forum). None of those exceptions to

19  the first-to-file rule are applicable here.

20          **1.      There is no Indication of Bad Faith**

21          There is no indication that Hearthside acted in bad faith by commencing the

22  Oregon Action. Prior to commencing litigation, Plaintiff and Hearthside engaged

23  in six weeks of discussions regarding rights to and ownership of the YOGI®,

24  PEACE®, and GOLDEN TEMPLE marks. As part of those negotiations,

25  Hearthside agreed, on or about September 9, 2011, that it would refrain from

26  commencing litigation relating to its use of the YOGI® and PEACE® marks, but

27  only through the date of Hearthside's response to Plaintiff's settlement demand,

28  which was originally anticipated to be provided on September 16, 2011, but was

1   not ultimately provided until September 19, 2011.  (Gaspar Decl. ¶ 9.)  It was only

2   when it became clear to Hearthside that further negotiations with Plaintiff would be

3   futile that Hearthside commenced the Oregon Action on October 13, 2011, one

4   month after the period in which Hearthside had agreed not to commence litigation

5   had expired.  (Gaspar Decl. ¶¶ 7-8.)  Hearthside commenced the Oregon Action in

6   order to protect its rights regarding the YOGI®, PEACE®, and GOLDEN

7   TEMPLE marks.  (Gaspar Decl. ¶ 8.)  At no time did Hearthside negotiate in bad

8   faith or attempt to mislead Plaintiff into believing that a negotiated settlement was

9   imminent, nor did Hearthside lull Plaintiff into a false sense of complacency.

10  (Gaspar Decl. ¶ 7.)  *Summit Entm't*, 2011 WL 2649973, at *1 (finding absence of

11  bad faith where filer of declaratory action did not mislead Plaintiff into thinking

12  settlement would occur although filer delayed service of declaratory action 44

13  days).

14       **2.      Hearthside's Declaratory Judgment was Not an Anticipatory Suit**

15       Hearthside's commencement of the Oregon Action was not an attempt to

16  preempt the instant suit because the Oregon Action seeks a "benefit beyond the

17  scope of what [Plaintiff] could be expected to bring suit for."  *Kerr Corp. v. N. Am.*

18  *Dental Wholesalers*, No. 11-cv-0313, 2011 WL 4965111, at *5 (C.D. Cal. Oct. 18,

19  2011) (defendant's declaratory judgment action was non-anticipatory because it

20  sought to obtain redress for wrongs done by plaintiff, which were actions in

21  addition to the allegations of trademark infringement in plaintiff's complaint).

22  Specifically, the Oregon Action seeks judgment concerning the use and ownership

23  of the GOLDEN TEMPLE mark, while Plaintiff's trademark infringement action

24  does not include this mark.  In addition, as noted, the Oregon Action was filed only

25  after six weeks of written and oral settlement communications between the parties,

26  at which point it became clear to Hearthside that it would be unable to reach a

27  negotiated resolution with Plaintiff.  *Sony Comp. Entm't Am. Inc. v. Am. Med.*

28  *Response, Inc.*, No. 06-cv-06603, 2007 WL 781969, at *4 (N.D. Cal. Mar. 13,

KAYE SCHOLER LLP

6

2007) (finding filing of declaratory action did not deter settlement negotiations where parties already had been negotiating settlement for four months).  Hearthside involved itself in substantial settlement discussions with Plaintiff concerning the YOGI®, PEACE® and GOLDEN TEMPLE marks, and did not "race to the courthouse" upon Plaintiff's first communication concerning the use and ownership of the marks.  *Guthy-Renker*, 179 F.R.D. at 271 (anticipatory suit exception to first-to-file rule exists to prevent "the race to the courthouse door in an attempt to preempt a later suit in another forum").  Thus, it is clear that Hearthside's declaratory action was not a preemptory tactic, but the only reasonable option to resolve the current dispute and to protect its own trademark rights.

