1  Rhonda R. Trotter (State Bar No. 169241)
   Email address:  rtrotter@kayescholer.com
2  Amanda Myers (State Bar No. 267591)
   Email address: amanda.myers@kayescholer.com
3  KAYE SCHOLER LLP
   1999 Avenue of the Stars, Suite 1700
4  Los Angeles, California  90067
   Telephone:  (310) 788-1000
5  Facsimile:  (310) 788-1200

6  Attorneys for Defendant
   Hearthside Food Solutions, LLC
7

8

9               UNITED STATES DISTRICT COURT

10        FOR THE CENTRAL DISTRICT OF CALIFORNIA

11                    WESTERN DIVISION

12  BIBIJI INDERJIT KAUR PURI,        )   Case No. CV 11-08675-JFW (SSx)
                                      )
13              Plaintiff,            )   DECLARATION OF JAMES J.
                                      )   GASPAR IN SUPPORT OF
14        v.                          )   HEARTHSIDE FOOD
                                      )   SOLUTIONS, LLC'S MOTION TO
15  HEARTHSIDE FOOD                   )   DISMISS, STAY OR TRANSFER
    SOLUTIONS, LLC,                   )
16                                    )   Date:     December 19, 2011
                Defendant.            )   Time:     1:30 p.m.
17                                    )   Place:    Courtroom 16
                                      )
18                                    )
                                      )
19  _____ )   Hon. John F. Walter

20

21

22

23

24

25

26

27

28

KAYE SCHOLER LLP

I, James J. Gaspar, declare as follows:

1.     I am, and at all times since May 2010 have been, the Vice President and General Manager of Hearthside Food Solutions, LLC's ("Hearthside") operations in Eugene, Oregon.  In that capacity, I am familiar with Hearthside's management, licensing, and use of the trademarks that are at issue in this lawsuit, as well as with the identity and location of the documents and witnesses that will be relevant to this lawsuit.  I have personal knowledge of the facts stated herein.

2.     In 2010, Hearthside acquired certain assets from Golden Temple of Oregon ("GTO") constituting GTO's cereal business, but not GTO's tea business. Included among the assets Hearthside purchased from GTO were the "PEACE CEREAL®" trademark ("the PEACE® marks") and the GOLDEN TEMPLE marks, and a royalty-free license to use "Yogi Tea®" and "YOGI®" (collectively "the "YOGI® marks") until May 2012.

3.     The agreements under which Hearthside purchased those assets from GTO were negotiated and executed in Oregon, on behalf of GTO, and in Illinois, on behalf of Hearthside.  In connection with those agreements, except some documents housed in a "virtual data room," Hearthside conducted all of its due diligence relating to the assets it purchased from GTO, including on-site inspections of the manufacturing facilities, in Oregon.

4.     I understand, from information obtained during due diligence and information I have learned subsequent to Hearthside's purchase of GTO's cereal

2

business, that, beginning in or about 1984, Plaintiff's deceased husband, Yogi Bhajan, granted the Yogi Tea Company, and its successor-in-interest GTO, oral licenses to use the Yogi Tea® and YOGI® marks in connection with the sale of teas and food products. I understand that, in July 2004, those oral licenses were replaced with a written license agreement, which was subsequently superseded by another license agreement in October 2004 ("2004 License Agreement"). A true and correct copy of the 2004 License Agreement is attached hereto as **Exhibit A**. I also understand those agreements granted GTO the rights to use the YOGI® marks in connection with GTO's tea and cereal products, all of which were manufactured in Oregon at all times. In the 2004 License Agreement, the parties agreed that any controversy or claim arising out of, or relating to, the Agreement would be settled by arbitration in Portland, Oregon.

     5.     In or about early September 2011, Bibiji Inderjit Kaur Puri ("Plaintiff"), through counsel, approached Hearthside and accused Hearthside of infringing certain trademark rights she held. Those discussions originated with Plaintiff's purported ownership of the YOGI® marks, but eventually extended to include Plaintiff's purported ownership of the PEACE® marks.

     6.     According to Plaintiff's counsel, Plaintiff's rights in the YOGI® marks and, by association the PEACE® marks, were resolved by an interim decision by an arbitration panel operating under the auspices of the Arbitration Service of Portland. That arbitration was commenced by Plaintiff and was asserted solely

against GTO pursuant to the 2004 License Agreement. Hearthside was neither a party to that arbitration proceeding nor participated in that arbitration proceeding.

7.     By October 13, 2011, it had become clear to Hearthside that Plaintiff's demands were unreasonable and that Hearthside would not be able to resolve the dispute relating to Hearthside's use of the YOGI® and PEACE® marks through further negotiations with Plaintiff. At no point in time did Hearthside ever suggest to Plaintiff that a negotiated settlement of this dispute was imminent.

8.     As a result, on October 13, 2011, Hearthside caused the action styled *Hearthside Food Solutions, LLC v. Bibiji Inderjit Kaur Puri*, Case No. CV 11-1238, to be commenced in the United States District Court for the District of Oregon ("Oregon Action"). A true and correct copy of the complaint filed in the Oregon Action ("Oregon Complaint") is attached hereto as **Exhibit B**. The Oregon Action was commenced in order to protect Hearthside's rights to the YOGI®, PEACE®, and GOLDEN TEMPLE marks.

9.     While Plaintiff and Hearthside had agreed, through an exchange of letters on September 8 and 9, 2011, to mutually refrain from commencing any actions relating to Hearthside's use of the subject marks, that agreement only extended through Hearthside's response to Plaintiff's settlement demand, which was originally anticipated to be provided on September 16, 2011 but was not ultimately provided to Plaintiff until September 19, 2011. In no event did

KAYE SCHOLER LLP

Hearthside agree to refrain from commencing litigation relating to the subject marks at any point in time after September 19, 2011.

10.    Hearthside's operations relating to the YOGI®, PEACE®, and GOLDEN TEMPLE marks are based exclusively in Oregon.

11.    The manufacturing facilities Hearthside purchased from GTO are and always have been located in Oregon.

12.    All of the products Hearthside sells that bear the YOGI®, PEACE®, and GOLDEN TEMPLE marks are and have always been manufactured in Oregon.

13.    The packaging bearing the YOGI®, PEACE®, and GOLDEN TEMPLE marks is manufactured and affixed to Hearthside's products in Oregon.

14.    Hearthside's sole operational connection with California is the presence of a single sales representative.

15.    Hearthside's documents relating to the cereal business it acquired from GTO and the YOGI® and PEACE® marks are located primarily in Oregon and secondarily in Illinois.  I understand GTO's documents relating to those marks are also located in Oregon.  Hearthside has no documents relating to the cereal business it acquired from GTO located in California.

16.    In addition to the arbitration Plaintiff commenced in Portland, Oregon under the auspices of the Arbitration Service of Portland and pursuant to the 2004 License Agreement, I understand Plaintiff also commenced an action in the Circuit Court for the State of Oregon for Multnomah County against certain

5

individuals and Unto Infinity, LLC, claiming that she was improperly excluded from her ownership and management rights in certain entities, including the entity that owned GTO at the time Hearthside purchased the cereal assets from GTO and the accompanying rights to the YOGI®, PEACE®, and GOLDEN TEMPLE marks.

17.    The only connection between California and the claims and facts at issue in the Oregon Action and the instant action of which I am aware is the fact that Plaintiff apparently resides in California.

