Surjit P. Soni (State Bar No. 127419)
M. Danton Richardson (State Bar No. 141709)
Leo E. Lundberg, Jr. (State Bar No. 125951)
THE SONI LAW FIRM
35 North Lake Ave., Suite 720
Pasadena, California  91101
(626) 683-7600 Telephone
(626) 683-1199 Fax

SURJ@SONILAW.COM
DANTON@SONILAW.COM
LEO@SONILAW.COM

Attorneys for Plaintiff,
BIBIJI INDERJIT KAUR PURI

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIBIJI INDERJIT KAUR PURI, an individual, | ) CASE NO.: CV11-08675-JFW (SSx) |
| Plaintiff, | ) **PLAINTIFF'S OPPOSITION TO HEARTHSIDE FOOD SOLUTIONS, LLC'S MOTION TO DISMISS COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)** |
| vs. | ) |
| HEARTHSIDE FOOD SOLUTIONS, LLC, a Delaware Limited Liability Corporation; DOES 1 through 10, | ) **Date:      December 19, 2011** <br> ) **Time:      1:30 p.m.** <br> ) **Place:     Courtroom 16** |
| Defendants. | ) **Hon. John F. Walter** |

Plaintiff, BIBIJI INDERJIT KAUR PURI ("Plaintiff" or "Bibiji"), hereby submits her Opposition to Defendant HEARTHSIDE FOOD SOLUTIONS, LLC's ("Hearthside") Motion to Dismiss Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion") as follows:

TABLE OF CONTENTS

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    APPLICABLE LEGAL STANDARDS . . . . . . . . . . . . . . . . . . . . . . . 3

III.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       A.    The Complaint Adequately States a Claim
             Under the Lanham Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

             1.    Bibiji Has Standing to Allege
                   Infringement of a Registered Trademark . . . . . 4

             2.    The Complaint Adequately
                   Asserts Claims Against the "Incontestable"
                   PEACE Marks . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

             3.    The Complaint Adequately Alleges
                   Common Law Trademark Claims . . . . . . . . . . . 7

             4.    The Complaint Adequately Alleges
                   a Trade Dress Infringement Claim . . . . . . . . . . 8

             5.    The Complaint Adequately Alleges
                   Actions Affecting Interstate Commerce . . . . . 10

             6.    Bibiji Is Not Pursuing a Claim for False
                   Advertising . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

       B.    The Complaint Adequately States a Claim For
             Common Law Unfair Competition . . . . . . . . . . . . . . . . . 12

       C.    The Complaint Adequately States a Claim
             For Unfair Trade Practices . . . . . . . . . . . . . . . . . . . . . . . 12

             1.    The Complaint Adequately States a
                   Claim For "Unfair" Business Practices . . . . . . 12

             2.    The Complaint Adequately States a
                   Claim For "Fraudulent" Business
                   Practices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

             3.    The Complaint Adequately Alleges
                   Facts to Allow Bibiji to Represent
                   Consumers and the Public . . . . . . . . . . . . . . . . 14

             4.    Bibiji Is Entitled to the Relief
                   Requested . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

       D.    The Complaint Adequately States a Claim
             For Imposition of a Constructive Trust . . . . . . . . . . . . . 16

       E.    The Complaint Adequately States a Claim

**For Declaratory Relief and Assignment of Trademark Applications and Registrations** . . . . . . . . . . . . 18

F.    **The Complaint Adequately States a Claim For Trademark Cancellation** . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**IV.   CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

TABLE OF AUTHORITIES

*Application of Silenus Wines, Inc.,*
    557 F.2d 806, 809, 194 U.S.P.Q. 261 (C.C.P.A. 1977) . . . . . . . . . . . . . . . 10

*Broam v. Bogan,*
    320 F3d 1023, (9th Cir 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Cassirer v Spain,*
    461 F.Supp.2d 1157, (C.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Cassirer v. Kingdom of Spain,*
    461 F. Supp. 2d 1157,  (C.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Cleary v. News Corp.,*
    30 F.3d 1255,  (9th Cir.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Committee on Children's Television, Inc. v. General Foods Corp.,*
    35 Cal.3d 197, 212, 197 Cal.Rptr. 783, 673 P.2d 660 (1983) . . . . . . . . . . . 14

*Communist Party v. 522 Valencia, Inc.,*
    41 Cal.Rptr.2d 618, 35 Cal.App.4th 980 (1995) . . . . . . . . . . . . . . . . . . . . 16

*Conley v. Gibson,*
    355 U.S. 41, 47, 78 S Ct 99, 2 L Ed 2d 80 (1957) . . . . . . . . . . . . . . . . . . 4

*Day v. AT & T Corp.*(1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*EGL Gem Lab Ltd. v. Gem Quality Institute, Inc.,*
    90 F. Supp. 2d 277, 300 (S.D. N. Y. 2000) (citing 2 MCCARTHY § 18:46; see
    15 U.S.C. § 1055) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Fletcher v. Security Pacific National Bank* (1979) . . . . . . . . . . . . . . . . . . . . . 15

*Flores v. Emerich & Fike,*
    1:05-CV-0291 AWI DLB, 2008 WL 2489900 (E.D. Cal. June 18, 2008) . . . 20

*Halicki v. United Artists Communications, Inc.,*
    812 F.2d 1213, 1214 (9th Cir.1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Hall v. Time, Inc.,*
    158 Cal.App.4th 847, 849, 70 Cal.Rptr.3d 466 (2008); . . . . . . . . . . . . . . . 13

*Id.; Guerrero v. Gates,*
    442 F.3d 697, 703 (9th Cir 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*In re Real Estate Assocs. P'ship Litig.,*
    223 F.Supp.2d 1109, 1140 (C.D.Cal.2002) . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re Tobacco II Cases,*
    46 Cal. 4th 298, 312 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Iqbal v. Hasty,*
    490 F3d 143, 157-158 (2nd Cir 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Iqbal*, 129 S Ct at 1949 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

*Jack Russell Terrier Metwork of N. Ca. v. Am. Kennel Club, Inc.*
   407 F.3d 1027, 1037 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

*Jackson v. Sturkie*,
   255 F.Supp.2d 1096, 1107 (N.D.Cal.2003) . . . . . . . . . . . . . . . . . . . . . . . .   14

*Katzenbach v. McClung*,
   379 U.S. 294, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964) . . . . . . . . . . . . . . . . .   10

*Moss*, 572 F3d at 969, quoting *Iqbal*, 129 S Ct at 1949 . . . . . . . . . . . . . . . . .   3

