1  Rhonda R. Trotter (State Bar No. 169241)
   Email address:  rtrotter@kayescholer.com
2  Amanda Myers (State Bar No. 267591)
   Email address:  amanda.myers@kayescholer.com
3  KAYE SCHOLER LLP
   1999 Avenue of the Stars, Suite 1700
4  Los Angeles, California  90067
   Telephone:  (310) 788-1000
5  Facsimile:   (310) 788-1200

6  Attorneys for Defendant
   Hearthside Food Solutions, LLC

7

8

9                    UNITED STATES DISTRICT COURT

10                   CENTRAL DISTRICT OF CALIFORNIA

11                        WESTERN DIVISION

12

13  BIBIJI INDERJIT KAUR PURI,              )  Case No. CV 11-08675-JFW (SSx)
                                            )
14            Plaintiff,                     )  SECOND REQUEST FOR JUDICIAL
                                            )  NOTICE IN SUPPORT OF
15       v.                                  )  HEARTHSIDE FOOD SOLUTIONS,
                                            )  LLC'S REPLY IN SUPPORT OF
16  HEARTHSIDE FOOD                          )  MOTION TO DISMISS COMPLAINT
    SOLUTIONS, LLC,                          )  PURSUANT TO FEDERAL RULE OF
17                                          )  CIVIL PROCEDURE 12(b)(6)
              Defendant.                     )
18                                          )  Date:    December 19, 2011
                                            )  Time:    1:30 p.m.
19                                          )  Place:   Courtroom 16
                                            )
20                                          )
                                            )  Hon. John F. Walter
21                                          )
                                            )
22                                          )
                                            )
23  _____  )

24

25

26

27

28

KAYE SCHOLER LLP

KAYE SCHOLER LLP

1    Pursuant to Federal Rule of Evidence 201(b), Defendant Hearthside Food

2  Solutions, LLC respectfully requests that the Court take judicial notice of the fact

3  listed below and the document attached hereto.

4    Fact 1 is a public record of the United States District Court for the District of

5  Oregon.  The Court may properly take judicial notice of this pleading.  *See MGIC*

6  *Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) ("[W]e may take judicial

7  notice of matters of public record outside of the pleadings."); *Lovelace v. Software*

8  *Spectrum*, 78 F.3d 1015, 1018 (5th Cir. 1996) (holding a Court may take judicial

9  notice of a publicly filed document "for the purposes of determining what statements

10  the documents contain").  The accuracy of the document attached hereto "cannot

11  reasonably be questioned."  FED. R. EVID. 201(b).  The accuracy of the court filings

12  can be verified by reference to the District Court of Oregon's court files.

13    Hearthside therefore requests that the Court take judicial notice of the following

14  document, a true and correct copy of which is attached hereto:

15    1.    Golden Temple of Oregon, LLC's Complaint to Partially Vacate

16  Arbitration Award and for Declaratory Judgment, filed on November 14, 2011, in the

17  action *Golden Temple of Oregon, LLC v. Bibiji Inderjit Kaur Puri*, 3:11-cv-01358-SI

18  (Dist. of Or.).  (Attached hereto as **Exhibit A**.)

19

20                                    Respectfully Submitted,
    DATED:  December 5, 2011          KAYE SCHOLER LLP
21

22

23                                    By:  /s/  Rhonda R. Trotter
                                          Rhonda R. Trotter
24                                    Attorneys for Defendant
                                      HEARTHSIDE FOOD SOLUTIONS, LLC.
25

26

27

28

1



**EXHIBIT "A"**

**Kenneth R. Davis II**, OSB No. 971132
davisk@lanepowell.com
**Peter D. Hawkes**, OSB No. 071986
hawkesp@lanepowell.com
**Parna A. Mehrbani**, OSB No. 053235
mehrbanip@lanepowell.com
**LANE POWELL** PC
601 SW Second Avenue, Suite 2100
Portland, Oregon 97204-3158
Telephone: 503.778.2100
Facsimile: 503.778.2200

Attorneys for Plaintiff Golden Temple of Oregon, LLC



UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

|  |  |
|---|---|
| **GOLDEN TEMPLE OF OREGON, LLC,** an Oregon Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>**BIBIJI INDERJIT KAUR PURI,** an individual,<br><br>Defendant. | CV No. CV '11 - 1358 - SI<br><br>Plaintiff Golden Temple of Oregon, LLC's COMPLAINT TO PARTIALLY VACATE ARBITRATION AWARD AND FOR DECLARATORY JUDGMENT |

Plaintiff Golden Temple of Oregon, LLC ("Golden Temple" or "plaintiff") states the following for its Complaint against defendant Bibiji Inderjit Kaur Puri ("Puri" or "defendant"):

### THE PARTIES

1. Golden Temple is a limited liability company duly organized and existing under the laws of Oregon. Its members are Unto Infinity, LLC, an Oregon limited liability company;

PAGE 1 -   COMPLAINT TO PARTIALLY VACATE ARBITRATION AWARD AND FOR
            DECLARATORY JUDGMENT

**Exhibit A
Page 2**

and Golden Temple Management, LLC, an Oregon limited liability company. Unto Infinity, LLC's sole member is Siri Singh Sahib Corp., an Oregon non-profit religious corporation with its principal place of business in Oregon. Golden Temple Management, LLC's members are individuals who all reside either in Oregon or California.

    2.    Puri is an individual residing in or around Espanola, New Mexico.

## JURISDICTION AND VENUE

    3.    This Court has subject matter jurisdiction over the claims arising under the Federal Arbitration Act, 9 U.S.C. § 10, pursuant to 28 U.S.C. § 1331. This Court has subject matter jurisdiction over the claims for declaratory relief under the Lanham Act pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338, and supplemental jurisdiction over the state and common-law claims pursuant to 28 U.S.C. § 1367. Further, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties' citizenship is diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

    4.    This Court has personal jurisdiction over defendant under ORCP 4 L because defendant initiated the underlying arbitration proceedings in Oregon.

    5.    Venue is proper in this Court pursuant to 28 U.S.C.§ 1391(a) and (b) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District. Moreover, venue is proper in this Court pursuant to 9 U.S.C. § 10 because the arbitration award was made in this District.

## FACTUAL BACKGROUND

    6.    Golden Temple is one of the country's leading manufacturers of natural food and beverage products. Golden Temple has sold its products throughout the world under various

PAGE 2 -   COMPLAINT TO PARTIALLY VACATE ARBITRATION AWARD AND FOR DECLARATORY JUDGMENT

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

**Exhibit A
Page 3**

brands and trademarks, including YOGI and YOGI TEA (collectively, the "YOGI Marks"), for many years. The YOGI Marks are non-functional and the public recognizes and understands that the YOGI Marks distinguish and identify Golden Temple products.

7.     Golden Temple has numerous federal trademark registrations issued by the United States Patent and Trademark Office, including Registration No. 3,607,292, issued on April 14, 2009, for the YOGI Mark; Registration No. 1,980,514, issued June 18, 1996, and Registration No. 3,435,101, issued May 27, 2008, for YOGI TEA.

8.     As a result of Golden Temple's promotion and sale of products under the YOGI Marks, the YOGI Marks have gained significant recognition and goodwill among the purchasing public.

9.     The YOGI Marks are inherently distinctive with respect to the products and services sold under them.

10.    Puri is the widow of Harbhajan Singh Khalsa Yogiji, a/k/a Yogi Bhajan, and was a beneficiary of the Harbhajan Singh Khalsa Yogiji and Inderjit Kaur Living Trust (the "Living Trust").

11.    Under the terms of the Living Trust, upon Yogi Bhajan's death, 50 percent of any intellectual property held by the Living Trust would by conveyed to a survivor's trust for the benefit of Puri, and the other 50 percent would be conveyed to a separate trust for the benefit of certain members of Yogi Bhajan's administrative staff (the "YB Administrative Trust").

