1   Rhonda R. Trotter (State Bar No. 169241)
    Email address: rtrotter@kayescholer.com
2   Amanda Myers (State Bar No. 267591)
    Email address: amanda.myers@kayescholer.com
3   KAYE SCHOLER LLP
    1999 Avenue of the Stars, Suite 1700
4   Los Angeles, California 90067
    Telephone: (310) 788-1000
5   Facsimile: (310) 788-1200

6   Attorneys for Defendant
    Hearthside Food Solutions, LLC
7

8              UNITED STATES DISTRICT COURT

9         FOR THE CENTRAL DISTRICT OF CALIFORNIA

10                  WESTERN DIVISION

11  BIBIJI INDERJIT KAUR PURI,          )   Case No. CV 11-08675-JFW (SSx)
                                        )
12              Plaintiff,              )   **HEARTHSIDE FOOD
                                        )   SOLUTIONS, LLC'S REPLY IN
13        v.                            )   SUPPORT OF ITS MOTION TO
                                        )   DISMISS, STAY OR TRANSFER**
14  HEARTHSIDE FOOD                     )
    SOLUTIONS, LLC,                     )   Date:     December 19, 2011
15                                      )   Time:     1:30 p.m.
                Defendant.              )   Place:    Courtroom 16
16                                      )
                                        )   Hon. John F. Walter
17                                      )
                                        )
18  _____)
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.      Application of the First-to-File Rule Gives Priority to Hearthside's
        Oregon Action ..................................................................................................1

II.     Hearthside's Declaratory Judgment Complaint Was Neither An
        Anticipatory Suit Nor Forum Shopping...........................................................4

III.    The Convenience of the Parties, the Witnesses, and the Interests of
        Justice Favor Transferring This Action to the District of Oregon
        Under 28 U.S.C. § 1404(a)................................................................................7

        1.      Convenience of the Parties Favors Transfer ...........................................7

        2.      Convenience of the Witnesses Favors Transfer.......................................8

        3.      Location Where Relevant Agreements Were Negotiated and
                Executed Favors Transfer ......................................................................10

        4.      Plaintiff's Choice of Forum Favors Transfer.......................................10

CONCLUSION.............................................................................................................11

# TABLE OF AUTHORITIES

## Cases

*Alltrade, Inc. v. Uniweld Prods., Inc.,*
    946 F.2d 622 (9th Cir. 1991)........................................................................1, 2

*Broadcom v. Qualcomm Inc.,*
    No. 05-SACV-468, 2005 WL 5925585 (C.D. Cal. Sept. 26, 2005) ..............2

*Bryant v. Oxxford Express, Inc.,*
    181 F. Supp. 2d 1045 (C.D. Cal. 2000).........................................................2

*Capitol Records, Inc. v. Optical Recording Corp.,*
    810 F. Supp. 1350 (S.D.N.Y. 1992)..............................................................6

*Costco Wholesale Corp. v. Liberty Mut. Ins. Co.,*
    472 F.Supp.2d 1183 (S.D. Cal. 2007)............................................................9

*CystoSport, Inc. v. Cytogenix Sports Laboratories, SRL,*
    No. 10-CV-700, 2010 WL 5418883 (E.D. Cal. Dec. 23, 2010) ....................3

*DeFeo v. Procter & Gamble Co.,*
    831 F. Supp. 776 (N.D. Cal. 1993) ...............................................................5

*Gribin v. Hammer Galleries,*
    793 F. Supp. 233 (C.D. Cal. 1992)................................................................5

*Hospah Coal Co. v. Chaco Energy Co,*
    673 F.2d 1161 (10th Cir. 1985)..................................................................3, 4

*Interactive Fitness Holdings, LLC v. Icon Health & Fitness, Inc.,*
    No. 10-CV-04628, 2011 WL 1302633 (N.D. Cal. Apr. 5, 2011) ..................2

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.,*
    342 U.S. 180 (1952) .......................................................................................5

*Kerr Corp. v. N. Am. Dental Wholesalers,*
    No. 11-CV-0313, 2011 WL 4965111 (C.D. Cal. Oct. 18, 2011)...................5

*Merrill Lynch, Pierce, Fenner & Smith v. Haydu,*
    675 F.2d 1169 (11th Cir. 1982).....................................................................3

*Orthman v. Apple River Campground,*
    765 F.2d 119 (8th Cir. 1985).........................................................................3

*Pacesetter Systems, Inc. v. Medtronric, Inc.,*
    678 F.2d 93 (9th Cir. 1982)...........................................................................2

*Payne v. Kennedy Johnson Gallagher LLC,*
    No. 10-CV-297, 2010 WL 2079928 (D. Ariz. May 24, 2010) ......................5

*Summit Entm't, LLC v. Bath & Body Works Brand Mgmt.,*
    No. 11-CV-3570, 2011 WL 2649973 (C.D. Cal. July 5, 2011)......................5

*Tempco Elec. Heater Corp. v. Omega Eng'g,*
    819 F.2d 746 (7th Cir. 1987).........................................................................5

*Turner v. Harrah's New Orleans Hotel & Casino,*
    Nov. 10-CV-5879, 2011 WL 1666925 (C.D. Cal. Apr. 7, 2011) ................10

*U.S. v. Costello,*
    809 F. Supp. 56 (E.D. Wis. 1992).................................................................3

KAYE SCHOLER LLP

*Wright v. RBC Capital Mkts. Corp.,*
    No. 09-CV-3601, 2010 WL 2599010 (E.D. Cal. June 24, 2010) ...................3

*Xioxide, Inc. v. Ford Motor Co.,*
    448 F. Supp. 2d 1188 (C.D. Cal. 2006)...........................................................6

*Zumba Fitness, LLC v. Brage,*
    No. 11-cv-5361, 2011 WL 4732812 (C.D. Cal. Oct. 6, 2011)........................9

**Statutes**

28 U.S.C. § 1404(a) ......................................................................................7, 9, 10

**Other Authorities**

Sherri Buri McDonald,
    *Branding Issue Goes to Court,*
    *The Register Guard*, Oct. 19, 2011 ...............................................................4

KAYE SCHOLER LLP

60501918.DOCX    HEARTHSIDE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS, STAY OR TRANSFER

1    Plaintiff's late-filed Opposition[1] notwithstanding, the facts and law are clear

2    that this action should be dismissed or stayed in accordance with the first-to-file