### 3.     There is No Indication of Forum Shopping

There is nothing to suggest that Hearthside commenced the Oregon Action in order to forum shop.  Indeed, Hearthside filed the Oregon Action in what amounts to its home forum, where all of its operations relating to the YOGI® and PEACE® marks are based, where all of the products that bear the allegedly infringing marks are and have always been manufactured, and where the allegedly infringing marks are affixed to those products.  (Gaspar Decl. ¶¶ 10-13.)  A party does not engage in forum shopping by filing suit in its home district.  *Stomp, Inc. v. Neato, LLC*, 61 F.Supp.2d 1074, 1082 (C.D. Cal. 1999).  Moreover, and as further discussed below, Hearthside's chosen forum of Oregon is more convenient and appropriate for resolution of this dispute because both parties have strong ties to the District of Oregon and Hearthside's use of the subject marks is undeniably centered in Oregon.  *See, e.g.*, *Summit Entm't*, 2011 WL 2649973, at *1 (finding absence of forum shopping where declaratory action filed only after settlement negotiations failed, in forum with which filer had substantial connections).  To the extent anyone has engaged in forum shopping here, it is Plaintiff, who has a history of filing lawsuits related to the subject marks in improper venues.  *See Puri v. Golden Temple of Oregon, LLC*, No. 10-cv-882-JFW Civil Minutes (C.D. Cal. June 9, 2010)

KAYE SCHOLER LLP

1   (dismissing Plaintiff's trademark infringement complaint against GTO based on the

2   existence of arbitration provision in the 2004 License Agreement which required

3   arbitration in Portland, Oregon).

### 4.      The District of Oregon is a Convenient Forum for Both Parties

5          As further discussed below, the District of Oregon is convenient for both

6   Plaintiff and Hearthside as both parties exhibit significant and substantial

7   connections to that district.  The agreements by which Plaintiff alleges GTO

8   obtained rights to the YOGI® and PEACE® marks were negotiated, in part, in

9   Oregon.  (Gaspar Decl. ¶ 4.)  Similarly, the agreements by which GTO licensed the

10  YOGI® marks and assigned the PEACE® marks to Hearthside were also

11  negotiated, in part, in Oregon.  (Gaspar Decl. ¶ 3.)  All of the products bearing the

12  allegedly infringing marks are manufactured by Hearthside in Oregon, where those

13  marks are affixed to those products.  (Gaspar Decl. ¶¶ 10-13.)  Furthermore, after

14  improperly attempting to pursue a trademark infringement claim against GTO in

15  this Court, *Puri v. Golden Temple*, Case No. 10-cv-882-JFW Civil Minutes (C.D.

16  Cal. June 9, 2010), Plaintiff initiated an arbitration proceeding against GTO in

17  Oregon pursuant to the 2004 License Agreement concerning the YOGI® mark, and

18  also commenced litigation in Oregon regarding, *inter alia*, her ownership and

19  control over Unto Infinity, LLC, one of GTO's parent entities.  (Gaspar Decl. ¶ 6,

20  16.)   Indeed, the only potentially relevant evidence existing in California is the

21  Plaintiff's own testimony; but Plaintiff has already demonstrated her willingness to

22  travel to Oregon to litigate these issues and related issues by commencing an

23  arbitration proceeding and a lawsuit in that forum.  Further, while there may be

24  some information related to this dispute outside of Oregon (for example, at

25  Hearthside's corporate headquarters in Illinois), that does not warrant disregard of

26  the first-to-file rule.  *See Guthy-Renker*, 179 F.R.D. at 273 (location of some

27  witnesses and evidence outside of first-filed forum does not warrant departure from

28

first-to-file rule).  The District of Oregon is the most appropriate and most convenient location for resolution of this dispute.

## II.  ALTERNATIVELY, THIS ACTION SHOULD BE TRANSFERRED TO THE UNITED STATE DISTRICT COURT FOR THE DISTRICT OF OREGON UNDER 28 U.S.C. § 1404(a)

Section 1404(a) provides for the transfer of actions to other districts based on the convenience of parties, convenience of witnesses, and the interests of justice. 28 U.S.C. § 1404(a).  Courts "adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).  Courts have identified the following non-exclusive list of relevant factors:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Id.* at 498-99.  Here, apart from Plaintiff's residence within this judicial district, all of the other factors favor transfer of this action to the District of Oregon or are neutral.