18.    The following table identifies certain potential witnesses with knowledge of some of the facts and issues disputed in this lawsuit, including their affiliation, their location, and the subject matter of their anticipated testimony:

| Potential Witness | Affiliation and Title | Location | Subject Matter of Anticipated Testimony |
|---|---|---|---|
| Richard Scalise | Hearthside CEO | Illinois | • Hearthside's license to use the YOGI® marks from GTO<br>• Hearthside's acquisition of the PEACE® marks<br>• Hearthside's use of the YOGI® and PEACE® marks |
| Jim Gaspar | Hearthside VP and General Manager | Oregon/ Arizona | • Hearthside's license to use the YOGI® marks from GTO<br>• Hearthside's acquisition of the PEACE® marks<br>• Hearthside's use of the YOGI® and PEACE® marks |

KAYE SCHOLER LLP

| Potential Witness | Affiliation and Title | Location | Subject Matter of Anticipated Testimony |
|---|---|---|---|
| Sopurkh Kaur Khalsa | Unto Infinity Director | Oregon | • GTO's acquisition of rights to use the YOGI® marks<br>• GTO's ownership of the PEACE® marks<br>• GTO's use of the YOGI® and PEACE® marks<br>• GTO's registration of the PEACE® marks<br>• GTO's license of the YOGI® marks and sale of the PEACE® marks to Hearthside |
| Peraim Kaur Khalsa | Unto Infinity Director | Oregon | • GTO's acquisition of rights to use the YOGI® marks<br>• GTO's ownership of the PEACE® marks<br>• GTO's use of the YOGI® and PEACE® marks<br>• GTO's registration of the PEACE® marks<br>• GTO's license of the YOGI® marks and sale of the PEACE® marks to Hearthside |
| Kartar Singh Khalsa | Unto Infinity Director and GTO CEO | Oregon | • GTO's acquisition of rights to use the YOGI® marks<br>• GTO's ownership of the PEACE® marks<br>• GTO's use of the YOGI® and PEACE® marks<br>• GTO's registration of the PEACE® marks<br>• GTO's license of the YOGI® marks and sale of the PEACE® marks to Hearthside |

KAYE SCHOLER LLP

60484108                                    DECL. OF JIM GASPAR

| Potential Witness | Affiliation and Title | Location | Subject Matter of Anticipated Testimony |
|---|---|---|---|
| Karam Singh Khalsa | Unto Infinity Director and GTO CFO | Oregon | • GTO's acquisition of rights to use the YOGI® marks<br>• GTO's ownership of the PEACE® marks<br>• GTO's use of the YOGI® and PEACE® marks<br>• GTO's registration of the PEACE® marks<br>• GTO's license of the YOGI® marks and sale of the PEACE® marks to Hearthside |
| Guru Sundri Kaur Khalsa | GTO Financial Analyst | Oregon | • GTO's license of the YOGI® marks and sale of the PEACE® marks to Hearthside |
| Ajeet Singh Khalsa | GTO Director of Operations | Oregon | • GTO's license of the YOGI® marks and sale of the PEACE® marks to Hearthside |
| Greg Murphy | Next Stage Advisors Principal | Oregon | • GTO's license of the YOGI® marks and sale of the PEACE® marks to Hearthside |
| Bibiji Inderjit Kaur Puri | Plaintiff | California | • Plaintiff's purported ownership of the YOGI® and PEACE® marks<br>• Licensing the YOGI® marks to GTO |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration is executed this _14th_ day of November, 2011, in _EUGENE, OR._.

Vice President and General Manager
Hearthside Food Solutions, LLC

8

# EXHIBIT A

## NONEXCLUSIVE TRADEMARK LICENSE AGREEMENT

This Nonexclusive Trademark License Agreement (the "Agreement") is made effective as of this 1st day of OCTOBER, 2004, among Harbhajan Singh Khalsa Yogiji, Trustee of the Harbhajan Singh Khalsa Yogiji and Inderjit Kanr Living Trust (the "Licensor"), Golden Temple of Oregon, Inc., an Oregon corporation ("Licensee") and, as to Section 15, Harbhajan Singh Khalsa Yogiji, individually.  Licensor and Licensee are sometimes referred to as the Parties to this Agreement.

### RECITALS

A.     Licensor and Licensee have previously concluded several licensing agreements, each of which is terminated by this Agreement, with this Agreement to be a full and complete substitute for all prior licensing agreements between the Parties.

B.     The terms of this Agreement reflect the desire of Licensor to maintain the existing level of royalty income and the desire of Licensee to pay reduced royalty rates for increasing levels of its Gross Sales.

In consideration of the mutual covenants and undertakings set forth below, it is agreed as follows:

1.     **Definitions.**

1.1     The term "**Confidential Information**" shall mean this Agreement and all confidential or otherwise proprietary business and technical information relating to the Parties and their respective business plans as well as any intellectual property disclosed by either Party under this Agreement. Confidential Information includes, but shall not be limited to, ideas, inventions, discoveries, improvements, know-how, trade secrets, drawings, blue-prints, long-range and short-range plans, production, manufacturing and sales techniques, financial statements and data, information, recipes, formulas, sources of supply, advertising, actual and prospective customers, pricing, costing, and accounting procedures.  Notwithstanding the foregoing, Confidential Information shall not include information that:

     (a)     is in the public domain at the time of disclosure by the disclosing Party;

     (b)     enters the public domain after disclosure by the disclosing Party through no fault of the receiving Party;

     (c)     was or is separately disclosed to the receiving Party by a third party not itself subject to an obligation of confidentiality to the disclosing Party with respect to such information;

     (d)     was in the receiving Party's possession at the time of disclosure by the disclosing Party; or

     (e)     was independently developed by the receiving Party without any use of the disclosing Party's Confidential Information.

1 - NONEXCLUSIVE TRADEMARK LICENSE AGREEMENT (includes final comments from Harijot 3/23/04)

Exhibit A
Page 9

1.2      The term "HSKY Marks" and "Marks" shall mean any trademark, servicemark, logo, insignia, seal, design, or other symbol or device used by or identifying Harbhajan Singh Khalsa Yogiji (also known as Yogi Bhajan), specifically including the name of Harbhajan Singh Khalsa Yogiji, or Yogi Bhajan, any likeness of him approved in accordance with this Agreement, and a facsimile of his signature confirming any statement of 150 words or less (approved in accordance with this Agreement) as his statement.

1.3      The term "Gross Sales" shall mean the total dollar amount of gross sales of Licensed Products by Licensee, after deducting any credits for returns actually made or allowed (as supported by credit memoranda actually issued to customers). The gross sale price of all Licensed Products must be reasonably determined by Licensee and must reflect any commercially reasonable price reduction, clearance sale pricing and other marketing discounts. Gross Sales resulting from sales to any party directly or indirectly related to or affiliated with Licensee shall be computed based on regular selling prices to the trade. No other costs incurred in the manufacturing, selling, advertising, and distribution of the Licensed Products shall be deducted in calculating Gross Sales, nor shall any deduction be allowed for any uncollectible accounts or allowances.

1.4      The term "Licensed Trademarks" shall mean the Marks as defined in Section 1.2 and listed on the attached Exhibit 1.4, which Exhibit may be amended from time to time by mutual agreement of the parties.

1.5      The term "Licensed Products" shall mean any product or part thereof bearing a Licensed Trademark and listed on the attached Exhibit 1.5, which Exhibit may be amended from time to time by mutual agreement of the parties.

2.       Grant of License.

2.1      Until terminated, as provided herein, Licensor hereby grants Licensee (1) an exclusive license to use Licensed Trademarks on Licensed Products anywhere in the world and (2) a non-exclusive license to manufacture, sell and distribute tea and chai Licensed Products in North America, central America, South America, Russia, and Australia and all other Licensed Products anywhere in the world, each in accordance with the terms of this Agreement.

2.2      No right is granted to Licensee to sublicense or otherwise transfer the right to use the Licensed Trademarks to third parties. No license is granted to Licensee hereunder for the manufacture, sales or distribution of Licensed Products to be used as premiums, for publicity purposes, for fund-raising, as giveaways, in combination sales, or to be disposed of under similar methods of merchandising. Licensee may not use any Licensed Trademarks in connection with any sweepstakes, lottery, game of chance, or similar promotional or sales device, scheme, or program.

2.3      Licensor's grant to Lciensee of the limited right to use a facsimile of the signature of Harbhajan Singh Khalsa Yogiji or Yogi Bhajan, in accordance with this Agreement, shall not be construed as a waiver, revocation, or relinquishment of any prior written prohibitions against such use by others.

*not in 10 yr. version*

2 - NONEXCLUSIVE TRADEMARK LICENSE AGREEMENT (includes final comments from
        Harijot 3/23/04)

**Exhibit A**
**Page 10**

3.     **KRI Approval.**

3.1     Each likeness of Yogi Bhajan must be approved in writing by Kundalini Research Institute ("KRI"), a California nonprofit corporation, for its consistency with the maintenance of the dignity of the teachings of Yogi Bhajan.

3.2     Each statement of 150 words or less must be verified for accuracy by KRI, with such verification to be confirmed in writing by KRI before any use of the statement by Licensee.