*Moss v. U.S. Secret Service*,
   572 F3d 962 (9th Cir 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

*Nova Wines, Inc. v. Adler Fels Winery LLC*,
   467 F. Supp. 2d 965, 978, 85 U.S.P.Q.2d 1202 (N.D. Cal. 2006) . . . . . . . . .   9

*Olsen v. Breeze, Inc.*,
   48 Cal.App.4th 608, 618, 55 Cal.Rptr.2d 818 (1996) . . . . . . . . . . . . . . . . .   13

*Paisa, Inc. v. N & G Auto, Inc.*,
   928 F.Supp. 1009, 1012 n. 4 (C.D. Cal. 1996) . . . . . . . . . . . . . . . . . . . . . .   9

*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*,
   58 Cal.Rptr.3d 516, 150 Cal.App.4th 384 (2007) . . . . . . . . . . . . . . . . . . .   16

*People of California v. Kinder Morgan Energy Partners, L.P.*,
   569 F Supp 2d 1073, 1091 (S.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . .   19

*Philip Morris Inc. v. Star Tobacco Corp.*,
   879 F.Supp. 379, 383 (S.D.N.Y.1995 . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

*Professional Golfers Association v. Bankers Life & Casualty Co.*,
   514 F.2d 665, 670 (5th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

*Rashdan v. Geissberger*,
   No. C 10–00634 SBA, 2011 WL 197957, at *10 (N.D.Cal. Jan.14, 2011)   .   12

*Reddy v. Litton Indus.*,
   912 F.2d 291 (9th Cir 1990), cert. denied, 502 US 921 (1991) . . . . . . . . . .   4

*Robert Trent Jones II, Inc. v. GFSI, Inc.*,
   537 F. Supp. 2d 1061, 1065 (N.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . .   9

*Sam S. Goldstein Indus., Inc. v. Botany Indus., Inc.*,
   301 F. Supp. 728, 730-31, 163 U.S.P.Q. 442 (S.D. N.Y. 1969) . . . . . . . . .   19

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
   806 F2d 1393, 1401 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

*Snodgrass v. Provident Life and Acc. Ins. Co.*,
   147 F.3d 1163, 1167-68 (9th Cir.1998) . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

*Stansfield v. Starkey,*
   220 Cal.App.3d 59, 76, 269 Cal.Rptr. 337 (1990) . . . . . . . . . . . . . . . . . 20

*State Farm Fire & Casualty Co. v. Superior Court* (1996) . . . . . . . . . . . . . . . . . 15

*Sun Microsystems v. Microsoft Corp.,*
   999 F.Supp. 1301, 1311 (N.D.Cal.1998) . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Taguinod v. World Sav. Bank, FSB,*
   755 F. Supp. 2d 1064, 1072-73 (C.D. Cal. 2010) . . . . . . . . . . . . . . . . . . . 19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
   551 US 308, 127 S Ct 2499, 168 L Ed 2d 179 (2007). . . . . . . . . . . . . . . . . 3

*United States Jaycees v. Philadelphia Jaycees,*
   639 F. 2d 134, 143 (3rd Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*VP Racing Fuels, Inc. v. Gen. Petroleum Corp.,*
   673 F. Supp. 2d 1073, 1087, 2009-2 Trade Cases P 76842, 2009 WL 4282124
   (E.D. Cal. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Western Cas. and Sur. Co. v. Herman,*
   405 F.2d 121, 124 (8th Cir.1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Zero Motorcycles, Inc. v. Pirelli Tyre S.p.A.,*
   C 10-01290 SBA, 2011 WL 2844397 (N.D. Cal. July 18, 2011) . . . . . . . . . 13

Miscellaneous

13 Witkin, Cal. Procedure, Trusts, § 319 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . 20

15 U.S.C. § 1114 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

15 U.S.C. § 1115(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

15 U.S.C. § 1125(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

15 U.S.C. § 1127 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

15 U.S.C.A. § 1127. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

2 MCCARTHY § 18:46; see 15 U.S.C. § 1055 . . . . . . . . . . . . . . . . . . . . . . . . . . 8

23 Cal.3d 442, 453, 153 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

23 Cal.3d 442, 453, 153 Cal.Rptr. 28, 591 P.2d 51.) . . . . . . . . . . . . . . . . . . . . 15

28 U.S.C. §§ 2201-2202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

37 of the Lanham Act, 15 U.S.C. 1119 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . 19

45 Cal.App.4th 1093, 1105, 53 Cal.Rptr.2d 229.) . . . . . . . . . . . . . . . . . . . . . . 15

Cal. Bus. & Prof. Code § 17203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Cal. Bus. and Prof.Code § 17200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Cal. Civil Code §2224 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Cal.Rptr. 28, 591 P.2d 51.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

California Business and Professions Code § 17200 . . . . . . . . . . . . . . . . . . . . . 14

California Civil Code §2224 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Fed. R. Civ. P. 10(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Federal Rule of Civil Procedure 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Federal Rule of Civil Procedure 8(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Lanham Act 43(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Lanham Act, 15 U.S.C. § 1119 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Rule 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Snodgrass*, 147 F.3d at 1167-68 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

§ 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) . . . . . . . . . . . . . . . . . . . . 11

1

§ 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) . . . . . . . . . . . . . . . . . . . . . .  11

*Waits*, 978 F.2d at 1110 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This is a trademark infringement action.  Plaintiff, Bibiji Inderjit Kaur Puri ("Bibiji"), is a successor-in-interest to the intellectual property rights of Harbhajan Singh Khalsa Yogiji ("Yogi Bhajan") the "Yogi" behind "Yogi Tea."  Golden Temple of Oregon, LLC ("GTO") licensed the Yogi Tea trademark, among others, including the PEACE CEREAL trademark which was used in connection with cereals and related goods, from the Joint Living Trust of Yogi Bhajan and Bibiji.  A provision of the license agreement prohibited GTO from registering any of the licensed trademarks.  However, GTO registered several trademarks with the U.S. Patent and Trademark Office in breach of a licensing agreement, including the YOGI, YOGI TEA and PEACE CEREAL trademarks.

In or about 2009, GTO sold its Cereal division to Defendant, Hearthside Food Solutions, LLC ("Hearthside"), along with the wrongfully acquired registration for the PEACE CEREAL mark.  GTO also gave Hearthside a royalty free license to use the YOGI mark until May 2012.