12.    In 2004, while Yogi Bhajan was still alive, Golden Temple and the Living Trust entered into a Nonexclusive Trademark License Agreement (the "License Agreement"). The License Agreement provided that Golden Temple would have a license to use certain trademarks belonging to the Living Trust.

13.    Yogi Bhajan died in October 2004.

14.    Upon information and belief, at some point after Yogi Bhajan's death, Puri caused her survivor's trust to convey its assets to her personally.

PAGE 3 -   COMPLAINT TO PARTIALLY VACATE ARBITRATION AWARD AND FOR
           DECLARATORY JUDGMENT

**Exhibit A
Page 4**

15.     In 2009, a dispute arose between Puri and Golden Temple as to the ownership of the YOGI and YOGI TEA marks.  Golden Temple believed that it was the owner of the marks, and that the License Agreement encompassed only Golden Temple's use of Yogi Bhajan's name and likeness.  Golden Temple ceased using Yogi Bhajan's name and likeness on its packaging, and accordingly ceased paying royalties under the License Agreement.  Puri asserted that Golden Temple's continued use of the YOGI and YOGI TEA marks without payment infringed her rights because those marks had belonged to Yogi Bhajan and the Living Trust; they were encompassed within the License Agreement; and, pursuant to the terms of the Living Trust, she had a 50 percent ownership interest in them.

16.     The License Agreement contained an arbitration clause that stated, in pertinent part, that "[a]ny controversy or claim arising out of, or relating to, the making, performance, or interpretation of this Agreement, shall be settled by arbitration in Portland, Oregon, in accordance with the rules and procedures of Arbitration Services of Portland, Inc. * * *."

17.     On or about June 22, 2010, Puri filed a Statement of Claim with the Arbitration Service of Portland, Inc., asserting claims for federal statutory and common law trademark infringement; violation of Section 43(a) of the Lanham Act; unfair competition; imposition of a constructive trust; declaratory relief; assignment of trademark applications and registrations to all YOGI and YOGI TEA marks; a determination that Golden Temple has no right to register those marks; and cancellation of registered marks.

18.     The arbitration hearing took place in January 2011 before a panel of three arbitrators.

19.     On or about August 2, 2011, the arbitration panel issued its Findings of Fact and Notice of Award, a copy of which is attached hereto as Exhibit 1.  The panel found that the YOGI and YOGI TEA marks belonged to Yogi Bhajan and his heirs, and that Golden Temple's use infringed on those marks.  The panel stated that its final award would, among other things, (1) require Golden Temple to pay Puri damages calculated at 50 percent of the royalty rate in the

PAGE 4 -   COMPLAINT TO PARTIALLY VACATE ARBITRATION AWARD AND FOR
            DECLARATORY JUDGMENT

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

**Exhibit A
Page 5**

License Agreement for all uses of the YOGI and YOGI TEA marks from the time those royalty payments had ceased through January 1, 2012; (2) enjoin Golden Temple from further use of the marks beginning on January 1, 2012; and (3) require to convey its registrations of the YOGI and YOGI TEA marks to Puri.

20.    After the arbitrators' ruling, Golden Temple entered into a license agreement (the "Interim License Agreement") with the YB Administrative Trust. Pursuant to the Living Trust, the YB Administrative Trust owned the 50 percent interest in intellectual property formerly held by the Living Trust that was not owned by Puri. The Interim License Agreement gives Golden Temple a license to use the YOGI and YOGI TEA marks for an indefinite period of time commencing on October 1, 2011, and requires 180 days' notice prior to termination. The Interim License Agreement currently remains in effect, and no notice of termination has been given.

21.    After entering into the Interim License Agreement, Golden Temple informed the arbitration panel of the Interim License Agreement and asserted that, in light of the agreement, the panel should not award Puri damages for Golden Temple's use for the period from October 1, 2011 to December 31, 2011, because Golden Temple had and has a valid license to use the YOGI and YOGI TEA marks for that period.

22.    The panel declined to decide the issue of whether persons other than Puri had rights to the YOGI and YOGI TEA trademarks absent an agreement of the parties to reopen the case to take evidence and argument on that issue. Puri declined to reopen the record.

23.    The arbitrators issued their final Arbitration Award on November 11, 2011, granting the same relief set forth in its Findings of Fact and Notice of Award. A true and correct copy of the Arbitration Award is attached hereto as Exhibit 2.

## FIRST CLAIM FOR RELIEF

### Partial Vacatur of Arbitration Award—9 U.S.C. § 10

24.    Golden Temple incorporates and realleges the allegations contained in paragraphs 1 through 23 above as if fully set forth herein.

PAGE 5 -   COMPLAINT TO PARTIALLY VACATE ARBITRATION AWARD AND FOR DECLARATORY JUDGMENT

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

708480.0095/5214106.1

**Exhibit A
Page 6**

25.     As a co-owner of the YOGI and YOGI TEA trademarks, the YB Administrative Trust has full rights to use those marks or license their use to others without any obligation to account to Puri for such use.

26.     Since October 1, 2011, Golden Temple has had a valid license from the YB Administrative Trust to use the YOGI and YOGI TEA marks.  As a result, Golden Temple, as a lawful licensed users of the marks, cannot be infringing the rights of Puri.  Accordingly, Golden Temple owes no royalties to Puri for any period after October 1, 2011.

27.     By awarding damages to Puri based on Golden Temple's use of the YOGI and YOGI TEA marks for the period from October 1, 2011 through December 31, 2011, despite the fact that Golden Temple had and has a valid license to use the marks for that period, the arbitrators exceeded their powers.

28.     Because the Interim License Agreement requires 180 days' notice for termination, Golden Temple will have a valid license to use the YOGI and YOGI TEA marks on January 1, 2012 and for some period of time thereafter.  By enjoining Golden Temple from using the YOGI and YOGI TEA marks after December 31, 2011, despite the fact that Golden Temple will have a valid license to use the marks during that period, the arbitrators exceeded their powers.

29.     By ordering Golden Temple to transfer its YOGI and YOGI TEA trademark registrations to Puri, in derogation of the rights of a non-party, the YB Administrative Trust, that has a 50 percent interest in those marks, the arbitrators exceeded their powers.

30.     Accordingly, the Arbitration Award should be vacated to the extent it (1) awards damages to Puri based on Golden Temple's use of the YOGI and YOGI TEA marks for the period from October 1, 2011 through December 31, 2011; (2) enjoins Golden Temple from using the YOGI and YOGI TEA marks during periods in which Golden Temple has a valid license for such use from the co-owner of those trademarks; and (3) requires Golden Temple to transfer its YOGI and YOGI TEA trademark registrations to Puri, in derogation of the rights of the YB Administrative Trust, a non-party to the arbitration.

PAGE 6 -   COMPLAINT TO PARTIALLY VACATE ARBITRATION AWARD AND FOR
              DECLARATORY JUDGMENT

## SECOND CLAIM FOR RELIEF

### Declaratory Judgment—28 U.S.C. § 2201

31.  Golden Temple incorporates and realleges the allegations contained in paragraphs 1 through 30 above as if fully set forth herein.

32.  Puri disputes Golden Temple's right to use the YOGI and YOGI TEA marks pursuant to the Interim License Agreement without further obligation to her.

33.  Golden Temple is entitled to a declaration that its use of the YOGI and YOGI TEA marks pursuant to the Interim License Agreement (1) does not infringe any of Puri's rights under the Lanham Act and the common law, and (2) is non-actionable under state laws of unfair competition or otherwise.

34.  Golden Temple is further entitled to a declaration that its has no obligation to account or otherwise provide remuneration to Puri after October 1, 2011 for its use of the YOGI and YOGI TEA marks pursuant to the Interim License Agreement.