3    rule.  Hearthside filed its complaint in Oregon ("the Oregon Action") after it

4    became clear that a negotiated solution to its conflict with Plaintiff could not be

5    reached, and over three weeks *after the end* of the period the parties had agreed not

6    to file suit so that discussions could proceed. The Oregon Action was filed in the

7    jurisdiction where almost all the relevant witnesses are located, including third-

8    party witnesses, where the contracts and agreements giving rise to the claims were

9    formed, and where Hearthside's disputed use of the trademarks on its packaging

10   occurs. Immediately upon learning of the Oregon Action, Plaintiff rushed to file her

11   complaint in this district, where she resides, but which has no other relevant

12   connection to the dispute. All the facts and legal authority strongly point to the

13   District of Oregon as the proper forum to resolve the parties' dispute. Hearthside

14   thus requests that the Court dismiss this case, transfer it to the District of Oregon, or

15   stay it until proceedings in the Oregon Action have concluded.

16   **I.    Application of the First-to-File Rule Gives Priority to Hearthside's**

17   **Oregon Action**

18       There is no dispute that the first-to-file rule should apply in this action.  But,

19   in an attempt to turn the first-to-file rule on its head and obfuscate the facts of the

20   case, Plaintiff incorrectly argues that the first-to-file rule should apply to the action

21   in which the court "first acquires personal jurisdiction." (Opp. at 5.)  Plaintiff's

22   argument is incorrect because courts applying the first-to-file rule do not consider

23   the chronology of service, but rather *the chronology of filing. See Alltrade, Inc. v.*

24   *Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991) (analyzing the prerequisites

---

[1] Plaintiff's Oppositions to both this Motion and Hearthside's Motion to Dismiss under FRCP 12(b)(6) were filed nearly six hours after this Court's 4 p.m. deadline, and both Oppositions should be stricken by this Court for that reason alone.

KAYE SCHOLER LLP

of the first-to-file rule: chronology of filing, identity of parties, similarity of issues). This, after all, is why it is called the "first-to-file rule" and not the "first to serve process rule."

Courts applying the first-to-file rule look to the date an action was filed, not the date on which the pleading was served. Plaintiff's argument that the first complaint to be served is controlling was rejected by the Ninth Circuit in *Pacesetter Systems, Inc. v. Medtronric, Inc.*:

> Pacesetter suggests that the first to file rule may have no application here because although the Florida action was filed before the California action, Pacesetter was not served with the Florida complaint until after the California action was filed. It therefore notes that the "Central District of California was (the) first court to gain jurisdiction over the parties." This contention is without merit. In view of the fact that Pacesetter had full knowledge of the Florida action before filing in California, basing this jurisdictional decision on the technicalities of service of process would be inappropriate. *A federal action is commenced by the filing of the complaint, not by service of process.*

678 F.2d 93, 96 n.3 (9th Cir. 1982) (emphasis added); *see also Alltrade,* 946 F.2d at 625 (finding first-to-file rule satisfied where defendant "filed its suit prior" to plaintiff); *Bryant v. Oxxford Express, Inc.*, 181 F. Supp. 2d 1045, 1048 (C.D. Cal. 2000) (finding first-to-file rule met where Plaintiff's "action was filed first"); *Interactive Fitness Holdings, LLC v. Icon Health & Fitness, Inc.*, No. 10-CV-04628, 2011 WL 1302633, at *2 (N.D. Cal. Apr. 5, 2011) (looking to dates actions were filed when applying first-to-file rule); *Broadcom v. Qualcomm Inc.*, No. 05-SACV-468, 2005 WL 5925585, at *2 (C.D. Cal. Sept. 26, 2005) (first-to-file rule will be applied unless there is showing that "it would be unjust or inefficient to proceed with the *first-filed* case" (emphasis added)). When the first-to-file rule is applied here, priority rests with Hearthside's Oregon Action, as it was filed six days

2

KAYE SCHOLER LLP

1   before Plaintiff's complaint, and it involves the same parties and issues as

2   Plaintiff's trademark litigation action.

3         Plaintiff's faulty argument that the first-to-file rule is really a first to serve

4   process rule is, not surprisingly, unsupported by case law.  Indeed, none of the

5   cases relied upon in Plaintiff's brief applies such a first-to-serve rule, or even

6   suggests that the first court to acquire jurisdiction over the parties via service of

7   process "has priority to consider the case."  (*See* Opp. at 5); *see Wright v. RBC

8   Capital Mkts. Corp.*, No. 09-CV-3601, 2010 WL 2599010, at *5 (E.D. Cal. June

9   24, 2010) (applying first-to-file rule to first filed action); *CystoSport, Inc. v.

10  Cytogenix Sports Labs., SRL,* No. 10-CV-700, 2010 WL 5418883, *2-3 (E.D. Cal.

11  Dec. 23, 2010) (finding first-filed case should not be dismissed for non-compliance

12  with rules of service as all parties had sufficient notice of complaint); *U.S. v.

13  Costello*, 809 F. Supp. 56, 57-58 (E.D. Wis. 1992) (first-to-file rule not applied

14  because cases each involved different parties and different issues); *Merrill Lynch,

15  Pierce, Fenner & Smith v. Haydu*, 675 F.2d 1169, 1173 (11th Cir. 1982) (affirming

16  that principles of comity required federal court to allow action to proceed to

17  completion in state court).

18        For example, although Plaintiff cites the Eighth Circuit decision *Orthman*,

19  that court never discussed the timing of service of process when determining the

20  priority of two cases that were pending in different jurisdictions.  *Orthman v. Apple

21  River Campground,*765 F.2d 119, 121 (8th Cir. 1985).  In fact, the *Orthman* court

22  dismissed the first-filed case in deference to a second-filed action on the basis of a

23  substantial disparity in the progression of the cases, and because the second-filed

24  action included all interested parties, unlike the first-filed action.  *Id.*  Also

25  undermining Plaintiff's argument is *Hospah*, in which the court rejected the

26  argument that priority should be given to the complaint that was served first, and

27  instead gave priority to the complaint that was filed first.  *Hospah Coal Co. v.