**1.  Relevant Agreements.**  There are two sets of relevant agreements at issue.  The first set are the oral and written agreements pursuant to which Plaintiff alleges she and Yogi Bhajan granted GTO a license to use the YOGI® and the PEACE CEREAL® marks by manufacturing products bearing those marks in Oregon.  (Gaspar Decl. ¶ 10-13.)  Pursuant to those agreements, GTO (and later Hearthside) manufactured all of the products that bear the allegedly infringing marks

9

KAYE SCHOLER LLP

1   exclusively in Oregon.  (Gaspar Decl. ¶¶ 4, 12.)  It is also important to note that in

2   the 2004 License Agreement, Plaintiff agreed that "[a]ny controversy or claim

3   arising out of, or relating to, this Agreement . . . shall be settled by arbitration in

4   Portland Oregon."  (Gaspar Decl., Ex. A at § 19.)  Moreover, Plaintiff did, in fact,

5   initiate an arbitration proceeding against GTO in Portland, Oregon, based on that

6   provision of the 2004 License Agreement  (Gaspar Decl. ¶ 6), but only after this

7   Court rejected Plaintiff's attempt to litigate that dispute with Golden Temple in this

8   Court despite the 2004 License Agreement's arbitration provision. *See Puri v.*

9   *Golden Temple of Oregon, LLC*, Case No. 10-cv-882-JFW Civil Minutes (C.D. Cal.

10  June 9, 2010).

11         The second set of relevant agreements are the asset purchase agreement and

12  related ancillary agreements pursuant to which Hearthside acquired GTO's cereal

13  business along with the PEACE® marks and a license to use the YOGI® marks.

14  Gaspar Decl. ¶ 2.)  Those agreements were negotiated and executed in Oregon (on

15  behalf of GTO) and in Illinois (on behalf of Hearthside).  (Gaspar Decl. ¶ 3.)  Thus,

16  Hearthside's rights in the subject marks originated from its purchase from GTO of

17  assets located in Oregon.

18         **2.    State Most Familiar with Governing Law.**  This factor is neutral as

19  Plaintiff's claims primarily sound in federal trademark law with ancillary, and

20  largely duplicative, state law claims, which are susceptible to capable resolution by

21  either this Court or the District of Oregon.  *See, e.g., Zumba Fitness, LLC v. Brage*,

22  No. 11-cv-5361, 2011 WL 4732812, at *8 (C.D. Cal. Oct. 6, 2011) (finding

23  transferee court "fully capable of applying federal [trademark and copyright] law"

24  and duplicative state law claims); *see also Allstar Mktg. Group, LLC v. Your Store*

25  *Online, LLC*, 666 F. Supp. 2d 1109, 1133 (C.D. Cal. 2009) (finding factor carries

26  little weight when plaintiffs assert primarily federal trademark and copyright claims

27  despite presence of duplicative state law claims).

28

KAYE SCHOLER LLP

**3.      Plaintiff's Choice of Forum.**  This factor militates only slightly against transfer.  The deference granted to a plaintiff's choice of forum is diminished where, as here, the plaintiff's chosen forum lacks a significant connection to the events that gave rise to the complaint.  *See, e.g., Turner v. Harrah's New Orleans Hotel & Casino*, No. 10-cv-5879, 2011 WL 1666925, at *5 (C.D. Cal. Apr. 7, 2011).  Here, Plaintiff has chosen a forum that, while convenient for her, bears no nexus with the facts underlying the instant dispute or the marks at issue.  By contrast, there is a strong nexus between this dispute and the underlying marks and Oregon.  Moreover, while Plaintiff commenced this action in her home forum, as noted above, Hearthside had previously commenced the Oregon Action involving the same parties and essentially the same issues in its home forum, where it manufactures all of the goods bearing the allegedly infringing marks.  (Gaspar Decl. ¶¶ 8, 12.)