3.3     Any use of Yogi Bhajan copyrighted yogic or meditation technology must be verified for accuracy by KRI, with such verification to be confirmed in writing by KRI before any use of such technology by Licensee. Each use of Yogi Bhajan copyrighted yogic or meditation technology by Licensee must be accompanied by a copyright mark.

3.4     No Yogi Bhajan likeness, statement of 150 words or less, or Yogi Bhajan copyrighted yogic or meditation technology will be regarded as approved by KRI notwithstanding Licensee's receipt of a written statement from KRI confirming such approval, until Licensee has paid to KRI the fee invoiced to Licensee by KRI for its review and approval service.

4.     **Quality Assurance.**

4.1     To assure Licensor that its Licensed Products are comparable or better in quality to the other saleable merchandise in the Territory, Licensee agrees to submit, at Licensee's expense, samples of all proposed Licensed Products, including material modifications to such Licensed Products, to Licensor prior to any use, sale or other distribution to the public. Licensee agrees to withhold any use, sale or other distribution of such proposed Licensed Products until it receives written approval by Licensor. Licensor may withhold approval of proposed Licensed Products for any reason. Licensor agrees to promptly and reasonably respond to all such submissions.

4.2     Licensee agrees to maintain such reasonable manufacturing, servicing and quality standards as may from time to time be requested by Licensor. Licensee shall assure Licensor that Licensed Products manufactured and/or sold by it meet or exceed the quality and specifications of the samples approved by Licensor.

5.     **Trademark Use and Ownership.**

5.1     Licensee agrees to submit to Licensor copies of any packaging, advertisements or promotional materials containing Licensed Trademarks for Licensor's approval prior to any use thereof. Licensee agrees to remove any material which is objectionable to Licensor.

Licensor may withhold approval of any packaging, advertisements or promotional materials containing Licensed Trademarks for any reason. Licensor's approval in accordance with this Section 5.1 must be in writing with the following exceptions:

(a)     Licensor will be deemed to have approved any proposed use of a Licensed Trademark for a Licensed Product if that Licensed Trademark was previously approved for use

3 - NONEXCLUSIVE TRADEMARK LICENSE AGREEMENT (includes final comments from Harijot 3/23/04)
PDX/032833/082268/RDL/Comparite of 1123208 v5 and v7

**Exhibit A**
**Page 11**

for a different Licensed Product unless Licensor disapproves such use within thirty (30) days after approval is requested by Licensee in writing.

(b)    Licensor will be deemed to have approved any proposed use of a Licensed Trademark for a Licensed Product unless Licensor disapproves such use within sixty (60) days after approval is requested by Licensee in writing.

5.2    Licensee acknowledges Licensor's exclusive rights in and to the Licensed Trademarks, that the Licensed Trademarks are unique and original to Licensor and that Licensor is the owner thereof. Licensee agrees that it will not, during the term of this agreement or thereafter, challenge, dispute or contest, directly or indirectly, Licensor's exclusive right and title to the Licensed Trademarks or the validity thereof. Licensee agrees that it shall not apply for registration or otherwise seek to obtain ownership of any Licensed Trademarks, or any mark confusingly similar to any Licensed Trademarks, in any country.

5.3    Licensee agrees that its use of the Licensed Trademarks inures to the benefit of Licensor and that Licensee shall not acquire any rights in the Licensed Trademarks. Licensee acknowledges the good will associated with the Licensed Trademarks and that all rights therein belong exclusively to Licensor.

6.    **Rights Fee and Royalties.**

6.1    Licensee agrees to pay Licensor a royalty equal to Gross Sales for all Licensed Products sold by Licensee. The applicable royalty rate for each transaction yielding Gross Sales is specified on Exhibit 6.1 attached. Royalty payments shall be made monthly, and not later than fifteen (15) days following the end of each calendar month. All royalties shall be paid in U.S. dollars to Licensor at its address set forth in Section 17.

6.2    A royalty obligation shall accrue upon the sale of the Licensed Products regardless of the time of collection by Licensee. A Licensed Product shall be considered "sold" upon the date when such Licensed Product is billed, invoiced, shipped or paid for, whichever event occurs first.

6.3    Upon termination of this Agreement, all royalty obligations shall be accelerated and shall immediately become due and payable.

6.4    Licensee's obligations for the payment of a royalty shall survive termination of this Agreement and will continue for so long as Licensee continues to manufacture, sell or otherwise market the Licensed Products.

6.5    If the Licensee elects to extend the term of this Agreement in accordance with Section 9.1, the royalty rate specified on Exhibit 6.1 must be adjusted for Gross Sales during the extended term of the Agreement. The adjusted royalty rate will be as agreed by the Parties. If the Parties cannot agree on an adjusted royalty rate within thirty (30) days after the Licensee's election to extend the term of this Agreement, the royalty rate must be determined by appraisal of an accredited senior appraiser with the American Society of Appraisers acceptable to both Parties. If the Parties cannot agree on an appraiser, the appraiser shall be designated by the presiding judge of the court of general jurisdiction located in the county in which is located the

4 - NONEXCLUSIVE TRADEMARK LICENSE AGREEMENT (includes final comments from Harijot 3/23/04)
PDX/032833/082268/RDL/Comparite of 1123208 v5 and v7

Licensee's principal place of business. The appraiser to be so designated must be an accredited senior appraiser with the American Society of Appraisers.

7.     **Accounting and Reporting.**

7.1     Licensee shall submit to Licensor monthly reports of all its Gross Sales of Licensed Products. These reports shall itemize all sales of Licensed Products by units, dollars, and product category and style. The receipt or acceptance by Licensor of any royalty statement, or the receipt or acceptance of any royalty payment made, shall not prevent Licensor from subsequently challenging the validity or accuracy of such statement or payment.

7.2     Licensee shall keep account books, records and duplicates of all invoices to customers showing the manufacture and sales or other distribution of Licensed Products. The books, records and invoices shall be maintained for a period of at least five (5) years after the payment of the corresponding royalty and shall be available for inspection and copying by duly authorized representatives of Licensor during regular business hours upon reasonable notice. Licensee shall cooperate fully with Licensor in making the inspection.

7.3     Once during each year in which this Agreement is in effect, and once after termination of this Agreement, Licensor shall be entitled to an independent audit of Licensee's account books, records, invoices and other pertinent data. The audit shall be conducted at Licensee's place of business during normal business hours. In the event that such inspection reveals a discrepancy in the amount of royalty owed Licensor from what was actually paid, Licensee shall immediately pay such discrepancy, plus interest calculated at the rate of one and one-half percent (1.50%) per month. The cost of the audit will be paid by Licensor unless the audit shows that Licensee understated sales of Licensed Products by more than five percent (5%), in which case Licensee shall pay Licensor's costs of the audit, including all professional fees incurred.

7.4     The requirements of this Section 7 shall survive termination of this Agreement.

8.     **Confidentiality.** Each Party agrees to maintain in strict confidence and, except to the extent expressly permitted in this Agreement or otherwise consented to in writing by the other Party, not to use any Confidential Information received from the other Party except in connection with this Agreement. Each Party agrees to use reasonable efforts to protect the confidentiality of any Confidential Information received from the other Party and to prevent third party access to any documents or other items containing Confidential Information received from the other Party. Each Party agrees to treat the other's Confidential Information with the same degree of confidentiality and care as it treats its own Confidential Information, which shall be no less than reasonable care. The obligations of confidentiality and non-use contained in this Agreement will remain in effect perpetually, surviving any expiration or termination of this Agreement. Nothing in this Agreement shall modify or limit the confidentiality obligations of either Party arising under any other agreement.

9.     **Duration and Termination.**

9.1     **Duration.** The present Agreement is concluded for a period of ten (10) seventy-five (75) years, subject to Licensee's right to elect to extend the term of this Agreement for an

5 – NONEXCLUSIVE TRADEMARK LICENSE AGREEMENT (includes final comments from
    Harijot 3/23/04)
PDX/032833/082268/RDL/Comperite of 1123208 v5 and v7

additional ten (10) years by notice to Licensor of such election. The Licensee's election must be provided no earlier than one year, and no later than 90 days, prior to the end of the then term of this Agreement. In the event that Licensee elects to extend the term of this Agreement, all of the terms and conditions of this Agreement (including Licensee's right to elect to further extend the term of this Agreement in accordance with this Section 9.1) shall apply during the term as so extended and the royalty rate specified on Exhibit 6.1 attached must be adjusted in accordance with Section 6.5.