Bibiji sued GTO for trademark infringement and has obtained an Arbitration Award which, among other things, requires GTO to assign all trademark applications and registrations for the YOGI and YOGI TEA trademarks to Bibiji.

In early September 2011, Bibiji began negotiations with Hearthside for the purpose of reaching an accommodation to allow Hearthside to continue using the PEACE CEREAL mark and for damages for the unauthorized use of the YOGI mark by Hearthside, but Hearthside refused Bibiji's reasonable efforts forcing Bibiji to file this action.

Hearthside now seeks to dismiss every single claim of Bibiji's complaint for failure to state a claim under Rule 12(b)(6).  Hearthside's Motion is without merit for the reasons discussed below.

## II.     APPLICABLE LEGAL STANDARDS

Rule 12(b)(6) motions are viewed with disavor. *Broam v. Bogan*, 320 F3d 1023, 1028 (9th Cir 2003).  When evaluating a 12(b)(6) motion, the Court must accept as true all factual allegations in the complaint and must draw all reasonable inferences from those allegations, construing the complaint in the light most favorable to the plaintiff. *Id.*; *Guerrero v. Gates*, 442 F3d 697, 703 (9th Cir 2006).

"Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 129 S Ct 1937, 1949-50 (2009) (citing *Iqbal v. Hasty,* 490 F3d 143, 157-158 (2nd Cir 2007).)  The *Iqbal* court concluded: "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* at 1950.   In *Moss v. U.S. Secret Service*, 572 F3d 962 (9th Cir 2009), the Ninth Circuit explained the new *Twombly-Iqbal* standard.  The Moss court reinforced the plausibility premise by observing that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Moss*, 572 F3d at 969, quoting *Iqbal*, 129 S Ct at 1949.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Moss*, 572 F3d at 969, quoting *Iqbal*, 129 S Ct at 1949.  The Ninth Circuit concluded by observing: "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss*, 572 F3d at 969.

A court must read the complaint as a whole, together with matters appropriate for judicial notice, rather than isolating allegations. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 US 308, 127 S Ct 2499, 168 L Ed 2d 179 (2007).

Federal Rule of Civil Procedure 8(a) generally provides a pleading that sets forth a claim must contain "a short and plain statement of the claim showing the pleader is entitled to relief." The plaintiff need only provide in the initial pleading sufficient factual allegations to give the defendant "fair notice" of the claims against it and the grounds on which the claim is based. *Conley v. Gibson*, 355 U.S. 41, 47, 78 S Ct 99, 2 L Ed 2d 80 (1957).

If a claim is dismissed pursuant to Rule 12(b)(6) the could should grant the plaintiff leave to amend his complaint unless the court determines the allegation of other facts consistent with the operative pleading could not possibly cure the deficiency. *Schreiber Distrib. Co. v. Serv-Well Furniture Co*., 806 F2d 1393, 1401 (9th Cir. 1986); *Reddy v. Litton Indus*., 912 F2d 291 (9th Cir 1990), cert. denied, 502 US 921 (1991).

## III. ARGUMENT

### A. The Complaint Adequately States a Claim Under the Lanham Act

#### 1. Bibiji Has Standing to Allege Infringement of a Registered Trademark

Hearthside asserts Bibiji does not have standing to sue under 15 U.S.C. § 1114 because she is not listed as the registrant in the records of the USPTO. Hearthside ignores the Lanham Act definition for "registrant," which includes the registrant and its "legal representatives, predecessors, successors and assigns." 15 U.S.C. § 1127. Bibiji is a predecessor, because she was an owner of the marks which were licensed to GTO who registered them in breach of a specific provision of the license agreement which precluded GTO from doing so. Bibiji sued GTO and prevailed. The Arbitration Award orders GTO to assign the registrations to Bibiji, so Bibiji is also an assignee of the registration. Bibiji is therefore also the successor, since the mark is required to be assigned to her. For any number of reasons, Bibiji qualifies as a "registrant" under the Lanham Act definition. Therefore, Bibiji has standing to sue

for infringement of the registered trademarks she owns.

### 2.    The Complaint Adequately Asserts Claims Against the "Incontestable" PEACE Marks

The incontestability of a mark is not absolute.  15 U.S.C. § 1115(b) provides, in pertinent part, as follows:

> Such conclusive evidence of the right to use the registered mark . . . shall be subject to the following defenses or defects:
>
> (1) That the registration or the incontestable right to use the mark was obtained fraudulently; or . . .
>
> (3) That the registered mark is being used by or with the permission of the registrant or a person in privity with the registrant, so as to misrepresent the source of the goods or services on or in connection with which the mark is used; or
>
> . . .
>
> (9) That equitable principles, including laches, estoppel, and acquiescence, are applicable.

The Complaint alleges ownership of all intellectual property used by or identifying Yogi Bhajan, including Yogi Bhajan's name and likeness, and any trademark, service mark, logo, insignia, seal, design, or any other symbol or device used by or identifying Yogi Bhajan (Complaint, ¶¶ 16 & 17), that said intellectual property included the PEACE CEREAL trademark (Complaint, ¶ 19), that GTO licensed the PEACE CEREAL mark (Complaint, ¶¶ 17 & 20), that in 2009, GTO sold its cereal business to Hearthside along with various trademarks, including the PEACE CEREAL trademark (Complaint, ¶ 24), Bibiji has informed Hearthside of her ownership of the PEACE CEREAL trademark and Hearthside has continued to use the PEACE CEREAL mark and has failed to obtain a license from Bibiji to use the

1  mark (Complaint, ¶ 29), Hearthside with actual knowledge of BIBIJI's rights,

2  continues to use the PEACE CEREAL trademarks and belonging to BIBIJI to

3  promote and advertise its Goods which are not associated, affiliated, connected with,

4  or authorized, approved, produced or sponsored by Bibiji and that Hearthside's

5  continued unlawful use is likely to cause confusion, deception, or mistake as to the

6  source, association, affiliation or sponsorship of its Goods (Complaint, ¶ 32), that

7  Hearthside has unlawfully claimed ownership of the PEACE CEREAL marks and

8  unlawfully traded upon the valuable goodwill and reputation of the PEACE CEREAL

9  marks to the exclusion of Bibibji, the rightful owner (Complaint, ¶ 44), that

10 Hearthside intentionally misappropriated the commercial value of the PEACE

11 CEREAL marks and unlawfully acted to damage the source-identifying quality of

12 said marks (Complaint, ¶ 46), and that the registrations for the PEACE CEREAL

13 marks were wrongfully obtained (Complaint, ¶ 62).