## PRAYER FOR RELIEF

WHEREFORE, having set forth its claims for relief, Golden Temple prays for judgment as follows:

1.  That the Arbitration Award be vacated to the extent it awards damages to Puri based on Golden Temple's use of the YOGI and YOGI TEA marks for the period from October 1, 2011 through December 31, 2011;

2.  That the Arbitration Award be vacated to the extent it enjoins Golden Temple from using the YOGI and YOGI TEA marks during periods in which Golden Temple has a valid license for such use from the co-owner of those trademarks;

3.  That the Arbitration Award be vacated to the extent it requires Golden Temple to transfer its YOGI and YOGI TEA trademark registrations to Puri;

PAGE 7 -  COMPLAINT TO PARTIALLY VACATE ARBITRATION AWARD AND FOR DECLARATORY JUDGMENT

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

4.     That the Court declare that Golden Temple's use of the YOGI and YOGI TEA marks pursuant to the Interim License Agreement (1) is a non-infringing use under the Lanham Act and the common law, and (2) is non-actionable under state laws of unfair competition;

5.     That the Court declare that Golden Temple has no obligation to account or otherwise provide remuneration to Puri for its use of the YOGI and YOGI TEA marks after October 1, 2011 pursuant to the Interim License Agreement; and

6.     That Golden Temple be awarded such other and further relief as this Court deems just and equitable.

DATED: November 14, 2011

LANE POWELL PC

By
_____
Kenneth R. Davis II, OSB No. 971132
Peter D. Hawkes, OSB No. 071986
Parna A. Mehrbani, OSB No. 053235
Telephone: 503.778.2100
Attorneys for Plaintiff Golden Temple of Oregon, LLC

PAGE 8 -   COMPLAINT TO PARTIALLY VACATE ARBITRATION AWARD AND FOR
            DECLARATORY JUDGMENT

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

**Exhibit A
Page 9**



## Chernoff Vilhauer
### INTELLECTUAL PROPERTY LAW

Peter Staples

(503) 278-3308
pete@chernofflaw.com

August 2, 2011

**VIA EMAIL & FIRST-CLASS MAIL**

Surjit P. Soni
surji@sonilaw.com
The Soni Law Firm
35 North Lake Avenue, Suite 720
Pasadena, CA  91101

Kenneth R. Davis, II
davisk@lanepowell.com
Lane Powell
601 SW Second Avenue, Suite 2100
Portland, OR  97204

Re:     *Puri v. Golden Temple of Oregon LLC*
        (ASP No. 100624)

Counsel:

Enclosed is the Arbitration Panel's Findings of Fact and Notice of Award.

Regards,

Peter Staples

JPS/jw
Encl.
cc:    Parna A. Mehrbani
       M. Danton Richardson
       Alan T. McCollom
       Jeffrey M. Edelson
       James J. Damis, Arbitration Service of Portland, Inc.

EXHIBIT    I
PAGE       I

Exhibit A
Page 10

ARBITRATION SERVICE OF PORTLAND

**BIBIJI INDERJIT KAUR PURI,** an
individual,

                          Claimant,

        v.

**GOLDEN TEMPLE OF OREGON, LLC,**
an Oregon Limited Liability Company,

                     Respondent.

ASP No. 100614

**FINDINGS OF FACT AND
NOTICE OF AWARD**

This is a trademark dispute wherein Claimant contends that Claimant is the owner of trademark rights in the marks YOGI TEA and YOGI, that Respondent has infringed those rights, that Claimant is the rightful owner of trademark registrations and applications for those marks, and that Respondent has breached a trademark license agreement.   A hearing was held January 10-19, 2011 in Portland, Oregon before a Panel of the undersigned arbitrators.

**History of Yogi Bhajan and Yogi Tea**

Harbhajan Singh Khalsa Yogiji (HSKY), also known as Yogi Bhajan, Yogiji, and by the religious title, Suri Singh Sahib, came to the United States in the late 1960s and began teaching Kundalini Yoga classes in Los Angeles.  An inspirational and charismatic teacher, he founded a community of people intent upon leading a spiritual life founded upon the principles of Kundalini Yoga and a healthy lifestyle consistent with Ayurveda, a traditional Indian system of medicine.  The community's name for itself is 3HO – Healthy, Happy, Holy Organization.

Yogi Bhajan became known for serving an herbal tea at his Kundalini Yoga classes.  The tea was known as Yogi Tea.  As the 3HO community expanded and built ashrams throughout the

PAGE 1 – FINDINGS OF FACT AND NOTICE OF AWARD

EXHIBIT ___1___
PAGE ___2___
Exhibit A
Page 11

United States and around the world, it was common for Kundalini Yoga instructors to serve Yogi Bhajan's Yogi Tea at yoga classes.

Yogi Bhajan encouraged members of the 3HO community to support themselves by establishing businesses which employed 3HO members. Among the early 3HO businesses were Golden Temple Conscious Cookery restaurants ("Golden Temple restaurants") where YOGI TEA was listed on the menus, served to customers and sold as loose tea in cellophane bags. It does not appear to the Arbitration Panel that the Golden Temple restaurants – which were located in many U.S. cities – were commonly owned.

In the early 1980s, three members of the 3HO community in Los Angeles started a company called Golden Temple Tea Company to sell YOGI TEA. At some point the Golden Temple Tea Company began doing business as the "Yogi Tea Company." Respondent Golden Temple of Oregon, LLC ("GTO") is the ultimate successor to the Golden Temple Tea Company. The Golden Temple restaurants, different legal entities than the Golden Temple Tea Company, continued to include YOGI TEA on their menus, serve YOGI TEA and sell loose YOGI TEA. YOGI TEA continued to be served at Kundalini Yoga classes taught by Yogi Bhajan, his students, or other members of the 3HO community.

The Golden Temple Tea Company, dba Yogi Tea Company got its start by selling pre-packaged YOGI TEA to Golden Temple restaurants and Golden Temple Natural Foods Stores (another 3HO community business). Golden Temple Tea Company gradually grew its sales to include other natural food stores and grocery stores that sold health food products. At some point the Golden Temple Tea Company, dba Yogi Tea Company was reorganized as Yogi G., Inc., which continued to do business as Yogi Tea Company. Some time thereafter, the three founders of Golden Temple Tea Company donated the company to Sikh Dharma, a non-profit

PAGE 2 – FINDINGS OF FACT AND NOTICE OF AWARD

EXHIBIT __1__
PAGE __3__
Exhibit A
Page 12

corporation controlled by Yogi Bhajan. It appears to the Panel that the donation was at the suggestion of Yogi Bhajan. In the early 90's, Yogi G., Inc. merged with Respondent Golden Temple of Oregon, LLC ("GTO") – another 3HO community business which had been donated to Yogi Bhajan's Sikh Dharma non-profit corporation. Prior to merger with Yogi G., Inc., GTO had been in the business of selling cereal and baked products. After the merger GTO sold YOGI TEA, and continued to sell cereal and baked products. Some of the cereal and baked products were sold in connection with Yogi Bhajan's name and likeness, and more recently the trademark YOGI. Although GTO sold its cereal business in 2009, it continues to sell YOGI TEA to this day. In 2009, sales of YOGI TEA exceeded $27 million.

**Agreements with Yogi Bhajan Regarding YOGI TEA**

The Panel received testimony concerning an initial oral license between Yogi Bhajan and the founders of Golden Temple Tea Company, dba Yogi Tea Company. While no written record of this agreement was produced, the agreement was described by GTO's witnesses as primarily as a "recipe" license to sell YOGI TEA.

In 1993 Yogi G. dba Yogi Tea Company, and predecessor to Respondent GTO, entered into a written recipe license with Yogi Bhajan. The 1993 license agreement also included a trademark clause, specifically granting Yogi G the right to sell tea under the name "YOGI BHAJAN'S YOGI TEA." Ten years later in July 2004, Respondent GTO entered into a written trademark license agreement with the Harbhajan Singh Khalsa Yogiji and Inerjit Kaur Living Trust. Yogi Bhajan was the Trustee of the Living Trust, and he and his wife, Bibiji Inderjit Kaur Puri, were the Trustors. Ms. Puri is the Claimant in this proceeding. The parties agree that the 2004 license gave GTO the right to use Yogi Bhajan's name, likeness and signature ("name and

PAGE 3 – FINDINGS OF FACT AND NOTICE OF AWARD

EXHIBIT   1
PAGE   4

Exhibit A
Page 13

likeness") as trademarks to sell tea, cereal, and herbal products.  The parties disagree whether the disputed trademarks, "YOGI TEA" and "YOGI" are covered by the 2004 license.