28  Chaco Energy Co.,* 673 F.2d 1161, 1163 (10th Cir. 1985).  Although the *Hospah*

KAYE SCHOLER LLP

court describes the first-to-file rule as "when two courts have concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case," it finds that "jurisdiction attaches" <u>when the complaint is filed</u>. *See id.* ("[I]n both in rem and in personam actions, jurisdiction relates back to the filing of the complaint"). Therefore, Plaintiff's argument that the court in which jurisdiction first attaches is where service of process is first completed is wholly unsupported, misleading, and incorrect.

Because the first-to-file rule focuses on the chronology of filing and the similarity of the parties and issues, not on service of process, Plaintiff's arguments concerning service of Hearthside's Oregon Action are irrelevant. They are also misleading and inaccurate. Although Plaintiff has now claimed to Hearthside that service of the Oregon Action was insufficient, Hearthside served its complaint in the Oregon Action on Plaintiff at her residence on October 27, 2011. (*See* Affidavit of Sara Rodarte, a true and correct copy of which is attached hereto as Exhibit A.)[2] As service of process is not considered in the application of the first-to-file rule, Plaintiff's arguments do not affect nor do they diminish the priority of Hearthside's Oregon Action.

## II. Hearthside's Declaratory Judgment Complaint Was Neither An Anticipatory Suit Nor Forum Shopping

Contrary to Plaintiff's arguments, the Oregon Action was neither an anticipatory filing nor forum shopping. First, the Oregon Action is not anticipatory of Plaintiff's trademark litigation because it seeks judgment on issues beyond the scope of Plaintiff's action, namely, the use and ownership of the GOLDEN

---

[2] Plaintiff was also undeniably on notice of the Oregon Action at least by October 19th. *See also* Sherri Buri McDonald, *Branding Issue Goes to Court*, The Register Guard, Oct. 19, 2011, at B4, a true and correct copy of which is attached hereto as Exhibit B (quoting Plaintiff's counsel, Surjit Soni, for reaction to Hearthside's filing of Oregon Action)).

KAYE SCHOLER LLP

1   TEMPLE mark. (*See* Request for Judicial Notice (filed with moving papers), at

2   Exh. H, Oregon Complaint at ¶¶ 9, 12-13, 18-21.) *See also Kerr Corp. v. N. Am.*

3   *Dental Wholesalers*, No. 11-SACV-0313, 2011 WL 4965111, at *5 (C.D. Cal. Oct.

4   18, 2011) (defendant's declaratory judgment action sought a "benefit beyond the

5   scope of what [Plaintiff] could be expected to bring suit for," and was therefore non-

6   anticipatory). In addition, Hearthside did not "race to the courthouse" or "forum

7   shop" when it filed the Oregon Action. It was only after Hearthside engaged in

8   substantial negotiations and communications with Plaintiff, and attempts at

9   settlement proved futile, that Hearthside filed the Oregon Action to protect its

10   rights. *See e.g., Summit Entm't, LLC v. Bath & Body Works Brand Mgmt.*, No. 11-

11   3570, 2011 WL 2649973, at *1 (C.D. Cal. July 5, 2011) (finding absence of forum

12   shopping where declaratory action filed only after settlement negotiations failed, in

13   forum with which filer had substantial connections).

14         The case law Plaintiff cites in support of her argument that Hearthside forum

15   shopped is distinguishable because in none of the cases were there significant

16   communications or negotiations between the parties. Instead, the cases involved

17   reactionary case filings immediately upon receipt of cease-and-desist letters or

18   deceiving gamesmanship—none of which are present here. *See Payne v. Kennedy*

19   *Johnson Gallagher LLC*, No. 10-CV-297, 2010 WL 2079928, at *2 (D. Ariz. May

20   24, 2010) (filer of declaratory action secretly filed complaint and did not disclose

21   this during negotiations in order to induce other party to refrain from filing

22   lawsuit); *Tempco Elec. Heater Corp. v. Omega Eng'g*, 819 F.2d 746, 747 (7th Cir.

23   1987) (declaratory action filed after only two letters and two phone calls); *Kerotest*

24   *Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 185 (1952) (no

25   communications between declaratory action filer and defendant prior to filing of

26   declaratory action); *Gribin v. Hammer Galleries*, 793 F. Supp. 233, 237 (C.D. Cal.

27   1992) (no attempt to resolve parties' dispute); *DeFeo v. Procter & Gamble Co.*, 831

28   F. Supp. 776, 778 (N.D. Cal. 1993) (declaratory action filed upon receipt of one

KAYE SCHOLER LLP

5

KAYE SCHOLER LLP

communication regarding potential violation of non-compete provision). The only case involving substantial communications between the parties is *Xoxide, Inc. v. Ford Motor Co.*, in which the negotiating parties were very close to settlement, unlike Hearthside and Plaintiff, before the declaratory judgment action was filed. *Xoxide, Inc. v. Ford Motor Co.*, 448 F. Supp. 2d 1188, 1192-93 (C.D. Cal. 2006).

Plaintiff also blatantly mischaracterizes Hearthside's agreement to refrain from commencing litigation. Plaintiff asserts, based on the declaration of her lawyer, that "[t]he parties agreed that neither would file an action while negotiations were ongoing." (Opp. at 6 *citing* Soni Decl. ¶ 4.) But the falsity of that assertion, and Soni's Declaration to that effect, are demonstrated by the very letter attached as Exhibit B to the Soni Declaration. That letter plainly states: "Per your request, I can confirm that Hearthside will not file any actions before Hearthside has responded to you on [September 16, 2011]." (Soni Decl. at Ex. B.) Hearthside ultimately provided its response to Plaintiff on September 19, 2011. (Declaration of James Gaspar ("Gaspar Decl.") ¶ 9.) Hearthside never agreed to refrain from commencing litigation beyond September 19, 2011.

Plaintiff also incorrectly argues that the first-to-file rule should not be applied in intellectual property cases. (*See* Opp. at 6.) In support of this argument, Plaintiff relies upon *Capitol Records, Inc. v. Optical Recording Corp.*, a patent case that did not apply the first-to-file rule, but also did not suggest that the first-to-file rule does not apply in intellectual property cases. *Capitol Records, Inc. v. Optical Recording Corp.*, 810 F. Supp. 1350, 1353-54 (S.D.N.Y. 1992). As no exceptions to application of the first-to-file rule are present here, Hearthside's Oregon Action takes priority, and the present action should be dismissed or stayed.