**4.      Parties' Contacts with the Forum.**  Plaintiff's residence within this judicial district is the only connection between the parties and this forum that are relevant to the claims at issue in this lawsuit.  (Gaspar Decl. ¶ 17.)  By contrast, Oregon is host to all of Hearthside's manufacturing operations arising from its purchase of GTO's cereal business and, therefore, the location where all of the products that allegedly infringe on plaintiff's rights are marked.  (Gaspar Decl. ¶¶ 2, 10-13.)  In addition, Plaintiff has availed herself of the services of the Arbitration Service of Portland, Oregon to resolve trademark disputes that underlie the claims she asserts in the instant lawsuit, and has also availed herself of the U.S. District Court for the District of Oregon to litigate a dispute involving her alleged rights of ownership and control over Unto Infinity, LLC, one of GTO's parent entities, and its assets, including the assets that were sold to Hearthside and also including all of the trademarks that are the subject of this action.  (Gaspar Decl. ¶¶ 6, 16.)  This factor, therefore, weighs heavily in favor of transfer to Oregon.  *Turner*, 2011 WL 1666925, at *6 (factor "weighs heavily in favor of transfer" where plaintiff's residence is only significant contact with forum).

11

1    **5.     Contacts Relating to the Plaintiff's Cause of Action in the Chosen**

2    **Forum.**  Apart from Plaintiff's residence, there are no contacts relating to Plaintiff's

3    cause of action that are situated in this forum.  (Gaspar Decl. ¶ 17.)

4    **6.     Differences in the Costs of Litigation in the Two Forums.**  This

5    factor also weighs in favor of transfer.  Courts have recognized that "litigation costs

6    are reduced when venue is located near most of the witnesses expected to testify or

7    give depositions." *Global Décor, Inc. v. Cincinnati Ins. Co.*, No. 11-cv-2602, 2011

8    WL 2437236, at *4 (C.D. Cal. June 16, 2011) (quoting *Italian Colors Rest. v. Am*

9    *Express Co.*, No. 03-cv-3719, 2003 WL 22682482, at *5 (N.D. Cal. Nov. 10, 2003)).

10   As discussed in more detail below, virtually all of the witnesses knowledgeable

11   about the origins of the subject marks, ownership of the subject marks, the licensing

12   of the subject marks to GTO and to Hearthside, and the use of the subject marks by

13   Hearthside are located in Oregon.  (Gaspar Decl. ¶ 18.)  By contrast, the only witness

14   knowledgeable about the underlying facts in this case who is located in California is

15   the Plaintiff.  (Gaspar Decl. ¶ 17.)  Inconvenience to a party is less significant than

16   inconvenience to third-party witnesses.  *See, e.g., King v. SAM Holdings, LLC*, No.

17   10-cv-04706, 2011 WL 4948603, at *3 (N.D. Cal. Oct. 18, 2011).

18   **7.     Availability of Compulsory Process to Compel Attendance of Non-**

19   **party Witnesses.**  Courts have highlighted the significance of this factor in

20   determining motions to transfer venue.  Because parties are already incented to

21   produce their own employees, business partners and other allies to testify at trial, and

22   because discovery over third parties can be conducted pursuant to Fed. R. Civ. P. 45

23   across the country, the "principal concern along these lines is to make non-party

24   witnesses available for trial.  The aim is to minimize the risk of 'trial by deposition.'"

25   *Allstar Mktg. Group*, 666 F. Supp. 2d at 1133 (quoting *Worldwide Fin. LLP v.*

26   *Kopko*, No. 03-cv-0428, 2004 WL 771219, at *3 (S.D. Ind. Mar. 18, 2004)).

27   Except for Plaintiff, virtually all of the witnesses with any knowledge of the

28   origin, use, and transfer of the subject marks are located in Oregon and, therefore,

12

KAYE SCHOLER LLP

1   would not be subject to compulsory process in this Court. Those witnesses include

2   Sopurkh Kaur Khalsa ("Sopurkh"), Peraim Kaur Khalsa ("Peraim"), Kartar Singh

3   Khalsa ("Kartar"), and Karam Singh Khalsa ("Karam"), who are all members of the

4   Board of Directors of Unto Infinity, LLC, one of GTO's parent entities. (Gaspar

5   Decl. ¶ 18.) In addition, Sopurkh, Kartar, and Karam are (or were) officers of

6   GTO. As such, those individuals have knowledge relating to: (i) GTO's acquisition

7   of rights to use the YOGI® marks; (ii) GTO's ownership of the PEACE® marks;

8   (iii) GTO's use of the YOGI® and PEACE® marks; (iv) GTO's registration of the