9.2    **Termination upon Default.** At any time during the term of this Agreement, either Party may terminate this Agreement upon sixty (60) days' written notice to the other Party if the other Party is in material breach in the performance of any of its obligations hereunder and (i) fails to cure the breach within sixty (60) days after receiving written notice of it, or (ii) if more than sixty (60) days is reasonably required to cure such breach, fails to commence in good faith and diligently to cure such breach within said sixty (60) day period.

9.3    **Termination by Agreement.** The Parties may terminate this Agreement at any time by mutual written agreement.

9.4    **Effect of Bankruptcy or Insolvency.** Licensor may terminate this Agreement in the event: (a) Licensee has ceased its business activities or has otherwise begun winding up its business affairs; (b) bankruptcy, reorganization, arrangement, or insolvency proceedings or other proceedings for relief under any bankruptcy or similar law or laws for the relief of debtors, are instituted by or against Licensee and are not dismissed within one hundred twenty (120) days; (c) a custodian, liquidator, receiver, or trustee is appointed for Licensee or the major part of its property; or (d) Licensee becomes insolvent or bankrupt, makes an assignment for the benefit of its creditors or makes any comparable arrangement with its creditors.

9.5    **Effect of Termination or Expiration.** Subject to the terms of this Section 9.5, termination of this Agreement by Licensor upon default by Licensee shall terminate all rights and licenses granted to Licensee under this Agreement, and Licensee agrees to cease its use, purchase, production and sale of the Licensed Products. Notwithstanding the foregoing, in the event of termination for default, Licensee shall have a limited license to continue to supply Licensed Products to customers from whom Licensee has received orders prior to Licensee's receipt of the notice of termination for a period of one (1) year from the date of termination, so long as Licensee continues to satisfy its royalty obligations under this Agreement.

9.6    **Equitable Remedies.** Licensee acknowledges that money damages alone are inadequate to compensate Licensor for any breach by Licensee of the Agreement. Therefore, in the event of a breach or threatened breach of any provision of the Agreement by Licensee, Licensor may, in addition to all other remedies, immediately obtain and enforce injunctive relief prohibiting the breach or compelling specific performance.

10.    **Notice of Infringement.** Licensee agrees to notify Licensor promptly of any known use of Licensed Trademarks by others not duly authorized by Licensor. No action, other than the above notification to Licensor, shall be taken by the Licensee for enforcement of any Licensed Trademarks subject to this Agreement.

6 - NONEXCLUSIVE TRADEMARK LICENSE AGREEMENT (includes final comments from Harijot 3/23/04)

Exhibit A
Page 14

11.     **Indemnification.**  Licensee shall indemnify, defend, and hold harmless Licensor, and its trustees, officers, directors, employees and agents from and against any and all claims, demands, damages, liabilities or judgments arising out of or in connection with Licensee's performance of this Agreement or Licensee's exercise of the license granted by this Agreement, including but not limited to any and all liability caused by or arising from the suitability for use or merchantability of any item manufactured or sold pursuant to this Agreement or the use of any Licensed Trademark pursuant to this Agreement.

12.     **Insurance.**

12.1    During the term of this Agreement, Licensee shall maintain in effect insurance in the combined amount of $1,000,000 per occurrence for bodily injury and property damage against claims, demands, or causes of action or damages, including reasonable attorney's fees, arising out of any alleged defects in the Licensed Products or in the use thereof.  The insurance policy(ies) shall include an endorsement naming Licensor as an additional insured insofar as this Agreement is concerned, and provide that notice shall be given to Licensor at least 30 days prior to cancellation or material change in the form or substance of such policy(ies).

12.2    Licensee shall promptly furnish Licensor with appropriate certificate(s) of insurance together with the endorsement(s) required herein.  Licensee shall not commence performance under this Agreement until certificate(s) of insurance and endorsement are submitted.  Licensee shall annually furnish Licensor, on the anniversary of this Agreement, appropriate certificate(s) of insurance and endorsement.

13.     **Termination of Prior Agreements.**  All prior licensing agreements between Licensor and Licensee are hereby terminated.

14.     **Grant of Recipe/Formula License.**

14.1    **License.**  Licensor hereby grants to Licensee the exclusive and perpetual license in the Exclusive Territory to develop, make, use, sell and offer for sale Products to the Licensed Market, and to incorporate into marketing and packaging of each Product words (but in no event more than 25 words) which communicate that the Product was developed or formulated by Yogi Bhajan for Yogic and Ayurvedic processes.

14.2    **Definitions.**  For purposes of this Section 14, the following terms have the definitions specified below.

(a)     **"Exclusive Territory"** means with respect to tea and chai Products, North America, Central America, South America, Russia and Australia; and with respect to all other products, the world.

(b)     **"Licensed Market"** means the food, body care and health products market.

(c)     **"Product"** means any food, body care or health product using any recipe or formulae previously developed by Yogi Bhajan or treated by Licensor and Licensee as so developed under a prior licensing agreement.

7 - NONEXCLUSIVE TRADEMARK LICENSE AGREEMENT (includes final comments from Harijot 3/23/04)

**Exhibit A**
**Page 15**

    14.3  **Payment for License.**  In consideration for the license granted in Section 14.1, Licensee will execute and deliver to Licensor that promissory note attached as **Exhibit 14.3**. This promissory note must be executed and delivered simultaneously with execution of this Agreement.

15.  **New Recipes/Formulae.**

    15.1  **New Recipes/Formulae.** Harbhajan Singh Khalsa Yogiji hereby acknowledges and agrees that (1) each recipe or formula he may develop subsequent to the effective date of this Agreement for any Product is to be licensed in accordance with Section 14.1; and (2) he will not develop any recipe or formula for any product other than a food, body care or health product without first granting to Licensee the first right to purchase such recipe or formula or license sales of such product, with Licensee to have sixty (60) days in which to exercise such right, and with Harbhajan Singh Khalsa Yogiji prohibited from selling the recipe or formula or licensing sales of such product at a price or on terms more favorable to the purchaser or licensee than the terms first offered to Licensee.

    15.2  **Consideration.**  In consideration of the obligations of Harbhajan Singh Khalsa Yogiji under Section 15.1, Licensee agrees to pay to Harbhajan Singh Khalsa Yogiji the sum of Two Thousand Five Hundred Dollars ($2,500.00) per month.  Licensee's obligation to make these monthly payments will terminate at the death of Harbhajan Singh Khalsa Yogiji.

16.  **Modifications and Waiver.**

    16.1  This Agreement shall not be amended or modified except in a writing signed by each party affected by the agreement or modification.

    16.2  No waiver by either Party of any breach or default of any of the provisions of this Agreement shall be deemed a waiver as to any subsequent and/or similar breach of default.

17.  **No Joint Venture.**  Nothing contained herein shall constitute this arrangement to be that of employment, joint venture or partnership.

18.  **Assignability.**  This Agreement shall inure to the benefit of Licensor, its successors and assigns, but will be personal to Licensee and shall be assignable by Licensee only with the prior written consent of Licensor.

19.  **Dispute Resolution; Attorney Fees.**  Any controversy or claim arising out of, or relating to, this Agreement, or the making, performance, or interpretation of this Agreement, shall be settled by arbitration in Portland, Oregon, in accordance with the rules and procedures of Arbitration Services of Portland, Inc., or if that organization is not then in existence, in accordance with the provisions of ORS 33.210-33.250.  Judgment on the arbitration award may be entered in any court having jurisdiction over the subject matter of the controversy.  The prevailing party in the arbitration shall be entitled to its reasonable costs and attorney fees in connection therewith.  The determination of who is the prevailing party, what are reasonable costs, and the amount of attorney fees to be paid to the prevailing party shall be decided by the arbitrator(s) (with respect to all recoverable attorney fees incurred prior to and during the arbitration proceedings) and by the court or courts, including any appellate court, that hears any

8 - NONEXCLUSIVE TRADEMARK LICENSE AGREEMENT (includes final comments from Harijot 3/23/04)

PDX/032833/082268/RDL/Comparite of 1123208 v5 and v7

exceptions made to an award submitted to it for confirmation as a judgment (with respect to attorney fees incurred in such court proceedings).