14      For the same reasons that the Arbitral Panel found that Bibiji owns the YOGI

15 marks, she owns the PEACE mark. For the same reasons that the Arbitral Panel found

16 the incontestable status of the YOGI mark was not an impediment to Bibiji's claims

17 against Golden Temple, the incontestable status of the PEACE mark registered by

18 Bibiji's licensee in contravention the license agreement does not preclude Bibiji's

19 claim.  The registration was obtained through fraud and Golden Temple and, it's

20 successor in interest with respect to the PEACE mark, Hearthside, are precluded by

21 estoppel and acquiescence from denying Bibiji's ownership of the mark.  Moreover,

22 further use of the mark by Hearthside "misrepresent[s] the source of the goods" since

23 Hearthside is not licensed by Bibiji to use the mark.

24      These allegations in the Complaint are sufficient to state a claim for

25 infringement of the PEACE CEREAL marks despite their incontestability status.

26  //

27  //

28  //

1

2   **3.    The Complaint Adequately Alleges Common Law Trademark Claims**

3

4       Hearthside asserts that the Complaint fails to state a claim for common law

5   trademark because "the Complaint is devoid of any allegation that Puri used (or even

6   directed another to use) the PEACE® marks in the sale of any goods or services."

7   Motion at p. 7.  That is not the case.  The Complaint alleges that Bibiji is a successor-

8   in-interest to the licensed trademarks (Complaint, ¶ 16) and goes on to allege:

9           17.  GOLDEN TEMPLE OF OREGON ("GTO") is a

10          successor to the Yogi Tea Company and, in turn, also

11          licensed the right to use Yogi Bhajan's name and likeness,

12          including any trademark, service mark, logo, insignia, seal,

13          design, or any other symbol or device used by or identifying

14          Yogi Bhajan (collectively referred to as the "YOGI

15          BHAJAN MARKS") in connection with the sales of certain

16          goods, including teas and food products.  The License was

17          renewed and extended repeatedly until it was replaced with

18          a new license in 2004 with a term of 75 years providing the

19          same scope of license to use the Licensed Marks. . . .

20          19.  Since the beginning and as recently as 2009, *at*

21          *Yogi Bhajan's direction and insistence, GTO started using*

22          *Yogi Bhajan's image on its packaging,* its websites and

23          sales and marketing materials *for a line of cereals under*

24          *the "PEACE CEREAL" trademark. At Yogi Bhajan's*

25          *direction, 10% of the profits from sales of PEACE*

26          *CEREAL branded products were donated* to support the

27          International Prayer for Peace Day founded by Yogi Bhajan.

28          20.    The Licensed marks therefore include "Yogi

---

1    Tea," "YOGI" and "PEACE CEREAL."  (Emphasis added.)

2         The facts alleged are that Yogi Bhajan's trademarks were used on PEACE

3    CEREAL packaging and that there were profits from sales of PEACE CEREAL.

4    From these factual allegations it can reasonably be inferred that the PEACE CEREAL

5    mark was used on cereal sold in interstate commerce and that a portion of the profits

6    from those sales was actually donated to charity.  Golden Temple paid royalties to the

7    Yogi Bhajan and Bibiji Living Trust while Yogi Bhajan was alive and to Bibiji after

8    he passed away.  Golden Temple and Hearthside are estopped form denying Bibiji's

9    ownership of the marks.

10        A trademark may be acquired and sustained solely through use by a licensee, as

11   the use of the mark by the licensee inures to the benefit of the licensor.  *EGL Gem*

12   *Lab Ltd. v. Gem Quality Institute, Inc.,* 90 F. Supp. 2d 277, 300 (S.D. N.Y. 2000)

13   (citing 2 MCCARTHY § 18:46; see 15 U.S.C. § 1055).

14        Once a license has expired or is terminated, use of the formerly licensed

15   trademark constitutes infringement.  *Professional Golfers Association v. Bankers Life*

16   *& Casualty Co.*, 514 F.2d 665, 670 (5th Cir. 1975).  A licensee cannot acquire rights

17   that survive the legal termination of that license.  *United States Jaycees v.*

18   *Philadelphia Jaycees,* 639 F. 2d 134, 143 (3rd Cir. 1981).

19        The allegations of the Complaint are sufficient to support a claim for common

20   law trademark infringement.

21

22        **4.    The Complaint Adequately Alleges a Trade Dress**
            **Infringement Claim**
23

24        Hearthside argues "Puri conclusorily alleges trade dress infringement under

25   Count I [citations omitted], but fails to identify the alleged protected trade dress at all.

26   This is insufficient to state a claim for trade dress infringement, as it gives Hearthside

27   no notice of what the claim is."  Motion at p. 7.

28        The Complaint sufficiently gives Hearthside notice of the trade dress claimed

by Bibiji, which included "Yogi Bhajan's name and likeness, including any trademark, service mark, logo, insignia, seal, design, or any other symbol or device used by or identifying Yogi Bhajan" (Complaint ¶ 17), that "GTO used Yogi Bhajan's image on its packaging, its websites and sales and marketing materials heralding that the 'Yogi behind Yogi Tea is Yogi Bhajan....' " (Complaint ¶ 18), and "Since the beginning and as recently as 2009, at Yogi Bhajan's direction and insistence, GTO started using Yogi Bhajan's image on its packaging, its websites and sales and marketing materials for a line of cereals under the "PEACE CEREAL" trademark." (Complaint ¶ 19).  Thus, the trade dress is the entire packaging design as was used by Golden Temple, and now by Hearthside, which over the course of nearly 12 years identified and was associated with Yogi Bhajan.

All three requisite elements Hearthside claims are necessary for trade dress infringement are present here.  First, the use of the image of Yogi Bhajan and the packaging on which it was used is inherently distinctive and protectable without secondary meaning.  *Philip Morris Inc. v. Star Tobacco Corp.,* 879 F.Supp. 379, 383 (S.D.N.Y.1995) (trade dress in advertisements of plaintiff's Marlboro cigarettes, which juxtaposed the product with a setting of the American West through its "Marlboro Country" and "Marlboro Man" images, was inherently distinctive and thus protectable).