Katar Singh Khalsa, president of Respondent GTO, testified that the 2004 trademark license was essentially a substitute for the previous 1994 recipe license, and that both licenses were motivated by respect for Yogi Bhajan and were devices to provide Yogi Bhajan a stream of income in the form of royalties, a portion of which Yogi Bhajan would use to fund "his non-profits," such as Sikh Dharma.

Throughout the history of YOGI TEA, Respondent GTO and its predecessors Yogi G. and Golden Temple Tea Company have sought to create an association with Yogi Bhajan. Yogi G. and Golden Temple Tea Company did business as Yogi Tea Company.  For decades, packaging, websites, and advertising for YOGI TEA by GTO and its predecessors had emphasized a connection with Yogi Bhajan, including:

    a.      attributing the origin of YOGI TEA to Yogi Bhajan;

    b.      displaying a picture, name, and signature of Yogi Bhajan;

    c.      using sayings or quotations attributed to Yogi Bhajan;

    d.      using the phrase "YOGI BHAJAN'S YOGI TEA;"

    e.      proclaiming that "the Yogi behind Yogi Tea is Yogi Bhajan;" and

    f.      identifying Yogi Bhajan as "Founder."

**Yogi Bhajan's Death and the Aftermath**

Yogi Bhajan died in October 2004, just days after entering into a second version of the 2004 Agreement extending the term of the 2004 license from 10 years as set forth in the July 2004 agreement, to 75 years set forth in the October 2004 agreement.  From 2004 through 2008, GTO paid royalties under the 2004 Agreement to a trust for the benefit of Claimant.  Claimant

PAGE 4 – FINDINGS OF FACT AND NOTICE OF AWARD

EXHIBIT  1
PAGE  5

**Exhibit A**
**Page 14**

has revoked her trust, and is the successor-in-interest to her trust.  Royalties were also paid to a second trust (the "Staff Trust") set up by Yogi Bhajan prior to his death to provide for his staff of women who helped him handle the administrative tasks related to managing the 3HO community and its various businesses and organizations.

In 2008 Respondent GTO decided that it no longer wanted to use Yogi Bhajan's name and likeness on its products and ceased paying royalties to Claimant and the Staff Trust. However GTO continued to use the mark YOGI TEA and introduced a derivative brand consisting merely of "YOGI."  At approximately the same time, the management of GTO obtained ownership of GTO and of KIT BV, a Dutch company formed by European members of the 3HO community.  Under the new organizational structure, GTO was to pay its subsidiary KIT BV $8 million per year, and a new entity, Golden Temple Management, LLC, was to receive 90% of the remaining profit.  GTO president Katar Khalsa testified that the management of GTO was not willing to continue to operate GTO without an equity stake in GTO. Subsequent to the reorganization, there was a significant increase in compensation for Golden Temple management.  It is not clear to the Panel whether GTO still pays any money to the 3HO community non-profits or exactly how management of GTO gained control of the company from the 3HO non-profits.  Although there are further disputes within the 3HO community, including a dispute between the Claimant and the Staff Trust, the matters to be decided by this Panel are limited to the claims against Respondent GTO set forth in Claimant's First Amended Demand for Arbitration.

PAGE 5 – FINDINGS OF FACT AND NOTICE OF AWARD

EXHIBIT ___1___
PAGE ___6___
**Exhibit A
Page 15**

Trademark Registrations and Applications

Respondent GTO is the owner of a number of U.S. trademark registrations and applications including YOGI TEA for tea and YOGI for tea, cereal and granola. The first registration, YOGI TEA for tea, was applied for in 1994 by GTO's predecessor Yogi G. based upon first use of the mark in 1983. Yogi Bhajan never objected to registration of YOGI TEA by Yogi G. Pursuant to U.S. trademark laws, that registration, issued in 1996, is now incontestable and cannot be cancelled except upon very limited grounds. It does not appear to the Panel that Claimant has established a basis under law to cancel the 1996 YOGI TEA registration. The other registrations and applications owned by GTO are within the period during which cancellation or opposition proceedings may be brought.

Ownership of YOGI TEA and YOGI

YOGI appears to have been adopted by GTO in December 2008, at about the same time GTO was cancelling its license with Claimant to use the name and likeness of Yogi Bhajan. The Panel believes that the relatively new mark YOGI is derivative of the pre-existing YOGI TEA brand and of other Yogi-names and phrases used by GTO and its predecessors, specifically including references to Yogi Bhajan.[1] Thus a decision with respect to ownership of YOGI TEA will likewise apply to ownership of YOGI, and will substantially resolve many issues in dispute. Neither party has asserted that trademark rights in YOGI are differentiated from trademark rights in YOGI TEA.

---

[1] *e.g.*, "The Yogi Behind Yogi Tea is Yogi Bhajan"

PAGE 6 – FINDINGS OF FACT AND NOTICE OF AWARD

EXHIBIT __1__
PAGE __7__

Exhibit A
Page 16

Respondent GTO claims that through its predecessors, Yogi G., Inc. and Golden Temple Tea Company (both doing business as Yogi Tea Company), GTO was the first to make commercial use of YOGI TEA as a trademark. GTO claims that it has used the mark YOGI TEA continuously since the early 1980's and therefore owns YOGI TEA and it is entitled to continue to use YOGI TEA and the newly adopted mark YOGI, even though it has ceased making payments to Claimant and the Staff Trust under the 2004 License. GTO claims that Yogi Bhajan never made commercial use of YOGI TEA for tea. GTO claims that the first two agreements with Yogi Bhajan were not trademark licenses and points out that they did not have the usual trappings of a trademark license, such as a quality control provision. GTO asserts that even if there was an oral license between Yogi Bhajan and GTO's predecessors granting the predecessors the right to use YOGI TEA, such a license is void as a "naked license" since Yogi Bhajan did not have the right to exercise quality control, and did not in fact exercise quality control.

GTO also points out that the 2004 license specifically identifies "name and likeness" as trademarks, but does not identify YOGI TEA as a trademark, and that a similar license agreement between Yogi Bhajan and the European company 3HO Amalgamated (parent of KIT BV), specifically mentioned YOGI TEA as a trademark – thereby raising the inference that the mark YOGI TEA was deliberately omitted in the 2004 license between GTO and Yogi Bhajan.

Further, GTO asserts that Yogi Bhajan encouraged the members of the community to start businesses to support the community, but that Yogi Bhajan never took ownership interests

PAGE 7 – FINDINGS OF FACT AND NOTICE OF AWARD

EXHIBIT   1
PAGE   8

Exhibit A
Page 17

in the companies. It is uncontroverted that Yogi Bhajan was never an owner, officer or director of GTO or its predecessors.

In response Claimant asserts that Yogi Bhajan managed all of 3HO community businesses and organizations and closely monitored and controlled their operations. Claimant points out that YOGI TEA originated with Yogi Bhajan, and contends that all commercial uses of YOGI TEA by the Golden Temple restaurants, the Golden Temple Tea Company (dba Yogi Tea Company), Yogi G. (dba Yogi Tea Company), and GTO were always with Yogi Bhajan's permission. Claimant also asserts that Yogi Bhajan had the right to control any activities of the 3HO community businesses – and did so, even to the extent of directing their owners to donate the businesses to Sikh Dharma and directing that Katar Khalsa be President of GTO. One witness and several exhibits referred to Yogi Bhajan as "CMA," i.e., Central Management Authority. Claimant's witnesses gave specific examples of Yogi Bhajan's exercise of control over GTO and its predecessors, and his exercise of quality control. Claimant refers to the pervasive attempts by GTO and its predecessors to use Yogi Bhajan to promote YOGI TEA, emphasizing GTO's use of the phrase "the Yogi behind Yogi Tea is Yogi Bhajan" and that the 1993 license agreement granted Yogi G. permission to use YOGI BHAJAN'S YOGI TEA.