**III.   The Convenience of the Parties, the Witnesses, and the Interests of Justice Favor Transferring This Action to the District of Oregon Under 28 U.S.C. § 1404(a)**

Rather than discussing the factors relevant to motions to transfer under Section 1404(a), Plaintiff offers a scattershot response that is long on unsupported suppositions and mischaracterizations of the facts (particularly those set forth in the Gaspar Declaration), but short on substantiated, relevant facts or supporting authority.  There is a strong nexus between Oregon and the facts underlying this lawsuit, which is why the convenience of the parties, convenience of the witnesses, and the interests of justice dictate transferring this action to Oregon.

**1.   Convenience of the Parties Favors Transfer.**  Plaintiff asserts that California is a more convenient forum for the parties because Hearthside employs a single sales representative located in California, sells products in California, and has not contested personal jurisdiction here.  To the extent those limited facts are relevant, it is also true that Hearthside employs hundreds of employees in Oregon where all of the products bearing the allegedly infringing marks are (and have always been) manufactured, Hearthside sells its products in Oregon, and Hearthside does not contest jurisdiction in Oregon.  In addition: (i) all of Hearthside's operations relating to this lawsuit are located in Oregon, and none are located in California; (ii) Hearthside's documents are primarily located in Oregon, and none are located in California; and (iii) its witnesses with knowledge relevant to this dispute are located in Oregon or Illinois, and none are located in California. (Gaspar Decl. ¶¶ 10-16, 18.)  Thus, while California may be more convenient for Plaintiff, California is plainly not more convenient for Hearthside.

Furthermore, the suggestion that Plaintiff would be prejudiced by transferring this action to Oregon due to her purportedly "limited resources" is belied by the evidence.  Despite being located within this district, Plaintiff notably declined to submit her own testimony regarding her financial means.  Instead, Plaintiff relies

7

KAYE SCHOLER LLP

1    exclusively on the unsupported assertion of her lawyer that Plaintiff has "limited
2    resources to prosecute this action." (Soni Decl. ¶ 6.) Setting aside the obvious and
3    likely intentional vagueness of that testimony, those "limited resources" have not
4    prevented Plaintiff from commencing and prosecuting: (i) an arbitration in Oregon
5    alleging trademark infringement by Golden Temple of Oregon, Inc. ("GTO");
6    (ii) an action in Oregon state court against the entity that owned GTO at the time
7    the trademarks that are the subject of this action were sold or licensed by GTO to
8    Hearthside; and (iii) a petition in federal court in Oregon to enforce the arbitration
9    award rendered against GTO, which was filed the day after Hearthside moved to
10   dismiss, stay or transfer this action to that same federal court. (A true and correct
11   copy of the Petition to Confirm Arbitration Award filed by Plaintiff in the United
12   States District Court for the District of Oregon on November 15, 2011, is attached
13   hereto as Exhibit C.)

14         **2.    Convenience of the Witnesses Favors Transfer.** Plaintiff's assertion
15   that California is a more convenient location for potential witnesses is simply
16   incredible.

17         First, Plaintiff argues that testimony from the GTO witnesses—who Plaintiff
18   concedes would testify about "GTO's acquisition of rights to use the YOGI
19   trademarks, ownership and registration of the PEACE trademarks and GTO's sale
20   of the PEACE trademarks to Hearthside" (Opp. at 10)—is "unnecessary" to this
21   lawsuit. The absurdity of that assertion is palpable. It is the very ownership of
22   those trademarks that is at issue in this lawsuit. Hearthside's rights with respect to
23   the subject trademarks derive from GTO's rights to those trademarks. Thus,
24   evidence regarding GTO's ownership of or rights to use those trademarks, and
25   GTO's sale/licensing of those marks to Hearthside, is not only necessary to
26   determine Hearthside's ownership and rights, it is essential. Moreover, to the
27   extent Plaintiff contends that those rights have already been established by the
28   arbitration proceeding that Plaintiff commenced against GTO in Oregon, the

KAYE SCHOLER LLP

8

1    enforceability of which is now the subject of an action Plaintiff commenced in

2    federal court in Oregon, it seems clear that the federal court in Oregon is in a better

3    position to evaluate that contention than this Court.

4         Plaintiff's assertion that she intends to rely on expert witnesses "from the Los

5    Angeles area" also misses the mark.  The convenience of expert witnesses "carries

6    little or no weight" in the  28 U.S.C. § 1404(a) analysis for obvious reasons.

7    *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F.Supp.2d 1183, 1195 (S.D.

8    Cal. 2007).

9         Plaintiff's unsupported suppositions about how easy it would be for

10   Hearthside's CEO and Vice President to testify in Los Angeles are similarly

11   unpersuasive.  The Gaspar Declaration demonstrates that neither Richard Scalise,

12   Jim Gaspar, nor anyone else affiliated with Hearthside with any knowledge of the

13   facts pertinent to this lawsuit are situated in California.  But, those witnesses do

14   have substantial connections with Oregon by virtue of the fact that Hearthside's

15   operations utilizing the subject trademarks are and have always been located in

16   Oregon.  (Gaspar Decl. ¶¶ 10-13, 18.)  Also, the fact that Arizona is closer to Los

17   Angeles than Oregon is utterly irrelevant.  As the General Manager of Hearthside's

18   operations in Oregon, Mr. Gaspar commutes to Oregon weekly from his home in

19   Arizona to oversee those operations.

20        Finally, as noted in Hearthside's opening brief, the convenience of non-party

21   witnesses is the "most important factor" in a  28 U.S.C. § 1404(a) analysis.  *Zumba*

22   *Fitness, LLC v. Brage*, No. 11-cv-5361, 2011 WL 4732812 (C.D. Cal. Oct. 6,

23   2011).  Here, Hearthside identified seven non-party witnesses located in Oregon

24   who will likely be needed to testify as to matters that are at the heart of this

25   lawsuit—ownership of and rights to use the subject trademarks.  Despite Plaintiff's

26   attempt to brush those witnesses and their testimony aside by describing that

27   testimony as "cumulative  and redundant," it is clear that testimony from those

28   witnesses is essential to Hearthside's claimed ownership of or right to use the

KAYE SCHOLER LLP

9

1  subject trademarks.  By contrast, Plaintiff has not even attempted to identify a
2  single non-party witness (other than experts, whose convenience is irrelevant for
3  purposes of Section 1404(a)) she might call to support her claims.  As a result, this
4  *most important factor* militates decisively in favor of transferring this action to
5  Oregon.