9   PEACE® marks; and (v) GTO's license of the YOGI® marks and sale of the

10  PEACE® marks to Hearthside. (Gaspar Decl. ¶ 18.)

11          Guru Sundri Kaur Khalsa and Ajeet Singh Khalsa are GTO employees

12  located in Oregon who have knowledge regarding the negotiation of Hearthside's

13  acquisition of the cereal business from GTO and, therefore, of GTO's licensing of

14  the YOGI® marks and sale of the PEACE® marks to Hearthside. (Gaspar Decl. ¶

15  18.) In addition, Greg Murphy, who served as an advisor to GTO in connection

16  with Hearthside's acquisition of GTO's cereal business and who also has

17  knowledge about the license of the YOGI® marks and sale of the PEACE® marks

18  to Hearthside is also located in Oregon. (Gaspar Decl. ¶ 18.)

19          None of those witnesses could be compelled to testify at trial if this action

20  proceeds in this Court, though they all could be compelled to testify at trial in the

21  District of Oregon.

22          **8.     Ease of Access to Proof.** Convenience of witnesses has been described

23  as the "most important factor" in considering a transfer motion under Section

24  1404(a). *Zumba Fitness*, 2011 WL 4732812, at *8. As noted, virtually all of the

25  witnesses competent to testify as to the facts underlying this dispute are residents of

26  Oregon. (Gaspar Decl. ¶ 18.) In addition, GTO's documents related to the subject

27  marks are located in Oregon, as are the documents Hearthside acquired from GTO.

28  (Gaspar Decl. ¶ 15.) While technology has decreased the costs associated with the

KAYE SCHOLER LLP

1   production of documents, courts have noted that "the possibility that documents can

2   be produced electronically does not alter the conclusion that the cost of litigation will

3   likely be less if the case were venued in a forum where the evidence is located."

4   *Global Décor*, 2011 WL 2437236, at *5 (quoting *Patent Mgmt. Found., LLC v.*

5   *Analog Devices, Inc.*, No. 10-cv-03630, 2011 WL 197831, at *4 (N.D. Cal. Jan. 20,

6   2011)).

7        **9.      Other Factors.**  Oregon has a strong interest in resolving this Oregon-

8   centered dispute.  Except for the fact that Plaintiff is a resident of California,

9   California has no other connection to this case or, therefore, any peculiar interest in

10  adjudicating this dispute.  By contrast, this dispute arises from two different series of

11  agreements, all of which were negotiated, executed and effectuated in Oregon, and

12  none of which were negotiated, executed or effectuated in California.  Moreover, the

13  products bearing the marks at issue in this lawsuit are, and have always been,

14  manufactured in Oregon, where Hearthside maintains its production facilities for

15  those brands and where it employs more than 200 employees.  *See, e.g.*, *King,*  2011

16  WL 4948603, at *4 (finding transferee forum had a "strong local interest" in

17  resolving dispute arising out of negotiations and agreements that were effectuated in

18  the transferee court's district).  Because California has virtually no interest in this

19  dispute, it would be unfair to burden its citizens with the adjudication of this dispute.

20  *Id.*

21        Judicial economy would also be achieved by transferring this action to

22  Oregon, where it could be consolidated with Hearthside's already-pending

23  declaratory judgment action.  *Wood v. Best Buy Co., Inc.*, No. 11-cv-1877, 2011

24  WL 3740812, at *1-*2 (N.D. Cal. Aug. 25, 2011) (allowing two cases involving the

25  same issues to proceed leads to the waste of time, energy and money that § 1404(a)

26  was designed to prevent).  Transfer of this action to Oregon and consolidation with

27  Hearthside's pending complaint would also prevent the possibility of inconsistent

28  results, which also favors transfer.  *Id.* at *2.

KAYE SCHOLER LLP

14

**CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court GRANT its motion and dismiss, transfer or stay this proceeding to the United States District Court for the District of Oregon.

Dated: November 14, 2011

Respectfully submitted,

KAYE SCHOLER LLP

By:   /s/  Rhonda R. Trotter
        Rhonda R. Trotter
Attorneys for Defendant
HEARTHSIDE FOOD SOLUTIONS, LLC

15