20.     **Notice and Payments.** All notices, bills and payments shall be made in writing and may be given by personal delivery or by first class, registered or certified mail. Notices, bills and payments sent by mail must be addressed as follows:

Licensor:                       Harbhajan Singh Khalsa Yogiji and
                                Inderjit Kaur Living Trust
                                PO Box 351149
                                Los Angeles, CA 90035

Licensee:                       Golden Temple of Oregon, Inc.
                                2545-D Prairie Road
                                Eugene, OR 97402
                                Attn: Kartar Singh Khalsa

Harbhajan Singh Khalsa
         Yogiji:                PO Box 351149
                                Los Angeles, California 90035

and when so addressed shall be deemed given 48 hours after deposited in the U.S. mail, postage prepaid, and postmarked. In all other instances notices, bills, and payments shall be deemed given at the time of actual delivery. Changes may be made in the names and addresses of the person to whom notices, bills, and payments are to be given by giving notice pursuant to this Section.

21.     **Merger — Complete Agreement.** This Agreement constitutes the entire agreement between the parties. There are no understandings, agreements or representations, oral or written, not specified herein regarding this Agreement. Any and all prior agreements or representations respecting the subject matter hereof, whether written or oral, expressed or implied, are hereby terminated and of no further effect. No amendment, consent, or waiver of terms of this Agreement shall bind either party unless in writing and signed by both parties. Any such amendment, consent, or waiver shall be effective only in the specific instance and for the specific purpose given. The parties, by their signatures below, acknowledge having read and understood the Agreement and agree to be bound by its terms and conditions.

        IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective duly authorized agents effective as of the date and year first above written.

**Golden Temple of Oregon, Inc.**              **Harbhajan Singh Khalsa Yogiji and Inderjit Kaur Living Trust**

By: _____             By: _____
Its: _____                Harbhajan Singh Khalsa Yogiji, Trustee

9 - NONEXCLUSIVE TRADEMARK LICENSE AGREEMENT (includes final comments from
        Harijot 3/23/04)
PDX/032833/082268/RDL/Comparite of 1123208 v5 and v7

**Exhibit A**
**Page 17**

_____

Harbhajan Singh Khalsa Yogiji

Attachments:

Exhibit 1.4 – Licensed Trademarks
Exhibit 1.5 – Licensed Products
Exhibit 6.1 – Royalty Rates
Exhibit 14.3 – Promissory Note

STATE of NEW MEXICO
COUNTY of SANTA FE

SIGNED in my PRESENCE by
HARBHAJAN SINGH KHALSA YOGIJI on
October 1, 2004.

NOTARY
COMM EXP 10/12/04

10 - NONEXCLUSIVE TRADEMARK LICENSE AGREEMENT (includes final comments
from Harijot 3/23/04)
PDX/032833/082268/RDL/Comparite of 1123208 v5 and v7

Exhibit A
Page 18

Exhibit 1.4
1 of 2



# Yogi Bhajan
# Founder

Exhibit 1.4
2 of 2



– Yogi
Bghajan

Exhibit A
Page 20

Exhibit 1.5

| Cereal | |
|---|---|
| **WHA GURU CHEW** | |
| 500101-02 | Peanut Cashew |
| 500102-02 | Sesame Almond |
| 500103-02 | Cashew Almond |
| 511113-02 | Cashew Vanilla |
| 511114-02 | Almond Ginger |
| | |
| **PILLOW PACK** | |
| 100512-02 | Super Nutty |
| 100511-02 | Crisp & Crunchy |
| 100510-02 | Wild Blueberry |
| 131122-02 | NFA Strawberry |
| 100602-02 | LF Fruit Muesli |
| | |
| **PEACE CEREAL** | |
| 138003-02 | Apple Cinnamon Crisp |
| 138004-02 | Raspberry Ginger Crisp |
| 138005-02 | Vanilla Almond Crisp |
| 138006-02 | Maple Raisin Crisp |
| 138007-02 | Wild Berry Crisp |
| 138008-02 | Mango Passion Crisp |
| 138009-02 | Maple Pecan Crisp |
| 191101-02 | Rainforest Vanilla Nut |
| 191102-02 | Rainforest Banana Nut |
| 138013-02 | Hearty Raisin Bran |
| 138011-02 | Puffed Harvest |
| 138014-02 | Essential 10 |
| | |
| **BULK** | |
| 141550-03 | LF Apple Cinnamon |
| 141551-03 | LF Raisin Almond |
| 141552-03 | LF Straw/Raspberry |
| 141531-03 | Organic Mango Passion |
| 141510-03 | Coconut Almond |
| 141512-03 | Fruit 'N Nut |
| 141522-03 | Wild Blueberry |
| 141513-03 | Cinn-Apple-Raisin |
| 141514-03 | Maple Almond |
| 141520-03 | Super Nutty |
| 141538-03 | Crisp & Crunchy |
| 141541-03 | Cranberry Orange Crunch |
| 141542-03 | Berry Banana Burst |
| 141543-03 | Maple Pecan Dream |
| 141544-03 | Country Pumpkin Spice |
| 141525-03 | French Vanilla Almond |
| 141526-03 | Power Crunch |
| 191430-03 | Rainforest Bulk |
| 141571-03 | 36% Fruit Muesli |
| 141572-03 | Lite Muesli |

Page 0

**Exhibit A**
**Page 21**

| | |
|---|---|
| 141573-03 | Swiss Style Muesli |
| 141527-03 | Ginger Snap |
| 141574-03 | Cherry Vanilla |
| 141586-03 | Vanilla Macaroon |

**Tea**

**WELLNESS TEAS**

| | |
|---|---|
| 245001-02 | BEDTIME |
| 245004-02 | BREATHE DEEP |
| 245002-02 | CALMING TEA |
| 245009-02 | WINTER RELIEF |
| 245008-02 | DETOX |
| 245010-02 | ECH. IMMUNE SUPPORT |
| 245014-02 | FASTING |
| 245012-02 | GET REGULAR |
| 245011-02 | GINGER |
| 245025-02 | GINKGO IQ |
| 245007-02 | GINSENG ROYAL VITALITY |
| 245033-02 | JOINT COMFORT TEA |
| 245030-02 | KAVA STRESS RELIEF |
| 245017-02 | LEMON GINGER |
| 245023-02 | PEACH DETOX |
| 245024-02 | RASPBERRY GINGER |
| 245032-02 | ST JOHNS WORT |
| 245003-02 | STOMACH EASE |
| 245018-02 | THROAT COMFORT |
| 245015-02 | WOMAN'S MOON CYCL |
| 245005-02 | WOMAN'S DONG QUAI |
| 245043-02 | RASPBERRY LEAF |
| 245044-02 | MOTHER TO BE |
| 245045-02 | NURSING MOM |

**GREEN TEAS**

| | |
|---|---|
| 245028-02 | GREEN TEA REJUVINATION |
| 245021-02 | GRN TEA KOMBUCHA |
| 245037-02 | GREEN TEA DECAF |
| 245027-02 | GREEN TEA ENERGY |
| 245036-02 | GT SUPER ANIT-OX |
| 245026-02 | GREEN TEA TRIPLE ECHIN. |