Furthermore, "Where a licensee persists in the unauthorized use of a licensor's trademark, courts have found that the continued use alone establishes a likelihood of consumer confusion."  *Sun Microsystems v. Microsoft Corp.,* 999 F.Supp. 1301, 1311 (N.D.Cal.1998) (citing *Paisa, Inc. v. N & G Auto, Inc.*, 928 F.Supp. 1009, 1012 n. 4 (C.D. Cal. 1996).  See also *Robert Trent Jones II, Inc. v. GFSI, Inc*., 537 F. Supp. 2d 1061, 1065 (N.D. Cal. 2008).  Hearthside continues to use the packaging, even though Yogi Bhajan's name, likeness and signature have been removed; the rest of the pacakage trade dress remains unchanged.

Lastly, Plaintiff's trade dress is not functional.  *Nova Wines, Inc. v. Adler Fels*

1   *Winery LLC,* 467 F. Supp. 2d 965, 978, 85 U.S.P.Q.2d 1202 (N.D. Cal. 2006)

2   (Marilyn Monroe images on wine bottles is non-functional trade dress).

3

4           **5.**     **The Complaint Adequately Alleges Actions Affecting**

                      **Interstate Commerce**

5

6       Hearthside disingenuously asserts that the Complaint "fails to allege any facts

7   that would support even an inference of any action affecting interstate commerce."

8   Motion at p. 8.  Hearthside cannot claim that the goods are not sold in interstate

9   commerce, since they are distributed nationwide.  The objection that the allegation is

10   missing from the asserted claim is not grounds for dismissal where the fact of

11   interstate use is undeniable and Hearthside would admit to it.

12       The Lanham Act defines "use in commerce" as the bona fide use of a mark in

13   the ordinary course of trade, and not made merely to reserve a right in a mark. For

14   purposes of the Lanham Act, a mark shall be deemed to be in use in commerce--

15           (1) on goods when--

16           (A) it is placed in any manner on the goods or their

17           containers or the displays associated therewith or on the tags

18           or labels affixed thereto, or if the nature of the goods makes

19           such placement impracticable, then on documents

20           associated with the goods or their sale, and

21           (B) the goods are sold or transported in commerce . . .

22   15 U.S.C.A. § 1127.

23       The Supreme Court has expressly held that intrastate sales of food which had

24   formerly traveled in interstate commerce sufficiently affected that commerce to allow

25   federal regulation of the intrastate sale. *Katzenbach v. McClung,* 379 U.S. 294, 85

26   S.Ct. 377, 13 L.Ed.2d 290 (1964).  See also *Application of Silenus Wines, Inc.,* 557

27   F.2d 806, 809, 194 U.S.P.Q. 261 (C.C.P.A. 1977).

28       The Complaint alleges: "HEARTHSIDE recklessly used and now, with actual

1    knowledge of BIBIJI's rights, continues to use the YOGI and PEACE CEREAL

2    trademarks and trade dress belonging to BIBIJI to promote and advertise Defendants'

3    Goods." This is sufficient to establish use in commerce under the Lanham Act.

4

5              **6.**     **Bibiji Is Not Pursuing a Claim for False Advertising**

6        Hearthside asserts Bibiji has failed to allege a competitive injury and therefore

7    lacks standing to bring a false advertising claim under Lanham Act 43(a). However,

8    Bibiji is not asserting a claim for false advertising under the Lanham Act. Hearthside

9    is raising issues where none exist.

10        Bibiji's claim is for false designation of origin which does not require proof of

11    competitive injury, just the fact of actual injury which is both alleged and is presumed

12    from unauthorized use of a trademark owner's trademark. *Jack Russell Terrier*

13    *Metwork of N. Ca. v. Am. Kennel Club, Inc.* 407 F.3d 1027, 1037 (9th Cir. 2005)

14    ("Appellants' reliance on *Waits* and *Smith* is misplaced. We have said that different

15    causes of action alleged pursuant to the different subsections of 15 U.S.C. § 1125(a)

16    have different standing requirements. *Barrus*, 55 F.3d at 469-70. *Smith* and *Waits*

17    involved the "false association" prong of § 43 of the Lanham Act, 15 U.S.C. §

18    1125(a)(1)(A), under which a plaintiff need only allege commercial injury based upon

19    the deceptive use of a trademark or its equivalent to satisfy standing requirements. *Id*.

20    That the parties be competitors "in the traditional sense" is not required. *Waits*, 978

21    F.2d at 1110. On the other hand, for standing pursuant to the "false advertising"

22    prong of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), a plaintiff must

23    show: (1) a commercial injury based upon a misrepresentation about a product; and

24    (2) that the injury is "competitive," or harmful to the plaintiff's ability to compete

25    with the defendant. *Barrus*, 55 F.3d at 470 (*citing Halicki v. United Artists*

26    *Communications, Inc*., 812 F.2d 1213, 1214 (9th Cir.1987)).

27    //

28    //

**B.    The Complaint Adequately States a Claim For Common Law Unfair Competition**

Hearthside asserts "Count III fails to state a claim under California's common law of unfair competition as to the PEACE® marks for the same reasons that the Complaint fails to state a claim under the Lanham Act: Puri alleges no facts that would support any common law ownership of the PEACE® marks and alleges no competitive injury."  Motion at p. 9.  Hearthside is wrong for the reasons discussed above.

**C.    The Complaint Adequately States a Claim For Unfair Trade Practices**

**1.    The Complaint Adequately States a Claim For "Unfair" Business Practices**

Hearthside argues that this claim must be dismissed because it is based on facts incorporated from other paragraphs.  That is wrong and even the case relied on by Hearthside does not support its position in that the portion relied on was mere *dicta* and the Court's ruling was based on the fact, unlike here, that the referenced allegations did not support a UCL claim:

> In its proposed claim under the UCL, however, Plaintiff does not specifically identify the conduct that allegedly violates the UCL. Instead, Plaintiff merely incorporates "paragraphs 1–71 of this Complaint," and asserts that the facts alleged therein constitute "unlawful, unfair and/or fraudulent activities under Cal. Bus. and Prof.Code § 17200 and/or common law." FAC ¶¶ 72–73. This Court has previously found that this type of vague, broad and conclusory pleading is insufficient to state a claim for relief. See *Rashdan v. Geissberger,* No. C 10–00634 SBA, 2011

WL 197957, at *10 (N.D.Cal. Jan.14, 2011) ("Incorporating the preceding 188 paragraphs of the Complaint fails to provide Defendants with 'fair notice' of the basis of Plaintiff's [ ]claim."). Nevertheless, ***the allegations set forth in paragraphs one through seventy-one of the proposed amended complaint are insufficient to state a claim under any of the three prongs of the UCL.***

*Zero Motorcycles, Inc. v. Pirelli Tyre S.p.A.*, C 10-01290 SBA, 2011 WL 2844397 (N.D. Cal. July 18, 2011) [emphasis added].