**Analysis**

The notion of ownership within the 3HO community is fluid. Yogi Bhajan encouraged his students to form businesses. Although he may not have been an owner, he had tremendous influence over the conduct of those businesses. For example, a 2005 article in *Aquarian Times* written by Sada Sat Singh, a witness for GTO and one of the founders of GTO predecessor Golden Temple Tea Company, stated "...Yogi Tea is one of Yogi Bhajan's greatest business accomplishments..." The article gave other examples of Yogi Bhajan's influence and control of

PAGE 8 – FINDINGS OF FACT AND NOTICE OF AWARD

EXHIBIT ___1___
PAGE ___9___

Exhibit A
Page 18

Golden Temple Tea Company and its successors. The dealings between Yogi Bhajan, the 3HO community, and the for-profit and non-profit 3HO organizations were not arms-length transactions. Yogi Bhajan's overarching plan was to use the 3HO for-profit businesses to support and benefit the 3HO community.

While the parties agree that the phrase Yogi Tea originated with Yogi Bhajan, the close-knit relationships among the 3HO community entities make it difficult to identify traditional trademark milestones such as "adoption," "first use," "first use in interstate commerce," "consent," and "quality control," all of which are relevant to trademark ownership. For example, using traditional trademark analysis, first use of YOGI TEA as a trademark in commerce was probably by the Golden Temple restaurants. However, it does not appear as if these restaurants were commonly owned. Thus, unless use of YOGI TEA by the restaurants was with the permission of Yogi Bhajan or some other single entity, a number of independent restaurants were using YOGI TEA concurrently, and YOGI TEA did not designate a single source—at least during the time of such use. Designation of a single source is the very definition of a trademark. Formation of the Golden Temple Tea Company dba Yogi Tea Company added another independently owned 3HO organization that was using YOGI TEA concurrently with the independently owned 3HO restaurants.

The Panel also received evidence that use of YOGI TEA by all 3HO community businesses, including GTO and its predecessors, and the European 3HO community, was with the permission of Yogi Bhajan. Sada Sat Singh testified that a Golden Temple restaurant in Massachusetts began selling YOGI TEA commercially with the permissions of Yogi Bhajan and later sold the tea business to a tea shop in Maryland. Only after the tea shop ceased commercial sales of YOGI TEA was the way clear for Golden Temple Tea Company to sell YOGI TEA

PAGE 9 – FINDINGS OF FACT AND NOTICE OF AWARD

EXHIBIT _____1_____

PAGE _____10_____

Exhibit A
Page 19

commercially.  This testimony suggests that one of the founders of Golden Temple Tea Company recognized that Yogi Bhajan had the right to control use of YOGI TEA.  The other two founders of Golden Temple Tea Company testified for Claimant that the company's use of YOGI TEA was with Yogi Bhajan's permission.

Repeated references to Yogi Bhajan and his likeness to advertise and sell YOGI TEA, both before and after the 2004 license, strongly suggests that use of YOGI TEA by GTO and its predecessors was with Yogi Bhajan's permission.  A steady royalty stream to Yogi Bhajan (or his heirs) from sale of YOGI TEA from 1983 to 2008, also suggests that use of YOGI TEA was with Yogi Bhajan's permission.  While at least some of these payments came pursuant to a recipe license, the recipe was generally known, and GTO's president acknowledges that the recipe licenses were merely a way to funnel money to Yogi Bhajan.  The 1993 license is particularly instructive since it is the first written license of record and contains a clause which specifically grants Yogi G. permission to use "YOGI BHAJAN'S YOGI TEA."

On the basis of the information above, the Panel concludes that substantially all of the use of YOGI TEA by the Golden Temple restaurants, and by GTO and its predecessors, was with the express or implied permission of Yogi Bhajan, and that Yogi Bhajan's heirs own the trademark YOGI TEA.

There is a further and equally persuasive basis for finding that Yogi Bhajan's heirs are owners of the trademark YOGI TEA.

In paragraph 5.2 of the 2004 license GTO acknowledges that the name, likeness and signature of Yogi Bhajan are trademarks belonging to Yogi Bhajan.  Even before the 2004 license, GTO and its predecessors had created trademark rights in Yogi Bhajan's name and likeness by using the name and likeness to market and sell tea. The 1993 license and the totality

PAGE 10 – FINDINGS OF FACT AND NOTICE OF AWARD

EXHIBIT ___/_____
PAGE ___//_____

Exhibit A
Page 20

of the circumstances demonstrate that use of his name and likeness was with Yogi Bhajan's permission. It is basic trademark law that use of a trademark by a licensee inures to the benefit of the trademark owner. Thus it was not necessary for Yogi Bhajan to personally use his name and likeness as trademarks since use by licensees GTO and its predecessors created trademarks rights in his name and likeness. These trademarks are now owned by Yogi Bhajan's heirs, including Claimant. Yogi Bhajan's heirs therefore have the right to use Yogi Bhajan's name and likeness as trademarks for tea. In contradiction to GTO's arguments that Claimant does not own any trademark rights in Yogi Bhajan's name and likeness, GTO's letter to Yogi Bhajan's heirs terminating the 2004 agreement (Ex. 35) offered to " ... surrender any ongoing rights they (GTO) have to Yogi Bhajan's name and likeness in case you (heirs) want to license Yogi Bhajan's name and likeness to someone else."

Notwithstanding GTO's several acknowledgements of Claimant's trademark rights in Yogi Bhajan's name and likeness, GTO CEO Katar Khalsa testified that use of Yogi Bhajan's name and likeness by Claimant as trademarks for tea would infringe GTO's rights to use YOGI TEA and YOGI for tea. The premise for "infringement" is a "likelihood of confusion," and the Panel agrees with GTO's CEO that such use by Claimant would cause a likelihood of confusion. Therefore, GTO cannot hold trademark rights in YOGI TEA and YOGI that are independent from the acknowledged trademark rights in Yogi Bhajan's name and likeness owned by Claimant.

Over the years GTO and its predecessors created a "family" of Yogi marks for tea, including "YOGI TEA," "Yogi Bhajan," the likeness of Yogi Bhajan, the phrase "The Yogi behind Yogi Tea is Yogi Bhajan," "YOGI BHAJAN'S YOGI TEA," and the more recently adopted "YOGI," and represented to the public that tea and other products sold under this family

PAGE 11 – FINDINGS OF FACT AND NOTICE OF AWARD

EXHIBIT   1
PAGE   12

Exhibit A
Page 21

of marks came from a single source.  It cannot now claim ownership of some of the marks in that family while acknowledging that other marks in the family are owned by Claimant.

The Panel finds that the heir(s) of Yogi Bhajan, including Claimant, are the owner(s) of the trademarks YOGI TEA and YOGI for tea and any other products such as cereal and granola that have been sold in connection with the marks.  The Panel does not make findings as to the ownership of YOGI TEA and YOGI outside of the United States, and does not make findings as to ownership of the marks between Claimant and any other person.

**Findings and Notice of Award**

With respect to the individual claims set forth in Claimant's First Amended Demand for Arbitration, the Panel finds that:

1.    Respondent GTO has no rights in the marks YOGI TEA, YOGI, and the other "Yogi-marks" discussed herein.

2.    Respondent GTO is liable for infringement of the trademarks YOGI TEA and YOGI under the common law and 15 U.S.C. §1125(a).

3.    U.S. Trademark Registration Nos. 1980514 for YOGI TEA, 3435101 for YOGI TEA and Design, and 3607792 for YOGI, and U.S. Trademark Application Serial Nos. 77636305 and 77889992 for YOGI were obtained or applied for by Respondent GTO and/or its predecessors in their capacity as licensees of Yogi Bhajan or his heirs, and GTO and/or its predecessors had no right to register such marks in their names.  Therefore such registrations and applications are held in trust by GTO for Yogi Bhajan and his heirs.