6      **3.    Location Where Relevant Agreements Were Negotiated and**
7  **Executed Favors Transfer.**  While Plaintiff does not rebut the substantial
8  connections between the State of Oregon and the two sets of agreements regarding
9  the ownership and transfer of the trademarks that are at issue in this lawsuit (*see*
10  Gaspar Decl. ¶¶ 2-4, 10-13),  Plaintiff seeks to avoid this factor by arguing that
11  those connections are irrelevant because those agreements do not involve the
12  purchase or sale of land in Oregon and are not contracts that can only be performed
13  in Oregon.  (Opp. at 14-15.)  Not surprisingly, Plaintiff cites no legal authority for
14  construing this element so narrowly.  As Plaintiff concedes, the central question in
15  this lawsuit is the ownership and licensing of certain trademarks.  Because the
16  agreements relating to ownership and licensing of those trademarks were negotiated
17  and executed, in part, in Oregon, and because Plaintiff has not even attempted to
18  establish any connection between those agreements and California, this factor
19  strongly favors transfer of this action to Oregon.

20      **4.    Plaintiff's Choice of Forum Favors Transfer.**  Plaintiff argues her
21  choice of forum should be granted deference because she resides and, therefore,
22  suffered damages in this forum.  If that were sufficient, transfers under Section
23  1404(a) would become extinct.  Because there is no significant connection between
24  this forum *and the events giving rise to this lawsuit*, Plaintiff's choice of forum is
25  entitled to minimal deference.  *Turner v. Harrah's New Orleans Hotel & Casino*,
26  No. 10-CV-5879, 2011 WL 1666925, at *5 (C.D. Cal. Apr. 7, 2011).

27
28

KAYE SCHOLER LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KAYE SCHOLER LLP

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court GRANT its motion and dismiss this action, transfer this proceeding to the United States District Court for the District of Oregon, or stay this proceeding pending conclusion of the Oregon Action.

Dated: December 5, 2011

Respectfully submitted,

KAYE SCHOLER LLP

By:___/s/  Rhonda R. Trotter_____

Rhonda R. Trotter

Attorneys for Defendant
HEARTHSIDE FOOD SOLUTIONS, LLC

11

# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

HEARTHSIDE FOOD SOLUTIONS, LLC

         Plaintiff,

vs.

BIBIJI INDERJIT KAUR PURI

        Defendant.

_____/

Case No. **CV'11−1238 HU**

AFFIDAVIT OF SERVICE

STATE OF CALIFORNIA
County of Los Angeles      ss.

I, Sara Rodarte, being first duly sworn, depose and say that I am a competent person 18 years of age or older, a resident of the State of California and that I am not a party to nor an attorney for any party in the within named action; that I made service of a true copy of:

*Summons and Complaint; Plaintiff Hearthside Food Solutions, LLC's Corporate Disclosure Statement; Civil Case Assignment Order; Discovery and Pretrial Scheduling Order; Discovery Agreement; Magistrate Consent Form; Civil Case Management Time Schedules*

By delivering the aforementioned documents to **BIBIJI INDERJIT KAUR PURI**, personally and in person, at 1905 Preuss Road, Los Angeles, CA 90024 on October 27, 2011 at 8:20 PM.

I declare under the penalty of perjury that the above statement is true and correct.

X _____
Sara Rodarte
Nationwide Process Service, Inc.
1201 S.W. 12th Avenue, Suite 300
Portland, OR 97205
503−241−0636

SUBSCRIBED AND SWORN BEFORE ME
this ____ day of _____, 20___
by Sara Rodarte.

_____
Notary Public



*277478*

State of California County of
Los Angeles
Subscribed and sworn to (or affirmed)
before me on this 31 day of OCT , 2011 , by
Sara Rodarte
proved to me on the basis of satisfactory evidence
to be the person(s) who appeared before me.

Signature _____

(Seal)



REMEDIOS P. ROBLES
Commission # 1807728
Notary Public - California
Los Angeles County
My Comm. Expires Jul 29, 2012

Exhibit A
Page 12

# EXHIBIT B

- Maps
- Springfield Extra
- Obituaries
- Latest 7 days
- Weather
- Northwest Now
- Columnists
- Associated Press

Search The Register-Guard:

- Site
- Google News Archive – Back to **1867**
- Paid archive – Back to **2001**

Go   Search help

Advertisement



Home: **Financial**

Published: Wednesday, Oct. 19, 2011, midnight PDT

# Branding issue goes to court

## An Illinois company and the widow of the cereals' titular yogi vie for the rights to company trademarks

By Sherri Buri McDonald

The Register-Guard

Appeared in print: Wednesday, Oct. 19, 2011, page B4

The company that bought Golden Temple's cereal business last year has filed a lawsuit to bolster its right to continue using the Yogi, Peace and Golden Temple trademarks in its products.

Hearthside Food Solutions, an Illinois company, churns out Peace Cereal, Golden Temple bulk granola and Yogi cereal and snack foods, among other products, at its 300-employee factory on Prairie Road in Eugene.

To keep that product flowing, Hearthside recently sued Bibiji Inderjit Kaur Puri, known as Bibiji, in U.S. District Court in Portland.

Bibiji, a Los Angeles resident, is the widow of Yogi Bhajan, who brought his own brand of Sikhism from India to the United States in the late 1960s. His Eugene adherents founded a bakery in the early 1970s that grew into Golden Temple, an anchor of the local natural foods industry. Yogi Bhajan died seven years ago.

This summer, arbitrators in Portland ruled that trademark rights for "Yogi" in tea and cereal belong to Yogi Bhajan's heirs, including Bibiji.

In its lawsuit, Hearthside alleges that Bibiji has claimed ownership in the Yogi, Peace and Golden Temple marks and that she has claimed that Hearthside is infringing her trademark rights by producing cereals with those marks.

Bibiji has demanded that Hearthside sign a licensing agreement with her and pay her royalties to continue using the trademarks, or that Hearthside must stop using them, the lawsuit said.

"Bibiji informed Hearthside via e-mail that if Hearthside did not meet her settlement demands, she would file suit against Hearthside," the lawsuit said.