**CHAI TEAS**

| | |
|---|---|
| 241531-02 | BLACK CHAI TEA |
| 241532-02 | GREEN CHAI TEA |
| 241533-02 | REDBUSH CHAI TEA |

**BULK TEAS**

| | |
|---|---|
| 241001-16 | CIN SPICE C&S 3OZ CTN |
| 241530-11 | CIN-SPICE C&S  1 LB |

SIMPLY GREEN TEAS                              Page 1

**Exhibit A**
**Page 22**

| | |
|---|---|
| 245040-02 | SIMPLY GREEN TEA MATE |
| 245041-02 | SIMPLY DECAF GREEN TEA |
| 245042-02 | SIMPLY GREEN TEA |
| | |
| BEVERAGE TEAS | |
| 241514-02 | CLASSIC INDIA SPICE TEA |
| 241516-02 | EGYPTIAN LICORICE TEA |
| 241521-02 | HIBISCUS PARADISE TEA |
| 241523-02 | DECAFFE ROAST TEA |
| 241524-02 | ANDES YERBA MATE |
| 241525-02 | VANILLA HAZELNUT |
| 241526-02 | COCOA SPICE TEA |
| 241527-02 | EGYPTIAN LICORICE MINT |
| 241528-02 | AFRICAN REDBUSH PEACH |
| | |
| Tea Concentrates | |
| 245501-03 | CLSIC INDIA SPICE TEA LATTE |
| 245502-03 | VANILLA HZELNT TEA LATTE |
| | |
| | |
| SUNSHINE SPA | |
| Perfume Oils | |
| 369514-01 | Arabian Musk |
| 369534-01 | Gardenia |
| 369544-01 | Honeysuckle |
| 369554-01 | Jasmine |
| 369564-01 | Jasmine & Rose |
| 369594-01 | Musk |
| 301404-01 | Omar |
| 301414-01 | Patchouli |
| 301424-01 | Rose |
| 301464-01 | Wood Spice |
| 369586-01 | Lavender |
| 369590-01 | Vanilla |
| 369587-01 | Mango |
| 369588-01 | Sensuality |
| 369589-01 | Tangerine |
| 369585-01 | Cucumber Melon |
| | |
| BODY OILS | |
| 311208-08 | Pure Almond |
| 311209-08 | Vanilla |
| 311213-08 | Lavender |
| 311212-08 | Sandalwood |
| 311214-08 | Muscle Comfort |
| 311215-08 | Rest & Relax |
| | |
| Salt Scrubs | |
| 312002-20 | Lavender |
| 312003-20 | Pprmnt-Rsmry |

Page 2

| 312001-20 | Vanilla |
| 312004-20 | Tangerine Salt Scrubs |
| | |
| **Sugar Scrubs** | |
| 312005-20 | Vanilla Orange Scrubs |
| 312006-20 | Mango Ginger Scrubs |
| | |
| **Body Butters** | |
| 312127-07 | Cucumber Melon |
| 312128-07 | Lavender |
| 312129-07 | Mango |
| 312126-07 | Vanilla Orange |
| | |
| **Herbal Therapy Oils** | |
| 311901-02 | Narayan Oil |
| 311902-02 | Spirit Of GRD |
| 311903-02 | Esprit De Cupid |
| | |
| **Herbal Gems** | |
| 651001-01 | Royal Vitality - 1R |
| 651002-01 | Digest Rite - 2R |
| 651003-01 | Trinity Root - 3R |
| 651004-01 | Relax and Relieve - 7R |
| 651005-01 | Male Treasures - 14R |
| 651006-01 | Energy Treasures - 42R |
| 651007-01 | Cold Comfort - 96R |
| 651008-01 | Royal Heart - 108R |
| 651009-01 | Joint Comfort |
| 651010-01 | Women's Treasures |
| 651011-01 | Joyful Mood |
| 651012-01 | Immune Gold |
| 651013-01 | Sleep Rite PM |
| 651014-01 | Royal Slender |
| 651015-01 | Brain Plus |
| 651016-01 | Great Royal Diet |

Exhibit A
Page 24

**Exhibit 6.1**

<u>Royalty Rates</u>

<u>For Annual Gross Sales during each calendar year:</u>

| | | |
|---|---|---|
| Up to | $25,000,000 | 3.5% |
| In excess of up to | $25,000,000 $50,000,000 | 0.50% |
| In excess of up to | $50,000,000 $100,000,000 | 0.25% |
| In excess of | $100,000,000 | 0.10% |

CONFIDENTIAL
Downloaded by
Rhea, Susan
Kaye Scholer LLC
Golden Temple
Cereal – Project
Duress
02/09/2010
11:49:46 AM

**Exhibit A**
**Page 25**

### Exhibit 14.3 to Nonexclusive Trademark License Agreement

### PROMISSORY NOTE

$1,500,000                                                        _____ 26, 2004
                                                                 Espanola, New Mexico

FOR VALUE RECEIVED, the undersigned maker ("Maker") promises to pay to the order of Harbhajan Singh Khalsa Yogiji, Trustee of the Harbhajan Singh Khalsa Yogji and Inderjit Kaur Living Trust ("Holder"), at the address specified below, or at such other place as Holder may designate, on or before the maturity date specified herein, the principal sum of ONE MILLION FIVE HUNDRED THOUSAND AND NO/100 ($1,500,000.00) DOLLARS as provided herein.

1.     Interest and Payment.

1.1    Interest Rate. The unpaid principal will bear interest at the rate of three and eight tenths percent (3.8%) per annum. From and after a default, the unpaid principal will bear interest at the rate of fifteen percent (15%) per annum, or the highest rate allowed under applicable law, whichever is lowest.

1.2    Payments. The principal balance and accrued interest thereon shall be paid in 54 monthly installments of Thirty Thousand Dollars ($30,000) each, including both principal and accrued interest, commencing September 1, 2004. The entire principal balance and accrued interest thereon shall be due and payable on February 1, 2009 (the "Maturity Date").

Each payment of this Note shall be applied first against accrued interest, with the remainder applied against the unpaid principal balance. If Maker fails to make any payment required by this Note within fifteen (15) days after the payment is due, a late charge equal to five percent (5%) of the payment will be added to the unpaid principal amount and be immediately due.

1.3    Place and Time of Payment. Payment shall be made to the Holder at the address set forth below, and shall be made without prior notice or demand.

> Harbhajan Singh Khalsa Yogiji, Trustee.
> PO Box 351149
> Los Angeles, California 90035

Holder may change the payee or address to which payments must be sent by notice to Maker of Holder's new address or of the name and address of a collection agent for Holder to which subsequent payments will be delivered.

**Exhibit A**
**Page 26**

Holder may freely assign its entire interest in this Promissory Note. An assignment of Holder's entire interest in this Promissory Note is not effective until Holder notifies Maker of such assignment, with such notice executed by Holder.

1.4     Discretionary Prepayment.  Maker shall have the right to prepay all or any portion of the debt evidenced hereby without the written consent of Holder; provided however that Maker pays to Holder at the time of such prepayment, in addition to the prepayment of principal, an amount equal to the smaller of (1) Fifty Thousand Dollars ($50,000), or (2) fifty percent (50%) of the amount of interest which would have accrued on the prepaid principal through the Maturity Date were no prepayment made.

2.     Security.  This Note is unsecured.

3.     Default.  Time is of the essence of this Note.  A default shall occur if:

3.1     Failure to Make Payment.  Maker fails to make payment under this Promissory Note within ten (10) days after notice to Maker of such failure.

3.2     Other Failures.  Maker fails to perform any other obligation contained in this Promissory Note or any document securing payment hereof within fifteen (15) days after notice from Holder specifying the nature of the default, or, if such default is not capable of being cured within fifteen (15) days, then Maker shall not be in default so long as Maker commences cure of the applicable default within such fifteen (15) day period and diligently and continuously prosecutes such cure to completion.

3.3     Bankruptcy.  Maker becomes insolvent, a receiver is appointed to take possession of all or a substantial part of Maker's properties, Maker makes an assignment for the benefit of creditors or files a voluntary petition in bankruptcy, or Maker is the subject of an involuntary petition in bankruptcy and such involuntary petition is not dismissed within one hundred twenty (120) days of filing.

4.     Remedies.  In the event of a default, Holder may take any one or more of the following steps, subject to the limitations specified in section 3.2:

(a)     Acceleration.  Declare the entire unpaid principal balance, all accrued interest and all interest to subsequently accrue under this Promissory Note and all other costs and expenses evidenced hereby, immediately due and payable.

(b)     Other Remedies.  Pursue any other right or remedy provided herein or otherwise allowed by law.

Holder may pursue any such rights or remedies singly, together or successively.  Failure to exercise any right or remedy shall not be deemed a waiver of any existing or subsequent default nor a waiver of any such right or remedy.

5.    Attorneys' Fees.  In the event litigation or arbitration is commenced by a party hereto to enforce or interpret any provision of this Note, or to collect any amount due hereunder, the prevailing party in such litigation or arbitration shall be entitled to receive, in addition to all other sums and relief, its reasonable costs and attorneys', paralegals', accountants', and other experts' and professional fees, incurred both at and in preparation for trial and any appeal or review, such amount to be set by the courts or arbitrator before which the matter is heard.  Maker also agrees to pay any attorneys', paralegal', accountants', and other experts' and professional fees incurred by Holder in connection with any bankruptcy or similar proceedings wherein the Maker is the "debtor," including, but not limited to, issues peculiar to federal bankruptcy law.