As Fed. R. Civ. P. 10(c) expressly makes clear, incorporation by reference is a proper form of pleading: "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion."  A court must also read the complaint as a whole, together with matters appropriate for judicial notice, rather than isolating allegations.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 US 308, 127 S Ct 2499, 168 L Ed 2d 179 (2007).  Here, the referenced allegations taken as a whole support a UCL claim.

### 2. The Complaint Adequately States a Claim For "Fraudulent" Business Practices

A "fraudulent" business act or practice is one in which members of the public are likely to be deceived. *Hall v. Time, Inc.*, 158 Cal.App.4th 847, 849, 70 Cal.Rptr.3d 466 (2008); *Olsen v. Breeze, Inc*., 48 Cal.App.4th 608, 618, 55 Cal.Rptr.2d 818 (1996) (" 'Fraudulent,' as used in the statute, does not refer to the common law tort of fraud but only requires a showing members of the public 'are likely to be deceived.' " (citation omitted)). Thus, in order to state a cause of action based on a "fraudulent" business act or

1        practice, the plaintiff must allege that consumers are likely

2        to be deceived by the defendant's conduct. *Committee on*

3        *Children's Television, Inc. v. General Foods Corp.*, 35

4        Cal.3d 197, 212, 197 Cal.Rptr. 783, 673 P.2d 660 (1983).

5 *VP Racing Fuels, Inc. v. Gen. Petroleum Corp.*, 673 F. Supp. 2d 1073, 1087, 2009-2

6 Trade Cases P 76842, 2009 WL 4282124 (E.D. Cal. 2009).

7        The Ninth Circuit "has consistently held that state common law claims of unfair

8 competition and actions pursuant to California Business and Professions Code §

9 17200 are 'substantially congruent' to claims made under the Lanham Act." *Cleary v.*

10 *News Corp.*, 30 F.3d 1255, 1263-64 (9th Cir.1995). See also *Jackson v. Sturkie*, 255

11 F.Supp.2d 1096, 1107 (N.D.Cal.2003) (adequately pled Lanham Act claim meant that

12 UCL claim also was pled sufficiently).

13

14            **3.**     **The Complaint Adequately Alleges Facts to Allow Bibiji to**

15                  **Represent Consumers and the Public**

16        Hearthside argues that the Unfair Business Practices claim must be denied

17 because Bibiji has not alleged she was "personally harmed" and therefore lacks

18 standing. Hearthside ignores the incorporated allegations from paragraphs 33, 40, 45

19 and 48 which all allege Bibiji has suffered injury as a result of Hearthside's conduct.

20        Moreover, it has long been established that the focus is on the Defendants' acts,

21 and not the Plaintiff's injury "in service of the statute's larger purpose of protecting

22 the general public against unscrupulous business practices."

23        The fraudulent business practice prong of the UCL has been

24        understood to be distinct from common law fraud. "A

25        [common law] fraudulent deception must be actually false,

26        known to be false by the perpetrator and reasonably relied

27        upon by a victim who incurs damages. None of these

28        elements are required to state a claim for injunctive relief"

1  under the UCL. (*Day v. AT & T Corp.*(1998) 63 Cal.App.4th

2  325, 332, 74 Cal.Rptr.2d 55; see *State Farm Fire &*

3  *Casualty Co. v. Superior Court* (1996) 45 Cal.App.4th

4  1093, 1105, 53 Cal.Rptr.2d 229.)  This distinction reflects

5  the UCL's focus on the defendant's conduct, rather than the

6  plaintiff's damages, in service of the statute's larger purpose

7  of protecting the general public against unscrupulous

8  business practices. (*Fletcher v. Security Pacific National*

9  *Bank* (1979) 23 Cal.3d 442, 453, 153 Cal.Rptr. 28, 591 P.2d

10  51.)

11 *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009), reh'g denied (Aug. 12, 2009).

12      As alleged in paragraph 32 of the Complaint, "Defendants' continued unlawful

13 use is likely to cause confusion, deception, or mistake as to the source, association,

14 affiliation or sponsorship of Defendants' Goods."

15      Thus, the allegations properly support a claim that consumers are being

16 deceived by Defendants' conduct which, once proven at trial, will make out a claim

17 for fraudulent business practices under the UCL.  Therefore, this claim is proper.

18

19          **4.**    **Bibiji Is Entitled to the Relief Requested**

20      Hearthside argues that Bibiji is seeking relief that is not allowed and therefore

21 the Unfair Trade Practices claim must be dismissed.  Again, Hearthside is creating

22 issues where none exist as paragraph 51 expressly alleges:

23      BIBIJI is entitled to an injunction under California Business

24      and Professions Code Section 17203 enjoining Defendants

25      from engaging in its unlawful acts, and restoration of any

26      money or property which Defendants acquired through their

27      acts of unfair competition.

28 This is exactly the relief that Hearthside admits is proper under the UCL: "only

1  restitution and injunctive relief are available" citing Cal. Bus. & Prof. Code § 17203,

2  and case law thereunder.  Hearthside Memo at 13:25-28.

3         What Defendant is actually arguing is that Bibiji is trying to recover damages

4  couched in terms of "restitution."  What may be recovered as "restitution" is

5  something the parties will have the opportunity to debate and the Court will settle the

6  issue if need be.  However, from a pleading standpoint, as evidenced by paragraph 51

7  quoted above, Plaintiff has properly alleged a claim to relief.

8

9         **D.     The Complaint Adequately States a Claim For Imposition of a**
                  **Constructive Trust**

10

11        Constructive trusts are imposed under California Civil Code §2224 on gains

12  obtained through wrongful conduct.  Bibiji has asserted such a claim.