4.    Respondent GTO is  directed to assign the Trademark Registrations and Applications listed in paragraph 2 above, along with the respective marks and the good will associated with the marks, to Claimant.

PAGE 12 – FINDINGS OF FACT AND NOTICE OF AWARD

5.      Respondent GTO is enjoined from use of YOGI TEA, YOGI, Yogi Bhajan, or any other word or device which when used in connection with its respective goods or services is likely to cause confusion with the use of YOGI TEA, YOGI, or the other Yogi-marks discussed herein with tea, granola or cereal products. The Panel intends that such an injunction take effect January 1, 2012 to provide Respondent GTO time for an orderly phase-out of the marks.

6.      Respondent GTO has breached the 2004 license by applying for registration of and seeking to obtain ownership of marks confusingly similar to the Licensed Trademarks shown in Exhibit 1.4 of the 2004 license.[2]

7.      Claimant is entitled to damages for trademark infringement beginning January 1, 2009 through January 1, 2012. After considering the various measures that could be applied to calculate damages, and the relevant evidence and expert opinions, the Panel intends to award damages to Claimant based on a reasonable royalty during the period of infringement and phase-out, together with pre-judgment and post-judgment interest.

Respondent's expert has calculated unpaid royalties under the license agreement, in Schedule 3.1 of Exhibit 166 on products branded with YOGI TEA and/or YOGI for the period January 2009 through 2010 to be $1,644,605. Respondent's expert determined that Claimant's 50% interest therein is $822,302. This calculation is supported by Schedules 3.2 *Gross Sales and Deductions for Yogi Tea – 2009 and 2010* and Schedule 3.3 *Gross Sales and Deductions for Yogi Cereal – 2009 and 2010.*

---

[2] The parties disagree as to whether YOGI TEA and YOGI are "Licensed Trademarks" under the 2004 License Agreement. However, in view of the findings herein that use of YOGI TEA and YOGI infringe Claimant's rights under the common law and the Lanham Act, and that YOGI TEA and YOGI are confusingly similar to the Licensed Trademarks, it is unnecessary to determine whether they are Licensed Trademarks under the Agreement. The Panel notes that YOGI is a name "used by or identifying" Yogi Bhajan pursuant to Section 1.2 of the 2004 Agreement.

PAGE 13 – FINDINGS OF FACT AND NOTICE OF AWARD

EXHIBIT ___1___
PAGE ___14___

Exhibit A
Page 23

Claimant's initial expert report (Exhibits 608 and 609) did not include a calculation for royalties based on sales in 2009 and 2010. In response to the Panel's request, Claimant submitted this calculation in Schedule B to her Post-Arbitration Brief. Claimant's Schedule B states a value for her 50% interest in unpaid royalties for YOGI brand products sold between January 2009 and November 2010 of $883,955. Claimant's method of calculation for these royalties is not as clear nor as well supported as the calculation by Respondent's expert.

The Panel therefore finds that damages for trademark infringement for the period from January 2009 through October 2010 are $822,302. The Panel further finds that Claimant is entitled to reasonable royalty damages from November 1, 2010 through January 1, 2012 for products branded with YOGI TEA, YOGI, or any of the Yogi-marks. Such damages shall be calculated in the same manner used by Respondent's expert to calculate royalties under the License Agreement as reflected in the schedules attached to Exhibit 166.

8.      The Panel finds that Claimant failed to prove that she is entitled to payment for underpayment of royalties prior to January 2009. Respondent's expert, in Exhibits 166 and 167, points out numerous deficiencies in Claimant's calculation of underpayment of royalties. The Panel is persuaded that there is not enough evidence of record upon which to base an award.

In its Post-Arbitration Brief re Question No. 4, Respondent requests that any damages be offset by overpayments of royalties Respondent contends it paid from 2004-2008. The request for this offset was not pleaded by Respondent nor was it raised in Respondent's Pre-Arbitration Memorandum.

The Panel declines to award Claimant any amount of underpaid royalties alleged to occur prior to January 2009, and declines to offset Claimant's damages award by any amount of overpaid royalties.

PAGE 14 – FINDINGS OF FACT AND NOTICE OF AWARD

EXHIBIT ___1___
PAGE ___15___

**Exhibit A**
**Page 24**

9.      Claimant is the "prevailing party," and pursuant to paragraph 19 of the 2004 Agreement is entitled to recovery of reasonable costs and attorney fees.  Within 14 days from receipt of these Findings of Fact and Notice of Award, Claimant shall submit a cost bill and an accounting of attorney fees in accordance with Rules 33 and 34 of the Arbitration Rules of the Arbitration Service of Portland, Inc.  The attorney fees requested should be calculated and supported using the lodestar method and the "Kerr factors" as set forth in *Resurrection Bay Conservation Alliance v. City of Seward*, 640 F.3d 1087 (9th Cir. 2011).  Respondent may submit written objections to Claimant's cost bill and attorney fees as provided in Rule 34 of the Arbitration Rules.

Submission of Proposed Award

Claimant is directed to submit within 14 days of receipt of these Findings of Fact and Notice of Award a proposed award consistent with these findings and in accordance with the Arbitration Rules (*see* Rules 30 and 31 in particular).  A sample form of award suggested by the Arbitration Service of Portland is attached hereto.  Respondent may submit written objections or remarks to Claimant's proposed award within 14 days of receipt of Claimant's proposed award.

ARBITRATION SERVICE OF PORTLAND, INC.      Dated July 29, 2011

_____
J. Peter Staples
Chief Arbitrator

_____          _____
Alan T. McCollom                          Jeffrey M. Edelson
Arbitrator                                Arbitrator

PAGE 15 – FINDINGS OF FACT AND NOTICE OF AWARD

EXHIBIT ___1___
PAGE ___16___

**Exhibit A**
**Page 25**

(Sample form of Arbitration Award)

## ARBITRATION SERVICE OF PORTLAND

In the Matter of an Arbitration Between

JOHN DOE,

        Petitioner,

and

ANN SMITH AND JOHN SMITH,

        Respondents.

)
)
)
)
)
)
)
)
)
)
)
)

     **ARBITRATION AWARD**

I, the undersigned arbitrator, state that I conducted as arbitrator an arbitration hearing on October 5 and October 6, 2004, pursuant to the rules of Arbitration Service of Portland, and as authorized by ORS 36.620, and pursuant to an agreement between the parties that required arbitration of the dispute, petitioner appearing in person and through petitioner's attorney, Bill Barrister, and the respondents appearing in person and through their attorney, Sally Solicitor, and I hereby enter the following arbitration award:

John Doe, petitioner, is entitled to receive and recover from Ann Smith and John Smith the following:

    1.    The sum of $15,000, plus interest thereon at the rate of 9% per annum from February 2, 2004, until paid; and

    2.    The sum of $500, which I find that petitioner, as the prevailing party, should and shall be reimbursed for petitioner's costs of arbitration (filing fee: $200; arbitrator's compensation: $300).

In addition, I find that John Doe should be awarded attorney's fees (and reimbursement of petitioner's arbitration costs (filing fee and arbitrator compensation)), which shall be determined and allowed pursuant to ASP Rule 34, and after the determination thereof a Supplemental Award shall be entered.

This award is in resolution of all claims submitted to arbitration, which arose out of that certain earnest money sale agreement between the parties dated approximately January 8, 2004.