The royalty rate in the 2004 trademark licensing agreement between a living trust for Yogi Bhajan and Bibiji and Golden Temple of Oregon decreases as sales increase, from a royalty rate of 3.5 percent of gross sales up to $25 million to 0.10 percent of gross sales for sales of more than $100 million.

In its lawsuit, Hearthside contends that it owns the Peace and Golden Temple trademarks for cereal and that it's authorized to make Yogi brand cereal and snacks under a trademark license agreement with Golden Temple of Oregon.

Hearthside is asking for court orders stating that Hearthside owns the Peace and Golden Temple trademarks and that it can continue to use the Yogi mark under the licensing

agreement; that Hearthside hasn't infringed Bibiji's trademark rights; and that Bibiji must stop claiming ownership of the Peace, Golden Temple and Yogi marks.

Bibiji's attorney Surjit Soni, who also happens to be her nephew, said Bibiji has asserted rights to the Peace and Yogi trademarks, but "I don't think we've asserted any rights to Golden Temple."

In communications to Hearthside Bibiji has stated her belief that the Peace mark was Yogi Bhajan's idea and grew out of, and was inspired by, the Peace Festival that was used with Yogi Bhajan's name and image from 2000 to 2009 and falls under the licensing agreement, Soni said.

Soni said Bibiji will sue Hearthside for infringement of the Peace trademark, probably as a counterclaim to Hearthside's lawsuit.

Soni said he understood that Hearthside planned to stop using the Yogi trademark by the end of the year.

"If they continue to use it, we would sue for infringement and an injunction" to force them to stop using it, he said.

Hearthside attorney Kenneth Davis said he couldn't comment on the lawsuit without contacting his clients, who were unavailable because of the time difference.

Davis represented Golden Temple Management, a group of six Golden Temple managers — including the company's CEO, Kartar Singh Khalsa — in a lengthy lawsuit that is awaiting a ruling from Judge Leslie Roberts in Multnomah County Circuit Court.

Ken Kwartler, a trademark attorney in Lake Oswego who is not involved in any of these cases, said when a company licenses its trademark to another party, the company usually promises to defend that party and pay damages if the party is sued for trademark infringement.

"That's absolutely standard in a licensing agreement," he said.

Previous: Wilson, ever one to chill out, plans on putting Cards on ice

Next: Briefly METRO

Advertisement

# EXHIBIT C

7009

Loren S. Scott, OSB #024502
lscott@scott-law-group.com
THE SCOTT LAW GROUP
497 Oakway Rd., Suite 245
Eugene, OR 97401
(541) 868-7005 Telephone
(541) 868-8004 Fax

Fked
~~RECVD~~ 15 NOV '11 16:06 USDC-ORE

and

Surjit P. Soni
surj@sonilaw.com
M. Danton Richardson
danton@sonilaw.com
THE SONI LAW FIRM
35 North Lake Ave., Suite 720
Pasadena, California  91101
(626) 683-7600 Telephone
(626) 683-1199 Fax

Attorneys for Petitioner, Bibiji Inderjit Kaur Puri

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| BIBIJI INDERJIT KAUR PURI, an individual, | ) Case No.: 11-1380-HU |
| | ) |
| Petitioner, | ) **PETITION TO CONFIRM** |
| | ) **ARBITRATION AWARD** |
| v. | ) |
| | ) |
| GOLDEN TEMPLE OF OREGON, LLC, an Oregon Limited Liability Company, | ) |
| | ) |
| Respondent. | ) |
| | ) |

## PETITION

Petitioner, Bibiji Inderjit Kaur Puri (**Bibiji**), alleges as follows:

1.      The Harbhajan Singh Khalsa Yogiji and Inderjit Kaur Khalsa Living Trust (**Living**

PETITION TO CONFIRM ARBITRATION AWARD                           Page 1 of 4

60000 7009

**Exhibit C**
**Page 16**

**Trust**) entered into several license agreements with Respondent, Golden Temple of Oregon, LLC (**GTO**), for use of the certain Licensed Trademarks, namely the defined HSKY Marks, including the **YOGI** and **YOGI TEA** trademarks, as well as, the name and likeness of Harbhajan Singh Khalsa Yogiji (**Yogi Bhajan**) and other intellectual property owned by the Living Trust. A copy of a July 26, 2004 License Agreement between the Living Trust and GTO is attached hereto as **Exhibit A**. A copy of an October 1, 2004 License Agreement between the Living Trust and GTO is attached hereto as **Exhibit B**.

2.      Paragraph 19 of both of the 2004 license agreements contained the following clause:

> Any controversy or claim arising out of, or relating to, this Agreement, or the making, performance, or interpretation of this Agreement, shall be settled by arbitration in Portland, Oregon, in accordance with the rules and procedures of Arbitration Services of Portland, Inc. [sic], . . . Judgment on the arbitration award may be entered in any court having jurisdiction over the subject matter of the controversy.

3.      Bibiji is a co-Trustor and beneficiary of the Living Trust and the widow of Yogi Bhajan and is a successor-in-interest to the intellectual property rights owned by the Living Trust.

4.      A dispute arose between Bibiji and GTO concerning ownership and use of the YOGI and YOGI TEA trademarks. Bibiji filed a demand for arbitration with Arbitration Service of Portland, Inc. (**ASP**) on June 22, 2010, alleging 8 separate claims against GTO for: (1) Federal Statutory and Common Law Trademark Infringement (15 U.S.C. §1051 et Seq.); (2) Violation of Section 43(a) of the Lanham Act; (3) Unfair Competition; (4) Imposition of Constructive Trust; (5) Declaratory Relief; 6) Assignment of Trademark Applications and Registrations to All YOGI and YOGI TEA Marks; (7) Determination That Respondent Has No Right to Register; and (8) Cancellation of Registered Marks (15 U.S.C. §1119). A copy of the Demand for Arbitration is

attached hereto as **Exhibit C**.

      5.      On January 10-19, 2011 the matter was arbitrated before a panel of three (3) arbitrators at ASP. The Arbitrators were J. Peter Staples (Chief Arbitrator), Alan T. McCollom and Jeffrey M. Edelson. Witnesses were called and evidence was presented by Bibiji and GTO.