6.    Governing Law; Usury; Severability.

   6.1    Governing Law and Usury.  This Promissory Note has been executed under and shall be construed and enforced in accordance with the laws of the State of Oregon.  It is expressly stipulated and agreed to be the intent of Maker and Holder at all times to comply strictly with the applicable usury laws now or hereafter governing consideration received under this Promissory Note.  If the applicable law is ever interpreted so as to render usurious any consideration called for, contracted for, charged, taken, reserved or received with respect to this Promissory Note, or if any prepayment by Maker or Holder's exercise of the option herein contained to accelerate the maturity of this Promissory Note, results in Maker having paid any interest in excess of that permitted by law, then notwithstanding anything to the contrary in this Promissory Note, it is Maker's and Holder's express intent and agreement that all excess amounts theretofore collected by Holder be credited on the principal balance of this Promissory Note (or, if this Promissory Note has been paid in full, refunded to Maker) and the provisions of this Promissory Note shall immediately be deemed reformed and the amounts thereafter collectible hereunder reduced, without the necessity of the execution of any new documents, so as to comply with the then applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder.

   6.2    Severability.  If any provision of this Promissory Note is found by a court of competent jurisdiction to be invalid or unenforceable as written, then the parties intend and desire that (a) such provision be enforceable to the full extent permitted by law, and (b) the invalidity or unenforceability of such provision shall not affect the validity and enforceability of the remainder of this Promissory Note.

7.    Amendment.  This Promissory Note may not be amended, modified or changed, nor shall any provision hereof be deemed waived, except only by an instrument in writing signed by the party against whom enforcement of any such waiver, amendment, change, or modification is sought.

8.    Notice.  All notices, consents, waivers, and other communications under this Promissory Note must be in writing and will be deemed to have been duly given when (a) delivered by hand; (b) when received by the addressee, if sent by a nationally recognized overnight delivery service (receipt requested), or (c) when received by the addressee if mailed by registered mail, return

**Exhibit A**
**Page 28**

receipt requested, in each case to the appropriate addresses set forth below (or to such other addresses as either Holder or Maker may designate by notice to the other):

Maker:          Golden Temple of Oregon, Inc.,
                2545-D Prairie Road
                Eugene, Oregon 97402


Holder:         Harbhajan Singh Khalsa Yogiji, Trustee of the Harbhajan
                Singh Khalsa and Inderjit Kaur Living Trust.
                PO Box 351149
                Los Angeles, California 90035

9.    Time of Essence.  Time is of the essence of this Promissory Note.

      Executed as of the day and year first above written.

                                    MAKER

                                    GOLDEN TEMPLE OF OREGON, INC.


                                    By: _____
                                    Its: _____

# EXHIBIT B

 ORIGINAL 

**Kenneth R. Davis II**, OSB No. 971132
davisk@lanepowell.com
**Parna A. Mehrbani**, OSB No. 053235
mehrbanip@lanepowell.com
**LANE POWELL** PC
601 SW Second Avenue, Suite 2100
Portland, Oregon 97204-3158
Telephone: 503.778.2100
Facsimile: 503.778.2200

Attorneys for Plaintiff Hearthside Food Solutions, LLC     FILED 13 OCT '11 16:14 USDC-ORP

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

CV'11 - 1238  HU

| | |
|---|---|
| **HEARTHSIDE FOOD SOLUTIONS, LLC,**<br>a Delaware Limited Liability Company, | CV No. _____ |
| Plaintiff, | COMPLAINT FOR DECLARATION OF TRADEMARK NON-INFRINGEMENT |
| v. | UNDER LANHAM ACT, 28 U.S.C. § 2201 |
| **BIBIJI INDERJIT KAUR PURI,** | JURY TRIAL DEMANDED |
| Defendant. | |

Plaintiff Hearthside Food Solutions, LLC complains and alleges as follows:

### PARTIES

1.     Plaintiff Hearthside Food Solutions, LLC ("Hearthside"), is a limited liability company organized under the laws of Delaware, with its principal place of business in Illinois.

2.     Defendant Bibiji Inderjit Kaur Puri ("Defendant") is an individual and, upon information and belief, is a citizen and resident of California.

PAGE 1 -   COMPLAINT FOR DECLARATION OF TRADEMARK NON-INFRINGEMENT

708480.0139/5193443.1

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

**Exhibit B**
**Page 30**

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), and 2201, as well as 15 U.S.C. §§ 1116 and 1121, as this is a declaratory judgment action with respect to the parties' rights arising under federal trademark law.

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred within this judicial district.

5.      Defendant is subject to the personal jurisdiction and venue of this Court at least by virtue of doing business within this judicial district, and by having availed herself of the benefits and protections of the laws of Oregon by commencing litigation within this judicial district.

## FACTS

6.      Hearthside is a contract manufacturer of baked goods, primarily grain-based snack foods and cereals. Hearthside is the largest privately-owned bakery in the United States.

7.      Hearthside is the owner of the registered trademark, "Peace Cereal" (the "Peace Mark"), which was registered on October 29, 2002, with United States Patent and Trademark Office Registration No. 2642793.

8.      Hearthside uses the Peace Mark in commerce on cereal products sold in various markets, grocery stores, supermarkets, and over the internet.

9.      Hearthside is the owner of the trademark "Golden Temple" (the "Golden Temple Mark"), which has acquired common law trademark rights. Hearthside uses the Golden Temple Mark in commerce on various baked products, including granola products, sold in various markets, grocery stores, supermarkets, and over the internet.

10.     Hearthside is an authorized user of the common law trademark YOGI (the "Yogi Mark"), pursuant to a Trademark License Agreement between Hearthside and Golden Temple of

PAGE 2 -   COMPLAINT FOR DECLARATION OF TRADEMARK NON-INFRINGEMENT

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200



Oregon, LLC dated May 10, 2010.   Hearthside is authorized to manufacture, distribute, advertise, promote and sell cereals and granola snacks using the Yogi Mark.

       11.     Defendant is the widow of Harbhajan Singh Khalsa Yogiji a/k/a Yogi Bhajan.

       12.     Defendant has asserted that she is the lawful owner of the Yogi Mark, the Peace Mark and the Golden Temple Mark, as an heir of Yogi Bhajan, and has accused Hearthside of infringing her trademark rights by using the Yogi Mark, the Peace Mark, and the Golden Temple Mark on Hearthside products.  Defendant has further demanded that Hearthside either enter into licensing agreements with Defendant in order to continue using those marks or that Hearthside discontinue its use of the marks.  Defendant informed Hearthside via e-mail that if Hearthside did not meet her settlement demands, she would file suit against Hearthside.

       13.     Though Hearthside has attempted to resolve this dispute with Defendant through negotiation, those attempts have been unsuccessful and, as a result, an actual case or controversy exists regarding Hearthside's alleged trademark infringement of the Peace Mark, the Golden Temple Mark, and the Yogi Mark.

**COUNT I**

**(Declaratory Judgment of Non-Infringement of the Peace Mark)**

       14.     Hearthside repeats and re-alleges each and every allegation contained in paragraphs 1-13, as though fully set forth herein.

       15.     Hearthside is the legal and rightful owner of the Peace Mark for use on cereal products.  As such, Hearthside is entitled to use the Peace Mark as a trademark on its cereal products.

       16.     Defendant has no rights to the Peace Mark.

       17.     Hearthside's use of the Peace Mark on its cereal products thus does not constitute trademark infringement.

PAGE 3 -   COMPLAINT FOR DECLARATION OF TRADEMARK NON-INFRINGEMENT

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

708480.0139/5193443.1

**Exhibit B**
**Page 32**

## COUNT II

### (Declaratory Judgment of Non-Infringement of the Golden Temple Mark)

18.     Hearthside repeats and re-alleges each and every allegation contained in paragraphs 1-13, as though fully set forth herein.

19.     Hearthside is the legal and rightful owner of the Golden Temple Mark for use on various products, including granola products.  As such, Hearthside is entitled to use the Golden Temple Mark as a trademark on its products.

20.     Defendant has no rights to the Golden Temple Mark.

21.     Hearthside's use of the Golden Temple Mark on its products thus does not constitute trademark infringement.

## COUNT III

### (Declaratory Judgment of Non-Infringement of the Yogi Mark)

22.     Hearthside repeats and re-alleges each and every allegation contained in paragraphs 1-13, as though fully set forth herein.