13        Moreover, contrary to Hearthside's assertion Bibiji is entitled to the remedy of

14  a constructive trust in both the registration for the PEACE CEREAL trademark and

15  all profits derived from the unauthorized and unlawful use of that mark by

16  Hearthside.

17        The essence of the theory of constructive trust is to prevent unjust enrichment

18  and to prevent a person from taking advantage of his or her own wrongdoing.  *PCO,*

19  *Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 58

20  Cal.Rptr.3d 516, 150 Cal.App.4th 384 (2007).  A "constructive trust" is an

21  involuntary equitable trust created by operation of law as a remedy to compel the

22  transfer of property from the person wrongfully holding it to the rightful owner.  *Id.*

23        Imposition of constructive trust requires: res; right of complaining party to that

24  res; and some wrongful acquisition ***or detention of the res by another party who is***

25  ***not entitled to it***.  *Communist Party v. 522 Valencia, Inc.*, 41 Cal.Rptr.2d 618, 35

26  Cal.App.4th 980 (1995) (emphasis added).  The *res* here is both the registration of the

27  PEACE CEREAL trademark and the profits it acquired by Hearthside from its use.

28  Bibiji is the rightful owner of the res and Hearthside is detaining the registration of

1  the PEACE CEREAL trademark and the profits it has wrongfully acquired from its

2  use.  Therefore, Hearthside is holding the registration of the PEACE CEREAL mark

3  and the profits from its use in constructive trust and they must be turned over to their

4  rightful owner, Bibiji.

5      Hearthside seeks to focus only on the allegations in paragraphs 54 & 55 of the

6  Complaint and ignore all of the other allegations.  However, the Court must read the

7  complaint as a whole rather than isolating allegations.  *Tellabs, supra*, 551 US 308,

8  127 S Ct 2499.  The Complaint clearly asserts Bibiji's ownership of the PEACE

9  CEREAL trademark (Complaint ¶¶ 16, 19, 20, 26), Hearthside's wrongful use of the

10  mark (Complaint ¶¶ 29, 32, 37-40, 44-46, 62), and asks that the registration be

11  assigned to her (Complaint ¶ 63), in addition to requesting Hearthside to turn over the

12  income from use of the mark.  (Complaint ¶ 55).

13      Hearthside argues that the allegations of the Complaint do not support a

14  constructive trust because it did not acquire the "*res*" through wrongful conduct on its

15  part.  However the authorities cited by Hearthside itself establish it does not matter

16  whether the "*res*" is acquired wrongfully, only that it is wrongfully "detained."

17  *Cassirer v Spain,* 461 F.Supp.2d 1157, 1178 (C.D. Cal. 2006).  Hearthside quotes

18  *Cassirer*, including the portion specifically given emphasis in the original text, but

19  totally ignores the holding of that case in its argument.  The *Cassirer* court denied

20  Spain's motion to dismiss the claim for imposition of a constructive trust on a

21  painting taken by the Nazis during World War II which was in its possession and to

22  which Spain claimed ownership, stating:

23          First, as to the declaratory relief action, Plaintiff has alleged

24          a "case or controversy" against Spain since it is alleged-and

25          in fact admitted by the Foundation-that the Foundation is an

26          agent or instrumentality of the Spanish government, and that

27          the Foundation  possesses and purports to own the Painting

28          which Plaintiff claims is rightfully his.

Second, Plaintiff's claim for a constructive trust requires: "(1) the existence of res (property or some interest in property); (2) the right of the complaining party to that res; and (3) some wrongful acquisition *or detention of the res by another party* who is not entitled to it." *In re Real Estate Assocs. P'ship Litig.,* 223 F.Supp.2d 1109, 1140 (C.D.Cal.2002) (emphasis added). Spain's own cited case makes clear that wrongful detention of the res by another party is sufficient for purposes of the imposition of a constructive trust. As such, Spain's argument fails given the allegations in the Complaint.

*Cassirer v. Kingdom of Spain*, 461 F. Supp. 2d 1157, 1177-78 (C.D. Cal. 2006) (emphasis in original).  Thus, under *Cassirer* it is irrelevant how the res was acquired, it is the *detention* of the res by a party who is not entitled to it that is the key.  Here, Hearthside is detaining the registration to the PEACE CEREAL mark and the profits obtained from it use.  This Hearthside cannot do, and it must turn them over to Bibiji.

Bibiji is entitled to assert constructive trust as a separate cause of action, and seek it as a remedy.

**E.    The Complaint Adequately States a Claim For Declaratory Relief and Assignment of Trademark Applications and Registrations**

Hearthside asserts Bibiji's claim for declaratory relief should be dismissed because it is repetitive of Bibiji's other claims.  That is not a ground for dismissal.  Where, as here, other claims in the complaint provide the remedy of assignment of the trademarks in issue, there is no grounds for dismissal as redundant.

The Declaratory Judgment Act does not create any new substantive rights in federal courts, but instead creates a procedure for adjudicating existing rights.  28 U.S.C. §§

1   2201-2202; *Western Cas. and Sur. Co. v. Herman,* 405 F.2d
2   121, 124 (8th Cir.1968). For a district court, the appropriate
3   inquiry is to determine whether there are claims in the case
4   that exist independent of any request for purely declaratory
5   relief; that is, claims that would continue to exist if the
6   request for a declaration simply dropped from the case.
7   *Snodgrass v. Provident Life and Acc. Ins. Co.*, 147 F.3d
8   1163, 1167-68 (9th Cir.1998). . . . In this case, Plaintiffs
9   have alleged facts stating valid causes of action for their
10   first five claims. Thus, these claims exist independently of
11   any request for purely declaratory relief. *Snodgrass*, 147
12   F.3d at 1167-68. ***Because Plaintiffs' ninth claim for***
13   ***declaratory relief is properly premised on the other, valid***
14   ***claims, the Court DENIES Defendants' motion to dismiss***
15   ***Plaintiffs' ninth claim for declaratory relief.***
16   *People of California v. Kinder Morgan Energy Partners, L.P.*, 569 F Supp 2d 1073,
17   1091 (S.D. Cal. 2008) (emphasis added).
18        Hearthside also asserts that Bibiji's claim for assignment of trademark
19   applications and registrations should be dismissed because it is merely a remedy.
20   That is not the case.  The Complaint states a valid claim involving the right to
21   registration and should not be dismissed.  *Sam S. Goldstein Indus., Inc. v. Botany*
22   *Indus., Inc.,* 301 F. Supp. 728, 730-31, 163 U.S.P.Q. 442 (S.D. N.Y. 1969) ("[S]ection
23   37 of the Lanham Act, 15 U.S.C. 1119 (1964), provides that a district court, in any
24   action involving a registered trademark, may determine the right to registration . . .
25   Thus, it appears that plaintiff's third count which primarily seeks a determination of
26   its right of registration, states a claim for relief and cannot be dismissed.")
27        The cases cited by Hearthside are inapposite.  In *Taguinod v. World Sav. Bank,*
28   *FSB*, 755 F. Supp. 2d 1064, 1072-73 (C.D. Cal. 2010), the court dismissed claims for

rescission and for imposition of constructive trust because they were asserted only as remedies, not a causes of action.  Likewise, the court in *Flores v. Emerich & Fike,* 1:05-CV-0291 AWI DLB, 2008 WL 2489900 (E.D. Cal. June 18, 2008), dismissed a claim for constructive trust because it "is not a cause of action but rather an equitable remedy."  Id. at *39 (citing *Stansfield v. Starkey*, 220 Cal.App.3d 59, 76, 269 Cal.Rptr. 337 (1990) and 13 Witkin, Cal. Procedure, Trusts, § 319 (2005).)  Neither of these cases concerned trademarks or the right to registration under Section 37 of the Lanham Act, 15 U.S.C. § 1119 or violations of Cal. Civil Code §2224.