EXHIBIT   __/__

PAGE   __/7__

**Exhibit A**
**Page 26**

To comply with the special requirements of ORS 36.685 (a section of Oregon's version of the Revised Uniform Arbitration Act that requires the information itemized in ORS 18.042 for judgments that include the payment of money), I set forth below the following information:

## MONEY AWARD

Award Creditor(s):
_____ [name]
_____ [street address]
_____ [city, state, zip]

Attorney for Award Creditor(s):
_____ [name]
_____ [firm name]
_____ [street address]
_____ [city, state, zip]
Telephone: _____

Award Debtor(s):
(and, if known:)
Address:
Date of Birth:
Soc. Sec. Number:
Driver's License Number and state of issuance:
_____ [name]
_____ [street address]
_____ [city, state, zip]

Attorney for Award Debtor(s):
_____ [name]
_____ [firm name]
_____ [street address]
_____ [city, state, zip]
Telephone: _____

Principal Amount of Award:        $_____

Pre-Award Interest:        ____% per annum, simple "interest" on the
principal amount of Award judgment from _____ to the date of this Award (or, alternatively, a
specific amount:  $_____)

Total amount of Award upon which simple        $_____ (plus pre-award interest set forth
interest is to accrue at rate of ____% per annum        above) (plus attorney fees and costs as awarded
from and after the date of this Award:        pursuant to ASP Rule 34 (or as set forth below)).

Costs (ASP Rule 33)
    Filing Fee:  $_____
    Arbitrator's Compensation:  $_____        Total Costs:  $_____ (or, if applicable:
        to be awarded pursuant to ASP Rule 34)

    Attorney Fees:        $_____ (or, if applicable:  to be awarded in
        a Supplemental Award pursuant to ASP Rule 34)

Dated this _____ day of _____, 20___.


_____
J. Wise, Arbitrator

forms.asp/arbaward form.wpd

EXHIBIT ___1___
PAGE ___18___

Exhibit A
Page 27

## ARBITRATION SERVICE OF PORTLAND

In the Matter of an Arbitration between

| | |
|---|---|
| BIBIJI INDERJIT KAUR PURI, an individual, | ) ASP No. 100624 |
| | ) |
| Claimant, | ) ARBITRATION AWARD |
| | ) |
| v. | ) |
| | ) |
| GOLDEN TEMPLE OF OREGON, LLC, an Oregon Limited Liability Company, | ) |
| | ) |
| Respondent. | ) |
| ———————————————————— | ) |

     We, the undersigned Arbitrators, conducted an arbitration hearing in this matter on

January 10-19, 2011, in Portland, Oregon, pursuant to the Rules of the Arbitration Service of

Portland, and as authorized by ORS 36.620, and pursuant to the agreement of the parties that

required arbitration of this dispute, Claimant BIBIJI INDERJIT KAUR PURI ("BIBIJI" or

"Claimant"), appearing in person and through her attorney, Surjit P. Soni, and Respondent Golden

Temple of Oregon, LLC ("GTO" or "Respondent"), appearing through its officers and its

attorneys, Kenneth R. Davis, II, and Parna A. Mehrbani, and based upon the Findings of Fact and

Notice of Award dated July 29, 2011, hereinafter referred to as "the Findings" and attached hereto

as Exhibit 1 and made a part hereof by this reference, we hereby enter the following Award as to

each of the claims brought by Claimant against Respondent in this matter:

EXHIBIT _____2_____

PAGE _____1_____

**Exhibit A**
**Page 28**

I.   FINDINGS ON THE CLAIMS IN ISSUE

A.   FEDERAL STATUTORY AND COMMON LAW TRADEMARK
INFRINGEMENT (15 U.S.C. §1051 et seq.)

We find in favor of Claimant and against Respondent. GTO has no rights in the marks in dispute, namely, YOGI TEA, YOGI, or any other "Yogi" marks referred to in the Findings. Said marks were used by GTO and its predecessors with the permission of and under licenses from Yogi Bhajan or the Harbhajan Singh Khalsa Yogiji and Inderjit Kaur Puri Living Trust and all rights thereto inured to their benefit. Claimant owns at least one half interest in the marks at issue. Respondent GTO is therefore liable to Claimant for infringement of the trademarks YOGI TEA and YOGI under the common law and 15 U.S.C. §1125(a).

B.   VIOLATION OF SECTION 43(a) OF THE LANHAM ACT

We find in favor of Claimant and against Respondent. GTO has no rights in the marks in dispute, namely, YOGI TEA, YOGI, or any other "Yogi" marks referred to in the Findings. Respondent GTO is liable to Claimant BIBIJI INDERJIT KAUR PURI ("BIBIJI" or "Claimant") for violations of Section 43(a) of the Lanham Act by its unauthorized use of the marks..

C.   UNFAIR COMPETITION

We find in favor of Claimant and against Respondent. GTO has no rights in the marks in dispute, namely, YOGI TEA, YOGI, or any other "Yogi" marks referred to in the Findings. Respondent GTO is liable to Claimant BIBIJI INDERJIT KAUR PURI ("BIBIJI" or "Claimant") for unfair competition by its unauthorized use of the marks.

2 - ARBITRATION AWARD

EXHIBIT   2
PAGE   2

Exhibit A
Page 29

### D.   IMPOSITION OF CONSTRUCTIVE TRUST

We find in favor of Claimant and against Respondent.  Respondent GTO and/or its predecessors applied for and/or obtained federal registrations regarding "Yogi" marks referred to in the Findings in their capacity as licensees of Yogi Bhajan or the Harbhajan Singh Khalsa Yogiji and Inderjit Kaur Puri Living Trust, even though GTO and/or its predecessors had no right to register such marks in their names.  Therefore, the following registrations and applications are held in trust by GTO and are to be assigned to Claimant:

U.S. Trademark Registrations:

- No. 1980514 for YOGI TEA

- No. 3435101 for YOGI TEA and Design;

- No. 3607292 for YOGI;

U.S. Trademark Applications

- Serial No. 77636305 for YOGI

- Serial No. 7788992 for YOGI


### E.   DECLARATORY RELIEF

We find in favor of Claimant and against Respondent.  GTO has no rights in the marks in dispute, namely, YOGI TEA, YOGI, or any other "Yogi" marks referred to in the Findings.  Said marks were used by GTO and its predecessors with the permission of and under licenses from Yogi Bhajan or the Harbhajan Singh Khalsa Yogiji and Inderjit Kaur Puri Living Trust and all rights thereto inured to their benefit.  Claimant owns at least one half interest in the marks at issue.

EXHIBIT __2__
PAGE __3__
**Exhibit A**
**Page 30**

**F.    ASSIGNMENT OF TRADEMARK APPLICATIONS AND REGISTRATIONS TO ALL "YOGI" AND "YOGI TEA" MARKS**

We find in favor of Claimant and against Respondent.  Respondent GTO and/or its predecessors applied for and/or obtained federal registrations regarding "Yogi" related marks in their capacity as licensees of Yogi Bhajan or the Harbhajan Singh Khalsa Yogiji and Inderjit Kaur Puri Living Trust, even though GTO and/or its predecessors had no right to register such marks in their names.  Therefore, the following registrations and applications are held in trust by GTO and are to be assigned to Claimant:

U.S. Trademark Registrations:

-    No. 1980514 for YOGI TEA

-    No. 3435101 for YOGI TEA and Design;

-    No. 3607292 for YOGI;

U.S. Trademark Applications

-    Serial No. 77636305 for YOGI

-    Serial No. 7788992 for YOGI

**G.    DETERMINATION THAT RESPONDENT HAS NO RIGHT TO REGISTER**

We find in favor of Claimant and against Respondent.   Respondent GTO and/or its predecessors applied for and/or obtained federal registrations for the following YOGI and YOGI TEA marks:

U.S. Trademark Registrations:

-    No. 1980514 for YOGI TEA;

-    No. 3435101 for YOGI TEA and Design;

EXHIBIT   2
PAGE   4
Exhibit A
Page 31

- No. 3607292 for YOGI

U.S. Trademark Applications:

- Serial No. 77636305 for YOGI

- Serial No. 7788990 for YOGI

in their capacity as licensees of Yogi Bhajan or the Harbhajan Singh Khalsa Yogiji and Inderjit Kaur Puri Living Trust, even though GTO and/or its predecessors had no right to register such marks in their names. GTO has no rights in the marks in dispute, namely, YOGI TEA, YOGI, or any other "Yogi" marks referred to in the Findings. GTO therefore has no right to register any of these marks or any marks confusingly similar to them.