      6.      On July 29, 2011, the Arbitrators issued their Findings of Fact and Notice of Award (**Findings of Fact**). A copy of the Findings of Fact is attached hereto as **Exhibit D**. On November 10, 2011, the Arbitrators issued their Award. A copy of the Award is attached hereto as **Exhibit E**. The Award incorporated the Findings of Fact by reference, and adjudicated all claims in favor of Bibiji. The Award was served on Bibiji and GTO by e-mail on November 11, 2009.

      7.      The License Agreement allows for the recovery of attorney fees by the prevailing party. Petitioner requests attorney fees in both filing the Petition to Confirm Arbitration Award as well as any subsequent hearing and or requirements regarding confirmation of arbitration award and the right to recover future attorney fees in regard to collection of sums due pursuant to the Petition to Confirm Arbitration Award.

      WHEREFORE, Bibiji prays for the following:

      1.      For an order confirming the arbitration Award;

      2.      That Judgment be entered in favor of Bibiji and against GTO in conformity with the Findings of Fact and Award that are attached hereto as Exhibits D and E;

      3.      For costs of suit incurred herein;

///

///

///

///

PETITION TO CONFIRM ARBITRATION AWARD        Page 3 of 4

**Exhibit C**
**Page 18**

4.      For attorney fees incurred in the filing of the Petition to Confirm Arbitration Award,
contesting the petition to confirm the arbitration award, entering the petition to confirm the
arbitration award and enforcing the petition to confirm the arbitration award.

DATED: November 15, 2011.

/s/ Loren S. Scott
**Loren S. Scott**, OSB #024502
lscott@scott-law-group.com
THE SCOTT LAW GROUP
497 Oakway Rd., Suite 245
Eugene, OR 97401
(541) 868-8005 Telephone
(541) 868-8004 Fax
Of Attorneys for Bibiji Inderjit Kaur Puri

PETITION TO CONFIRM ARBITRATION AWARD                    Page 4 of 4

**Exhibit C**
**Page 19**

**Loren S. Scott**, OSB #024502
lscott@scott-law-group.com
THE SCOTT LAW GROUP
497 Oakway Rd., Suite 245
Eugene, OR 97401
(541) 868-8005 Telephone
(541) 868-8004 Fax

and

**Surjit P. Soni**
surj@sonilaw.com
**M. Danton Richardson**
danton@sonilaw.com
THE SONI LAW FIRM
35 North Lake Ave., Suite 720
Pasadena, California 91101
(626) 683-7600 Telephone
(626) 683-1199 Fax

Attorneys for Petitioner, Bibiji Inderjit Kaur Puri

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| BIBIJI INDERJIT KAUR PURI, an individual, | ) Case No.: 11-1380-HU |
| | ) |
| Petitioner, | ) **MEMORANDUM OF LAW IN** |
| | ) **SUPPORT OF PETITION TO** |
| v. | ) **CONFIRM ARBITRATION AWARD** |
| | ) |
| GOLDEN TEMPLE OF OREGON, LLC, an Oregon Limited Liability Company, | ) |
| | ) |
| Respondent. | ) |
| | ) |

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    STATEMENT OF FACTS

Petitioner Bibiji Inderjit Kaur Puri (**Bibiji**) is a co-Trustor and Beneficiary of the Harbhajan

MEMORANDUM OF LAW IN SUPPORT OF PETITION TO CONFIRM ARBITRATION AWARD          Page 1 of 5

**Exhibit C**
**Page 20**

Singh Khalsa Yogiji and Inderjit Kaur Living Trust (**Living Trust**) and is the widow of Harbhajan

Singh Khalsa Yogiji (**Yogi Bhajan**). She is a successor-in-interest to the intellectual property rights

owned by the Living Trust pursuant to its terms.

The Living Trust entered into several License Agreements with Respondent, Golden Temple

of Oregon, LLC (**GTO**) for use of the certain Licensed Trademarks, namely the defined **HSKY**

**Marks**, including the **YOGI** and **YOGI TEA** trademarks, as well as, the name and likeness of Yogi

Bhajan and other intellectual property. A copy of a July 26, 2004 License Agreement between the

Living Trust and GTO is attached as **Exhibit A** to the Petition to Confirm Arbitration Award. A

copy of an October 1, 2004 License Agreement between the Living Trust and GTO is attached as

**Exhibit B** to the Petition to Confirm Arbitration Award.

Paragraph 19 of both of the 2004 license agreements contained the following clause:

> Any controversy or claim arising out of, or relating to, this
> Agreement, or the making, performance, or interpretation of this
> Agreement, shall be settled by arbitration in Portland, Oregon, in
> accordance with the rules and procedures of Arbitration Services of
> Portland, Inc. [sic], . . . Judgment on the arbitration award may be
> entered in any court having jurisdiction over the subject matter of the
> controversy.

A dispute arose between Bibiji and GTO regarding ownership and use of the YOGI and

YOGI TEA marks as well as other intellectual property licensed to GTO by the Joint Trust. Bibiji

filed an action initially in the United States District Court for the Central District of California. That

action was dismissed on motion by GTO asserting that the Federal Arbitration Act mandated that

the claims be arbitrated.   Bibiji filed a demand for arbitration with Arbitration Service of Portland,

Inc. (**ASP**) on June 22, 2010, alleging 8 separate claims against GTO for: (1) Federal Statutory and

Common Law Trademark Infringement (15 U.S.C. §1051 et Seq.); (2) Violation of Section 43(a)

MEMORANDUM OF LAW IN SUPPORT OF PETITION TO CONFIRM ARBITRATION AWARD          Page 2 of 5

**Exhibit C**
**Page 21**

of the Lanham Act; (3) Unfair Competition; (4) Imposition of Constructive Trust; (5) Declaratory Relief; 6) Assignment of Trademark Applications and Registrations to All "Yogi" and "Yogi Tea" Marks; (7) Determination That Respondent Has No Right to Register; and (8) Cancellation of Registered Marks (15 U.S.C. §1119).  A copy of the Demand for Arbitration is attached as **Exhibit C** to the Petition to Confirm Arbitration Award.

On January 10-19, 2011 the matter was arbitrated before a panel of three (3) arbitrators at ASP, wherein Bibiji and GTO presented witnesses and documentary evidence. The Arbitrators were J. Peter Staples (Chief Arbitrator), Alan T. McCollom and Jeffrey M. Edelson.  (Soni Decl., ¶ 5). On July 29, 2011, the Arbitrators issued their Findings of Fact and Notice of Award (**Findings of Fact**), finding in favor of Bibiji and against GTO.[1]  A copy of the Findings of Fact is attached as **Exhibit D** to the Petition to Confirm Arbitration Award.  On November 10, 2011, the Arbitrators issued an Award (**Award**), which incorporated the Findings of Fact by reference.  A copy of the Award is attached as **Exhibit E** to the Petition to Confirm Arbitration Award.  The Award was served by e-mail on November 11, 2009.  (Soni Decl. ¶ 7).