23.     Hearthside lawfully entered into a Trademark License Agreement with Golden Temple of Oregon, LLC on or about May 10, 2010, which is a valid and enforceable contract.

24.     Pursuant to the Trademark License Agreement, Hearthside is an authorized user of the Yogi Mark in connection with its manufacture, distribution, advertisement, promotion and sale of certain cereals and granola snacks.

25.     Defendant has no rights to the Yogi Mark.

26.     Hearthside's use of the Yogi Mark pursuant to its licensed rights does not constitute trademark infringement.

## COUNT IV

### (Declaratory Judgment as to Damages for the Yogi Mark; In the Alternative to Count III)

27.     Hearthside repeats and re-alleges each and every allegation contained in paragraphs 1-13, as though fully set forth herein.

PAGE 4 -   COMPLAINT FOR DECLARATION OF TRADEMARK NON-INFRINGEMENT

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

708480.0139/5193443.1

**Exhibit B
Page 33**

28.     In the alternative to Count III, and in the event Hearthside is determined to have infringed on Defendant's trademark rights related to the Yogi Mark, Hearthside seeks a declaratory judgment that any damages available to Defendant from Hearthside by virtue of such infringement are limited to royalties that would have been due pursuant to the Nonexclusive Trademark License Agreement between the Harbhajan Singh Khalsa Yogiji and Inderjit Kaur Living Trust and Golden Temple of Oregon, LLC dated both July 26, 2004 and October 1, 2004 (collectively the "2004 Trademark License Agreement").  Upon information and belief, Bibiji Puri is a part-successor in interest to that trust.

29.     Pursuant to the 2004 Trademark License Agreement, the Harbhajan Singh Khalsa Yogiji and Inderjit Kaur Living Trust granted Golden Temple of Oregon, LLC a license to use the Yogi Mark and set forth a graduated royalty rate for the Licensed Products (as defined in that agreement), whereby the licensee would pay the licensor 3.5% of Gross Sales (as defined in that agreement) up to $25 million; 0.50% of Gross Sales between $25 million and $50 million; 0.25% of Gross Sales between $50 million and $100 million; and 0.10% of Gross Sales in excess of $100 million.

**WHEREFORE**, Plaintiff respectfully prays for judgment and relief against the Defendant as follows:

**As to Count I:**

a.      An order pursuant to 28 U.S.C. § 2201 declaring that Hearthside has not infringed any trademark rights of Defendant by reason of Hearthside's use of the Peace Mark;

b.      An order pursuant to 28 U.S.C. § 2201 declaring that Hearthside is the lawful owner of the Peace Mark;

c.      An order pursuant to 28 U.S.C. § 2201 declaring that Defendant has no ownership rights in the Peace Mark;

d.      An injunction pursuant to 15 U.S.C. § 1116 prohibiting Defendant from holding themselves out as having ownership rights to the Peace Mark;

PAGE 5 -   COMPLAINT FOR DECLARATION OF TRADEMARK NON-INFRINGEMENT

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

**Exhibit B**
**Page 34**

e.     An award of Hearthside's reasonable attorneys' fees pursuant to 15 U.S.C.
§ 1117(A);

f.     An award of Hearthside's costs; and

g.     Such other and further relief at law or equity as this Court may deem proper, just,
and equitable under the circumstances.

**As to Count II:**

a.     An order pursuant to 28 U.S.C. § 2201 declaring that Hearthside has not infringed
any trademark rights of Defendant by reason of Hearthside's use of the Golden Temple Mark;

b.     An order pursuant to 28 U.S.C. § 2201 declaring that Hearthside is the lawful
owner of the Golden Temple Mark;

c.     An order pursuant to 28 U.S.C. § 2201 declaring that Defendant has no ownership
rights in the Golden Temple Mark;

d.     An injunction pursuant to 15 U.S.C. § 1116 prohibiting Defendant from holding
herself out as having ownership rights to the Golden Temple Mark;

e.     An award of Hearthside's reasonable attorneys' fees pursuant to 15 U.S.C.
§ 1117(A);

f.     An award of Hearthside's costs; and

g.     Such other and further relief at law or equity as this Court may deem proper, just,
and equitable under the circumstances.

**As to Count III:**

a.     An order pursuant to 28 U.S.C. § 2201 declaring that Hearthside's use of the Yogi
Mark pursuant to the terms of the Trademark License Agreement does not constitute trademark
infringement; and that Hearthside is entitled to continue such use in accordance with the terms of
the Trademark License Agreement;

b.     An order pursuant to 28 U.S.C. § 2201 declaring that Defendant has no ownership
rights in the Yogi Mark;

PAGE 6 -   COMPLAINT FOR DECLARATION OF TRADEMARK NON-INFRINGEMENT

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

**Exhibit B**
**Page 35**



c.      An injunction pursuant to 15 U.S.C. § 1116 prohibiting Defendant from holding themselves out as having ownership rights to the Yogi Mark;

d.      An award of Hearthside's reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(A);

e.      An award of Hearthside's costs; and

f.      Such other and further relief at law or equity as this Court may deem proper, just, and equitable under the circumstances.

**As to Count IV (in the alternative to Count III):**

a.      An order pursuant to 28 U.S.C. § 2201 declaring that, if Hearthside is found to have infringed Defendant's trademark rights with respect to the Yogi Mark, Hearthside's liability is measured by the royalty fee schedule set forth in the 2004 Trademark License Agreement;

b.      An award of Hearthside's reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(A);

c.      An award of Hearthside's costs of the suit; and

d.      Such other and further relief at law or equity as this Court may deem proper, just, and equitable under the circumstances.

## JURY DEMAND

Hearthside hereby demands a jury trial for all claims and issues so triable.

DATED:  October 13, 2011

LANE POWELL PC

By_____
    Kenneth R. Davis II, OSB No. 971132
    Parna A. Mehrbani, OSB No. 053235
    Telephone:  503.778.2100
    Attorneys for Plaintiff Hearthside Food Solutions, LLC

PAGE 7 -   COMPLAINT FOR DECLARATION OF TRADEMARK NON-INFRINGEMENT

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

708480.0139/5193443.1

**Exhibit B
Page 36**

**JS 44** (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
HEARTHSIDE FOOD SOLUTIONS, INC.

## DEFENDANTS
BIBIJI INDERJIT KAUR PURI

**(b)** County of Residence of First Listed Plaintiff   DuPage County, IL
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Los Angeles County, CA
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Kenneth R. Davis, II; Parna A. Mehrbani / Lane Powell PC / 601 SW Second Ave., Ste 2100 / Portland, OR 97204 / 503.778.2100

Attorneys (If Known)
Surjit P. Soni; M. Danton Richardson / The Soni Law Firm / 35 North Lake Ave., Ste 720/Pasadena, CA 91101 / 626.683.7600

CV 11 - 1238   HU

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                       and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☒ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 690 Other | **LABOR** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | **PERSONAL INJURY** | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Med. Malpractice | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | ☐ 365 Personal Injury - Product Liability | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | **PERSONAL PROPERTY** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 370 Other Fraud | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 371 Truth in Lending | | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 380 Other Personal Property Damage | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 385 Property Damage Product Liability | | | ☐ 950 Constitutionality of State Statutes |
| | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **IMMIGRATION** | |
| | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus: | ☐ 462 Naturalization Application | |
| | ☐ 442 Employment | ☐ 530 General | ☐ 463 Habeas Corpus - Alien Detainee | |
| | ☐ 443 Housing/Accommodations | ☐ 535 Death Penalty | ☐ 465 Other Immigration Actions | |
| | ☐ 444 Welfare | ☐ 540 Mandamus & Other | | |
| | ☐ 445 Amer. w/Disabilities - Employment | ☐ 550 Civil Rights | | |
| | ☐ 446 Amer. w/Disabilities - Other | ☐ 555 Prison Condition | | |
| | ☐ 440 Other Civil Rights | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. Section 2201, 15 U.S.C. 1116, 1121

Brief description of cause:
Seeking Declaration of Trademark Non-Infringement

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $
None

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____   DOCKET NUMBER _____

DATE
10/13/2011

SIGNATURE OF ATTORNEY OF RECORD
[signature]   OSB 053235

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**Exhibit B**
**Page 37**