Hearthside asserts that Bibiji's claim for declaratory relief should be dismissed because "it improperly seeks a declaration that Puri owns the YOGI® marks, when the allegations themselves establish that non-party Golden Temple, *not* Hearthside, is the registrant of those marks."  Motion at 19.  Hearthside misconstrues Bibiji's claim. Bibiji seeks a declaration of ownership of the PEACE CEREAL marks, and that Hearthside is not entitled to use the YOGI marks because Hearthside is using those marks pursuant to a license from GTO who does not own the YOGI marks.

Bibiji's claim for declaratory relief expressly alleges that Hearthside claims to "own the PEACE CEREAL marks and have the right to use the YOGI MARKS . . . whereas BIBIJI contends that she owns the YOGI and PEACE CEREAL MARKS" (Complaint, ¶ 57), that a "justiciable controversy exists concerning whether Defendant or BIBIJI owns the PEACE CEREAL mark and whether HEARTHSIDE has the right to use the YOGI MARKS" (Complaint, ¶ 58), and seeks "a judgment declaring that BIBIJI is the owner of the YOGI and PEACE CEREAL MARKS and that Defendants have no right to advertise, offer to sell or sell any products or services using the YOGI or PEACE CEREAL MARKS, or any mark confusingly similar thereto, and that Defendants shall assign to BIBIJI all rights, title and interest to any marks, registered or otherwise."  Complaint, ¶ 59.

Bibiji is seeking an adjudication from this Court that she owns the PEACE CEREAL marks, which Hearthside claims to own, and that Hearthside has no right to

use the YOGI marks because Bibiji owns the YOGI marks and has not authorized Hearthside to use them – her ownership of the YOGI marks has already been adjudicated in her arbitration with GTO.  It is irrelevant that GTO is the current registrant of the YOGI marks, because GTO was a mere licensee and unlawfully registered those marks in its own name in violation of license agreements with Bibiji's predecessor-in-interest.  The Arbitration Award against GTO ordered GTO to assign the registrations for the YOGI marks to Bibiji.  Bibiji merely asks the Court to declare she owns the PEACE CEREAL marks and that Hearthside has no right to use the YOGI marks which GTO licensed to Hearthside, because GTO never owned the YOGI marks and thus had no right to license them to Hearthside.

Bibiji's claim for declaratory relief is valid and should not be dismissed.

### F.    The Complaint Adequately States a Claim For Trademark Cancellation

Hearthside again misconstrues allegations of the Complaint.  The Complaint is clear that Bibiji is seeking cancellation of the PEACE CEREAL marks only in the event that the Court does not order Hearthside to assign the PEACE CEREAL marks to Bibiji.  Hearthside latches onto the allegation "and any other YOGI MARKS" in paragraph 67 of the Complaint to assert this claim must be dismissed "because the registrant of those marks is Golden Temple, not Hearthside."  Motion at p. 20.  PEACE CEREAL is a subset of the YOGI MARKS and this allegation was merely a "catch all" phrase to encompass any marks used by Hearthside which were not specifically mentioned or specifically identified.  This claim is directed at the PEACE CEREAL marks which Hearthside claims to own.  Bibiji's insertion of a "catch all" phrase does not establish grounds to dismiss Bibiji's valid claim for cancellation of the PEACE CEREAL marks in the event the Court decides not to order Hearthside to assign those marks.

Hearthside's argument that Bibiji's claim for cancellation does not allege

1  sufficient facts to cancel a mark that has become incontestable is without merit for the

2  reasons discussed above regarding the incontestability of the PEACE CEREAL

3  marks.  Paragraph 64 of the Complaint incorporates by reference all of the prior

4  allegations into the claim for cancellation.  For the reasons discussed above, the

5  allegations in the Complaint are sufficient to state a claim for cancellation of the

6  registrations of the PEACE CEREAL marks despite incontestability status.

7

8  **IV.    CONCLUSION**

9       For the foregoing reasons, Hearthside's Motion to Dismiss should be denied in

10  its entirety.

11

12  Dated: November 28, 2011          Respectfully submitted,

13                                     THE SONI LAW FIRM

14

15

16  By:  /s/ Surjit P. Soni
                                        Surjit P. Soni
17                                      M. Danton Richardson
                                        Leo E. Lundberg, Jr.
18                                      Attorneys for Plaintiff,
                                        BIBIJI INDERJIT KAUR PURI

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO HEARTHSIDE
FOOD SOLUTIONS, LLC'S MOTION TO DISMISS
CASE NO.:CV11-08675-JFW (SSx)

1

**PROOF OF SERVICE**

2

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3

I am employed in the County of Los Angeles, State of California.  I am over the age of 18, and not a party to the within action; my business address is 35 North Lake Avenue, Suite 720, Pasadena, California 91101.

4

5

On November 28, 2011, I served the foregoing document described as **PLAINTIFF'S OPPOSITION TO HEARTHSIDE FOOD SOLUTIONS, LLC'S MOTION TO DISMISS COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)** on the interested parties as follows:

6

7

8

Rhonda R. Trotter
Amanda Myers
Kaye Scholler LLP
1999 Avenue of the Stars, Suite 1700
Los Angeles, CA 90067

9

10

11

[X]   (MAIL) I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice, it would be deposited with the U.S. postal service on that same day, with postage thereon fully prepaid at Pasadena, California, in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

12

13

14

15

[ ]   (PERSONAL SERVICE) I caused the above referenced document to be personally served by hand on the addressees listed above.

16

17

[X]   (VIA ELECTRONIC MAIL) I caused such document to be delivered to addressees listed above via email delivery.

18

19

I declare under penalty of perjury that the foregoing is true and correct.

20

Executed on November 28, 2011, Pasadena, California.

21

22

    /s/Gayane Mkrttchian
    Gayane Mkrttchian

23

24

25

26

27

28