## H.    CANCELLATION OF REGISTERED MARKS (15 U.S.C. §1119)

In light of Claims D and F above, we make no findings specific to this cause of action.

## I.    BREACH OF CONTRACT

We find in favor of Claimant and against Respondent. Respondent GTO has breached the 2004 License Agreement (both versions, which are attached as Exhibits A and B to the Demand for Arbitration) by applying for registration of and seeking to obtain ownership of marks confusingly similar to the Licensed Trademarks shown in Exhibit 1.4 of the 2004 License Agreement.

//

//

//

EXHIBIT  2
PAGE  5

Exhibit A
Page 32

## II.  RELIEF GRANTED

1.      Effective *January 1, 2012*, Respondent GTO is enjoined from use of YOGI TEA,
YOGI, Yogi Bhajan, or any other words or device which when used in connection with its
respective goods or services is likely to cause confusion with the use of YOGI TEA, YOGI, or any
other "Yogi" marks referred to in the Findings with tea, granola and/or cereal products.  The Panel
selected January 1, 2012, as the effective date of the injunction in order to provide Respondent
GTO time for an orderly phase-out of the marks.  However, GTO shall be liable for infringement
damages during this "phase-out" period and shall pay royalties for that period as addressed below.

2.      Claimant is entitled to damages based on Respondent's unauthorized use of the
YOGI TEA and YOGI marks beginning January 1, 2009, through December 31, 2011, based on a
reasonable royalty during the period of infringement and phase-out, together with pre-judgment
and post-judgment interest.

(a)     <u>January 1, 2009, through October 31, 2010</u>.  The Panel has determined and
hereby awards to Claimant damages for trademark infringement for the period
from January 1, 2009, through October 31, 2010, in the amount of **$822,302.00**.
Claimant owns at least a one half interest in the marks at issue and the foregoing
sum was calculated for and only represents a one half interest.

(b)     <u>November 1, 2010, through December 31, 2011.</u>  As to the time period from
November 1, 2010, through December 31, 2011, for products branded with YOGI
TEA, YOGI, or any other "Yogi" marks referred to in the Findings,  damages shall
be calculated in the same manner used by Respondent's expert to calculate

EXHIBIT  _2_
PAGE  _6_

**Exhibit A**
**Page 33**

royalties under the License Agreement as reflected in the schedules attached to Exhibit 166.

    (i)   <u>November 1, 2010, through September 30, 2011</u>. Using that method described in paragraph 2(b), damages for trademark infringement based on Respondent's sales information available to date, which covers the period from November 1, 2010, through September 30, 2011, total **$397,679.00**, which represents a one-half interest.

    (ii)   <u>October 1, 2011, through December 31, 2011</u>. For the period October 1, 2011, through December 31, 2011, Respondent shall account to and pay over to Claimant on a monthly basis, no later than 15 days after the end of each month, one half of the applicable royalty as calculated in the same manner used by Respondent's expert to calculate royalties under the License Agreement as reflected in the schedules attached to Exhibit 166 for all sales of products related to the YOGI TEA, YOGI, or any other "Yogi" marks referred to in the Findings. The first scheduled payment under this section is to be made no later than 15 days after the end of the calendar month following execution of this Award and shall include payments for each full month beginning October, 2011, through the month of execution. This Panel reserves jurisdiction to resolve any dispute regarding GTO's obligation to pay royalties as set forth in this paragraph 2.

    3.   The following registrations and applications together with all goodwill associated therewith shall be assigned to Claimant within fourteen (14) days from entry of this Award:

    U.S. Trademark Registrations:

EXHIBIT  <u>2</u>

PAGE  <u>7</u>

**Exhibit A**
**Page 34**

- No. 1980514 for YOGI TEA

- No. 3435101 for YOGI TEA and Design;

- No. 3607292 for YOGI;

U.S. Trademark Applications

- Serial No. 77636305 for YOGI

- Serial No. 7788992 for YOGI

Respondent GTO is directed to deliver to Claimant fully executed assignments within fourteen (14) days of the entry of this Award.

4.      Claimant is also awarded pre-judgment interest at the rate of nine percent (9%) per annum on the sums awarded herein ($1,219,981.00) from July 29, 2011 (the date of the Findings of Fact and Notice of Award) through the date of this Award [this sum totals $18,951.49 through October 26, 2011 - pre-judgment interest will continue to accrue at the daily rate of $300.82 through the date the Panel enters its Award, which amount should be calculated and added to the final Award].

5.      Claimant is also awarded post-judgment interest at the rate of 9% per annum on the sums awarded herein ($1,219,981.00) from the date of execution of this Award through the date of payment of the principal amount of this Award ($1,219,981.00).

6.      We further find that Claimant is the "prevailing party" and, pursuant to paragraph 19 of the 2004 License Agreement (both versions), is entitled to recovery of attorneys' fees totaling $663,630.00 for services rendered through September 14, 2011 and reasonable costs incurred in this action which shall be determined and allowed pursuant to ASP Rule 34, and after the determination thereof a Supplemental Award shall be entered.   Claimant shall submit a supplemental fee claim for services rendered after September 14, 2011 and for costs incurred in

8 - ARBITRATION AWARD

EXHIBIT    2
PAGE    8

**Exhibit A**
**Page 35**

this proceeding 14 days after receipt of the final royalty payment due from Respondent under this Award. Respondent shall have 14 days to object or comment upon Claimant's proposed Supplemental award.

     7.    This Award is in resolution of all claims submitted to arbitration.

     8.    To comply with the special requirements of ORS 36.685 (a section of Oregon's version of the Revised Uniform Arbitration Act that requires the information itemized in ORS 18.042 for judgments that include the payment of money), we set forth below the following information:

**MONEY AWARD**

| | |
|---|---|
| Award Creditor: | Bibiji Inderjit Kaur Puri<br>c/o The Soni Law Firm<br>35 N. Lake Ave. Suite 720<br>Pasadena, CA 91101 |
| Attorney for Award Creditor: | Surjit P. Soni<br>The Soni Law Firm<br>35 N. Lake Ave., Suite 720<br>Pasadena, CA 91101<br>Telephone: (626) 683-7600 |
| Award Debtor:<br>Address: | Golden Temple of Oregon, LLC<br>2545 Prairie Road<br>Eugene, OR 97402 |
| Attorney for Award Debtor: | Kenneth R. Davis II<br>Lane Powell PC<br>601 SW Second Ave. Suite 2100<br>Portland, OR 97204-3158<br>Telephone: (503)778-2100 |
| Principal Amount of Award: | $1,219,981.00 plus royalties due on sales made after September 30, 2011, through December 31, 2011, at the same rate as is set forth in the October 1, 2004 Agreement and which shall be payable 15 days after the end of each month. |

9 - ARBITRATION AWARD

EXHIBIT    2

PAGE    9

**Exhibit A**

**Page 36**

| | |
|---|---|
| Pre-Award Interest: | 9 % per annum, simple interest on the amount of **$1,219,981.00** from July 29, 2011, to October 26, 2011, totaling **$18,951.49** with $300.82 accruing per day until the Award is entered. |
| Post-Award Interest: | 9 % per annum, simple interest on the amount of **$1,219,981.00**, i.e. $300.82 per day, from the date of execution of the Award through the date of payment. |
| Costs and attorneys fees: | **$663,630.00** in Attorneys Fees are awarded to Claimant for services rendered through September 14, 2011. Claimant shall submit a supplemental fee claim for services rendered after September 14, 2011 and for costs incurred in this proceeding 14 days after receipt of the final royalty payment due from Respondent under this Award. Respondent shall have 14 days to object or comment upon Claimant's proposed Supplemental award. |

ARBITRATION SERVICES OF PORTLAND, INC.

Dated: November 9, 2011

J. Peter Staples, Chief Arbitrator

Dated: November 10, 2011

Alan T. McCollom, Arbitrator

Dated: November 10, 2011

Jeffrey M. Edelson, Arbitrator

EXHIBIT 2
PAGE 10

**Exhibit A
Page 37**