Bibiji now petitions this Court to confirm the Award and enter Judgment thereon.

## II.     ANY PARTY TO AN ARBITRATION MAY PETITION THE COURT TO CONFIRM THE AWARD.

Any party to an arbitration in which an award is issued may apply for an order confirming the award as a judgment at any time within one year after the award is made.  9 U.S.C. § 9.  The court must grant such an order.  *Id.*  Here, the Award was served on November 11, 2011. (Soni Decl.

---

[1] The Arbitrators made no finding on Bibiji's claim for cancellation of the trademarks in light of their findings that Bibiji was an owner of the trademarks and the Award orders GTO to assign the trademarks to Bibiji.

**Exhibit C
Page 22**

¶ 7). Accordingly, Bibiji's petition to confirm is timely.

**III.    THIS COURT HAS JURISDICTION TO CONFIRM THE ARBITRATION AWARD.**

"If no court is specified in the agreement of the parties, then such application may be made to the United States Court in and for the district within which such award was made." 9 U.S.C. § 9. This court has jurisdiction over Bibiji's Petition to Confirm the arbitrators' Award because the arbitration was held in Portland, Oregon under the auspices of ASP and because GTO asserted and the United States District Court for the Central District of California found that the License Agreements and the disputes affect interstate commerce and are governed by the Federal Arbitration Act. Therefore, Bibiji's Petition is properly filed in this Court.

**IV.    THE COURT SHOULD CONFIRM THE AWARD AS MADE AND JUDGMENT SHOULD BE ENTERED IN CONFORMITY THEREWITH**

The confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court. *Florasynth, Inc. v. Pickholz,* 750 F.2d 171, 176 (2d Cir. 1984). "[I]n the absence of a legal basis to vacate, this court has no discretion but to confirm the award. 9 U.S.C. § 9; *Bryson v. Gere,* 268 F.Supp.2d 46, 54 (D. D.C. 2003)." *Int'l Thunderbird Gaming Corp. v. United Mexican States*, 473 F. Supp. 2d 80, 83 (D. D.C. 2007) aff'd, 255 F. App'x 531, 2007 WL 4165398 (D.C. Cir. 2007).

Federal courts must confirm arbitration awards even in the face of erroneous findings of fact or misinterpretations of the law. Courts should not reverse an arbitration award "even in the face of erroneous interpretations of the law." *A.G. Edwards v. McCollough,* 967 F.2d 1401, 1403 (9th Cir.1992) cert. denied 113 S.Ct. 1666 (1993). Arbitration awards should be upheld if justified by any colorable theory. *Id.* See also *Hall St. Assocs., L.L.C. v. Mattel, Inc.,* 552 U.S. 576, 582, 584, 128

MEMORANDUM OF LAW IN SUPPORT OF PETITION TO CONFIRM ARBITRATION AWARD        Page 4 of 5

**Exhibit C
Page 23**

S.Ct. 1396, 170 L.Ed.2d 254 (2008) (explaining that a court must confirm an arbitration award unless the award is vacated, modified, or corrected under the exclusive grounds listed in 9 U.S.C. §§ 10 and 11). There is no basis to vacate, modify or correct the award.

The Award should be confirmed as is, because GTO had an opportunity to object to the proposed award and to provide input to the Arbitrators regarding the language of the Award. The Arbitrators, in fact, adopted some of the proposed language of GTO in its Award. The Award should, therefore, be confirmed as is, and judgment entered pursuant to the Findings of Fact and Award.

## V.    CONCLUSION

For all of the foregoing reasons set forth herein Defendants respectfully requests that this Court confirm the Arbitration Award and enter Judgment thereon in accordance with the terms of the Findings of Fact and Award.

DATED: November 15, 2011.

/s/ Loren S. Scott
**Loren S. Scott**, OSB #024502
lscott@scott-law-group.com
THE SCOTT LAW GROUP
497 Oakway Rd., Suite 245
Eugene, OR 97401
(541) 868-8005 Telephone
(541) 868-8004 Fax
Of Attorneys for Bibiji Inderjit Kaur Puri

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2011, I caused a copy of the foregoing **PETITION TO CONFIRM ARBITRATION AWARD including EXHIBITS A THROUGH E, supporting MEMORANDUM OF LAW and supporting DECLARATION OF SURJIT P. SONI** to be served on the attorneys for defendant and arbitrators Edelson, McCollom, and Chief Arbitrator Staples in the manner indicated below at the following address(es):

**Attorneys for Defendant:**
Kenneth R. Davis II
davisk@lanepowell.com
Parna A. Mehrbani
mehrbanip@lanepowell.com
LANE POWELL P.C.
601 SW Second Avenue, Suite 2100
Portland, Oregon 97204-3158
(503)778-2100 Telephone
(503)778-2200 Facimile

**Arbitrators:**
Jeffrey M. Edelson
Markowitz, Hwerbold, Glade
1211 SW Fifth, Suite 3000
Portland, OR 97204
(503)323-9105 Facsimile
jeffedelson@mhgm.com

Alan T. McCollom
Marger Johnson & McCollom
210 SW Morrison Street, Suite 400
Portland, OR 97204
(503)274-4622
alan.mccollom@techlaw.com

J. Peter Staples
Chernoff Vilhauer, et al.
601 SW Second Avenue, Suite 1600
Portland, OR 97204
(503)228-4373
pete@chernofflaw.com

Lewis Horowitz
Lane Powell, P.C.
601 SW 2nd Ave., Ste. 2100
Portland, OR 97204
(206) 223-7401
horowitzl@lanepowell.com

[X]    (MAIL)
[ ]    (PERSONAL SERVICE)
[X]    (VIA ELECTRONIC MAIL)

THE SCOTT LAW GROUP

By: /s/ Loren S. Scott
Loren S. Scott, OSB#024502
Of Attorneys for Bibiji Inderjit Kaur Puri

**Exhibit C**
**Page 25**